IN THE UNTED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| IN RE: | CASE NO.: 17-32186 |
|---|---|
| UPLIFT RX, LLC [1] | CHAPTER 11 |
| Debtor(s). | Jointly Administered |

## NOTICE OF FILING

**UPLIFT RX, LLC** and its debtor affiliates in the above-captioned chapter 11 cases, (collectively, the "Debtors"), by and through their undersigned proposed counsel, hereby give notice of filing the Declaration of Jeffrey Smith in Support of Chapter 11 Petitions and First Days Motions attached hereto as **Exhibit "A"**.

RESPECTFULLY SUBMITTED this 10th day of April, 2017.

**BAKER & HOSTETLER LLP**

/s/ Elizabeth A. Green
**Elizabeth A. Green, Esq.**
Fed ID#: 903144
**Jimmy D. Parrish, Esq.**
Fed. ID No. 2687598

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Uplift Rx, LLC (9306); Belle Pharmacy, LLC (0143); Alliance Medical Holdings, LLC (5945); Geneva Pharmacy, LLC (1929); Ohana Rx, LLC (1722); Benson Pharmacy, Inc. (6606); Kendall Pharmacy, Inc. (0825); Richardson Pharmacy, LLC (9566); Innovative Rx, LLC (9986); Charleston Rx, LLC (5852); On Track Rx, LLC (9021); Uinta Rx, LLC (7157); Goodman Pharmacy, LLC (9373); BrooksideRx, LLC (5927); Osceola Clinic Pharmacy, LLC (4886); Oak Creek Rx, LLC (9722); Waverly Pharmacy, LLC (7342); Newton Rx, LLC (9510); Lone Peak Rx, LLC (5973); Improve Rx, LLC (9120); New Jersey Rx, LLC (0035); Berkshire Pharmacy, LLC (9197); Health Saver Rx, LLC (7810); Best Rx, LLC (0346); Delaney Pharmacy, LLC (7497); New Life Pharmacy, LLC (8292); Skyline Health Services, LLC (6876); Stonybrook Pharmacy, LLC (7700); Woodward Drugs, LLC (2385); Bridgestone Pharmacy, LLC (5294); Brookhill Pharmacy, LLC (5296); Burbank Pharmacy, LLC (5227); Canyons Pharmacy, LLC (1744); Cheshire Pharmacy, LLC (6370); Conoly Pharmacy, LLC (0367); Cottonwood Pharmacy, LLC (5131); Galena Pharmacy, LLC (0672); Garnett Pharmacy, LLC (6505); Hawthorne Pharmacy, LLC (5345); Hazelwood Pharmacy, LLC (1088); Medina Pharmacy, LLC (8987); Raven Pharmacy, LLC (5671); Glendale Square Rx, Inc. (1022); Lockeford Rx, Inc. (1853); Pinnacle Pharmacy Solutions, LLC (9760); Riverfront Rx, LLC (7152); Riverbend Prescription Services, LLC (1862); Raven Pharmacy Holdings, LLC (2464); Bridgestone Pharmacy Holdings, LLC (2840); Crestwell Pharmacy Holdings, LLC (1503); Galena Pharmacy Holdings, LLC (8609); Geneva Rx Holdings, LLC (8247); Hawthorne Rx Holdings, LLC (9531); Woodward Rx Holdings, LLC (2173); Philadelphia Pharmacy Holdings, LLC (8526); Health Rx Holdings, LLC (0909); Canyon Medical, LLC (4915); Alliance Medical Administration, Inc. (2899); Ollin Pharmaceutical, LLC (9815); Alta Distributors, LLC (7407); Eat Great Café, LLC (2314); Alliance Health Networks, LLC (1815). The Debtors' mailing address is Uplift Rx, LLC, 15462 FM 529, Houston, TX 77095.

SunTrust Center, Suite 2300
200 South Orange Avenue
Telephone: 407.649.4000
Facsimile: 407.841.0168
Email: egreen@bakerlaw.com
         jparrish@bakerlaw.com

**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
N.Y. Reg. No. 2901783
45 Rockefeller Plaza
New York, New York
Telephone: 212.589.4200
Facsimile: 212.589.4201
Email: jrose@bakerlaw.com
*(Motion for admission pro hac vice to be filed)*

*Proposed Counsel for the Debtors and Debtors in Possession*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 10, 2017, a true copy of the foregoing was filed with the Court using the CM/ECF System which provided notice to all parties requesting such notice at the time of docketing.

I FURTER CERTIFY that on April 10, 2017, a true copy was provided to the following via email:

**Zions First National Bank:**
Michael Johnson, Esq.  MJohnson@rqn.com
Kevin Glade, Esq.  kglade@RQN.COM
Michael Mayfield, Esq.  mmayfield@RQN.COM
Richard H. Madsen, II, Esq.  rmadsen@RQN.COM
Robert Wing, Esq.  RWing@rqn.com

**US Trustee:**
USTPRegion07.HU.ECF@USDOJ.GOV

I FURTHER CERTIFY that on April 10, 2017, a true copy will be provided to the following via facsimile and/or email and U.S. First Class Postage Prepaid Mail (and an Amended Certificate of Service will be filed with the Court) on: Uplift Rx, LLC, 15462 FM 529, Houston, TX 77095 (Debtor); and the Debtors' 20 Largest Unsecured Creditors (on a consolidated basis).

/s/ Elizabeth A. Green
Elizabeth A. Green, Esq.
Fed ID#: 903144

610620141.1

# EXHIBIT "A"

# DECLARATION OF JEFFREY SMITH IN SUPPORT OF CHAPTER 11 PETITIONS AND FIRST DAY MOTIONS

IN THE UNTED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| In re: | Case No.: 17-32186 |
|---|---|
| UPLIFT RX, LLC[1] | Chapter 11 |
| Debtor(s). | (Jointly Administered) |

### DECLARATION OF JEFFREY SMITH IN SUPPORT OF
### CHAPTER 11 PETITIONS AND FIRST DAY MOTIONS

I, Jeffrey Smith, declare as follows:

1. I am the Chief Executive Officer ("**CEO**") of Uplift Rx, LLC ("Uplift Rx") and of Alliance Medical Holdings, LLC, two of the debtor and debtors in possession in the above-captioned bankruptcy cases (collectively, the "**Debtors**" or "**Alliance**"). On April 7, 8 and 9, 2017, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). In my capacity as CEO, I am familiar with the Debtors' businesses, day-to-day operations and financial affairs.

2. I submit this declaration ("**Declaration**") in support of the Debtors' voluntary petitions for relief, and the motions filed concurrently herewith requesting "first day" type relief

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Uplift Rx, LLC (9306); Belle Pharmacy, LLC (0143); Alliance Medical Holdings, LLC (5945); Geneva Pharmacy, LLC (1929); Ohana Rx, LLC (1722); Benson Pharmacy, Inc. (6606); Kendall Pharmacy, Inc. (0825); Richardson Pharmacy, LLC (9566); Innovative Rx, LLC (9986); Charleston Rx, LLC (5852); On Track Rx, LLC (9021); Uinta Rx, LLC (7157); Goodman Pharmacy, LLC (9373); BrooksideRx, LLC (5927); Osceola Clinic Pharmacy, LLC (4886); Oak Creek Rx, LLC (9722); Waverly Pharmacy, LLC (7342); Newton Rx, LLC (9510); Lone Peak Rx, LLC (5973); Improve Rx, LLC (9120); New Jersey Rx, LLC (0035); Berkshire Pharmacy, LLC (9197); Health Saver Rx, LLC (7810); Best Rx, LLC (0346); Delaney Pharmacy, LLC (7497); New Life Pharmacy, LLC (8292); Skyline Health Services, LLC (6876); Stonybrook Pharmacy, LLC (7700); Woodward Drugs, LLC (2385); Bridgestone Pharmacy, LLC (5294); Brookhill Pharmacy, LLC (5296); Burbank Pharmacy, LLC (5227); Canyons Pharmacy, LLC (1744); Cheshire Pharmacy, LLC (6370); Conoly Pharmacy, LLC (0367); Cottonwood Pharmacy, LLC (5131); Galena Pharmacy, LLC (0672); Garnett Pharmacy, LLC (6505); Hawthorne Pharmacy, LLC (5345); Hazelwood Pharmacy, LLC (1088); Medina Pharmacy, LLC (8987); Raven Pharmacy, LLC (5671); Glendale Square Rx, Inc. (1022); Lockeford Rx, Inc. (1853); Pinnacle Pharmacy Solutions, LLC (9760); Riverfront Rx, LLC (7152); Riverbend Prescription Services, LLC (1862); Raven Pharmacy Holdings, LLC (2464); Bridgestone Pharmacy Holdings, LLC (2840); Crestwell Pharmacy Holdings, LLC (1503); Galena Pharmacy Holdings, LLC (8609); Geneva Rx Holdings, LLC (8247); Hawthorne Rx Holdings, LLC (9531); Woodward Rx Holdings, LLC (2173); Philadelphia Pharmacy Holdings, LLC (8526); Health Rx Holdings, LLC (0909); Canyon Medical, LLC (4915); Alliance Medical Administration, Inc. (2899); Ollin Pharmaceutical, LLC (9815); Alta Distributors, LLC (7407); Eat Great Café, LLC (2314); Alliance Health Networks, LLC (1815). The Debtors' mailing address is Uplift Rx, LLC, 15462 FM 529, Houston, TX 77095.

(collectively, the "**First Day Motions**"). I am authorized to submit this Declaration on behalf of the Debtors.

3. Except as otherwise indicated, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by employees working under my supervision, or my opinion based on experience, knowledge, and information concerning the Debtors' operations and financial condition. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

4. This Declaration has been organized into two parts. Part I provides an overview of the Debtors' businesses, organizational structure, indebtedness and financial performance. Part II provides a history.

**A.     The Debtors' Business**

5. Uplift Rx is a Texas Limited Liability Company formed in June of 2016. Uplift Rx operates a pharmacy located in Houston, Texas.

6. The member of Uplift Rx is Uplift Holdings, LLC. Namaste Capital Holdings, LLC is the parent of Uplift Holdings, LLC and Alliance Medical Holdings, LLC is the parent of Namaste Capital Holdings, LLC.

7. Alliance is a privately held company with offices in South Jordan, Utah. The Alliance network consists of twenty pharmacies across the country, including three pharmacies in Texas; Collectively the Debtors have approximately 782 employees.

8. Because the Debtors operate across the country, its creditors are located across the country. By way of example, of the creditors that appear on the Debtors top twenty consolidated unsecured creditors list, six are located in New York, two are located in: Texas, Utah, New

Jersey, and Ohio, and the remaining creditors are located in British Columbia, Florida, West Virginia, Alabama and New Jersey.

9. Since 2006, Alliance has been working to improve the well-being of those with chronic health conditions such as diabetes. It does so by personalizing and simplifying the process of condition management, and using its network of pharmacies to connect individuals to prescriptions, resources, and support to help them obtain and remain on therapy. Alliance is leading a revolution in healthcare by putting people at the center of its business, and using innovative digital-experience platforms and professional customer care to improve health outcomes.

10. For example, a patient located in Houston, Texas with a chronic condition would have contact the Debtors call center. At the customer's request, he Debtors would transfer the customer's prescription to Uplift Rx in Houston, Texas, which then provides the medication to the customer. Additionally, the Debtors' provide personalized support services and host online communities to connect people with chronic conditions to experts who provide valuable insights and peers who offer support and encouragement.

11. The Debtors are primarily paid for the patient prescriptions by Pharmacy Benefit Managers ("PBM's) who are responsible for reviewing and paying prescription drug claims on behalf of insurance companies. The Debtors have contracts with approximately 19 PBM's

12. Alliance is well-regarded for its innovation. In 2016, Alliance placed third on Utah Business Magazine's "Fast 50" list, the second year in a row that it was recognized. Alliance was also included on the 2016 Inc. 5000 list of the fastest-growing companies in the United States for the third year in a row.

13.     In 2016 the company had 160 million dollars in revenue and anticipates revenue of 201 million dollars in 2017.

**B.     The Debtors' Organizational Structure**

14.     Alliance Medical Holdings, LLC is a Delaware limited liability company which directly or indirectly owns or controls 108 entities that together make up the Alliance family of companies ("**Alliance Companies**"). Currently, 62 of the Alliance Companies are Debtors in the above-captioned cases, and it is possible that more of the Alliance Companies will file voluntary Chapter 11 petitions in this Court in the coming weeks.

15.     A chart illustrating the Debtors' organization structure as of the Petition Date is attached as *Exhibit A* to this Declaration.

**C.     The Debtors' Capital Structure and Indebtedness**

16.     In 2014, Alliance obtained financing from Zions First National Bank ("**Zions**") to fund its growth and ongoing operations. Zions operates in eleven western states, including Texas.

17.     The financing consists of a term loan, along with a revolving line of credit which Alliance regularly pays down and draws upon in order to operate.

18.     Under the parties' June 24, 2014, Credit Agreement and related loan documents (collectively, the "**Credit Agreement**"), Zions has a first-position security interest in substantially all of the Alliance Companies' income, accounts receivables, assets and property (collectively, the "**Collateral**").

19.     Under the Credit Agreement, all funds that come into the Alliance Companies' bank accounts are periodically "swept" into a Zions bank account, and Zions then applies those funds against the Alliance Companies' loan and line of credit obligations. As a result, all income

4

earned by the Alliance Companies goes to Zions, and the Alliance Companies have been relying on the Zions' line of credit to fund its operations.

20. As of April 7, 2017, the Alliance Companies owes Zions approximately $8,992,717.85 in principal under the Credit Agreement, and $19,719,689 in principal under the term loan agreement.

21. As of April 7, 2017, on a consolidated basis the Debtors had approximately $32,500,000.00 in undisputed, non-contingent or liquidated unsecured claims.

D.  **Events Leading to the Debtors' Chapter 11 Filing**

22. On February 23, 2017, the government executed sealed search and seizure warrants (that the government has kept sealed to this very day) on Alliance. First, per the warrants, the government agents raided the Alliance offices. The government also served sealed warrants on Zions to effectuate the seizure of Debtors business funds and other assets. Notably, the Government took the extraordinary step of causing Zions to "dam" a substantial portion of future account receivables to be received by Alliance. Among the property seized by the government was approximately $1.2 million from the Debtors bank accounts with Zions. The government also served numerous grand jury subpoenas, seeking large volumes of electronic data and hardcopy records.

23. The government's actions immediately halted the operations of a previously vibrant and successful company by preventing the Alliance Companies from accessing funds necessary to operate, and preventing Zions from sweeping certain of the Alliance Companies' accounts to pay down the term loan and line of credit.

24. Thereafter, Alliance negotiated with representatives of the U.S. Attorney's Office to lift the damming warrants on Debtors' bank accounts, so that the Debtors could continue day-

5

to-day operations. The government decided to lift the damming orders on March 16, 2017 presumably because it had determined that the company's revenues were not proceeds from an unlawful business [2].

25. In order to get the damming warrants lifted, the Debtors worked with the government to provide (without subpoena and prior to careful privilege review) more than 100,000 pages of documents describing every facet of the Debtors business. The Debtors also cooperated to provide the government with mirror images of massive databases containing information the government deemed relevant to its investigation, along with other information requested by the government.

26. However, on the same day the government lifted the damming warrants, the government —unilaterally and contrary to federal grand jury secrecy rules—sent a letter to Zions disclosing the existence of an ongoing investigation into Alliance. The government further wrote that it could not provide assurances regarding Zions' lien priority in future assets of the Debtors, despite the fact that hours before it had made an informed conclusion that Alliance's business practices were now appropriate

27. Shortly after receiving the government's letter, Zions notified the Debtors that it was exercising its rights alleging the Debtors defaulted on its loans. This completely shut off the Debtors access to cash. While freezing the Debtors access to cash, Zions continued sweeping the Debtors bank accounts, and applied the cash to pay down the loan facility. In the weeks leading up to the petition, Zions' loan facility was reduced by $3,000,000.00. Zions' actions left the Debtors without the ability to continue normal business operations, such as buying replacement inventory. Additionally, Zions was unwilling, even on a temporary basis, to stop completely

---

[2] The company has recently retained David Hoffman & Associates, P.C. to act as its Compliance Advisor. Mr. Hoffman is a nationally recognized healthcare compliance expert. (See attached **Exhibit "B"**).

sweeping the Debtors bank accounts – forcing the Debtors to file the petitions on an emergency basis to seek protection from this Court.

28.     Beginning in the weeks leading up to the Petition Date and continuing through the present, the Debtors have been negotiating with a number of parties interested in funding a loan to fully repay, or "take out," the Zions loan utilizing a variety of structures. The Debtors anticipate that they will successfully negotiate a debtor-in-possession financing in the near future which will substantially reduce, or eliminate, the Debtors' liability to Zions.

**E.     Relief Sought in the First Day Pleadings to Maintain the Debtors' Business.**

29.     Concurrently with the filing of their chapter 11 cases, the Debtors are also filing a number of First Day Motions. The Debtors anticipate that the Court will conduct a hearing soon after the commencement of their chapter 11 cases at which the Court will hear and consider certain First Day Motions. The Debtors also anticipate that the Court will consider other motions and application filed on or around the Petition Date at a later time.

30.     The First Day Motions have been designed to meet the goals of (a) continuing the Debtors' operations in chapter 11 with as little disruption and loss of productivity as possible, (b) maintaining the confidence and support of their customers, employees, vendors, services provides, partners and certain other key constituencies, (c) obtaining authority to use cash collateral in the ordinary course of business on a going forward basis, and (d) establishing procedures for the smooth and efficient of these chapter 11 cases. I have review each of the First Day Motions, including the exhibits attached there and supporting memorandum of law, and I believe that the relief sought in each of the First Day Motions is tailored to meet these goals.

31.     I also believe that it is critical that the First Day Motions be heard as soon as possible. If the First Day motions are not granted on an expedited basis, it is possible that the

7

Debtors' ability to satisfy their obligations to, among others, employees, customers, and suppliers, could be jeopardized. The impact of such a stoppage would be immediate and irreparable to the Debtors' business. Accordingly, expedited consideration and approval of the First Day Motions is critical to the continued viability of the Debtors and is in the best interest of all of the Debtors' stakeholders.

I declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information and belief.

Dated:  April 10, 2017

/s/ Jeffrey Smith
Jeffrey Smith
Chief Executive Office
Uplift Rx, LLC
Alliance Medical Holdings, LLC

# EXHIBIT "A"

# DEBTORS' ORGANIZATIONAL STRUCTURE



ALLIANCE MEDICAL HOLDINGS, LLC ORGANIZATIONAL CHART







# EXHIBIT "B"

## RESUME/BIO OF DAVID HOFFMAN
## HOFFMAN & ASSOCIATES, P.C.

 David Hoffman & Associates, PC
healthcare consultants

1515 Market Street
Suite 1200
Philadelphia, PA 19102
Phone:  215-854-6357
Fax:      215-564-4582
www.DHoffmanAssoc.com

**David R. Hoffman, JD, FCPP** is President of David Hoffman & Associates, PC, a national healthcare consulting firm located in Philadelphia, Pennsylvania. This firm, created in September 2005, is dedicated to assisting healthcare providers comply with regulatory requirements and ensuring patient safety through legal and clinical compliance. The firm has been consulting with long-term care, assisted living and behavioral health providers in integrating clinical and regulatory issues into effective compliance programs and has been retained by some of the largest providers nationally. Mr. Hoffman provides compliance advice to the largest entity in the country engaged in hospital inpatient medical necessity issues. The firm serves as a state and federal monitor for long-term care facilities pursuant to HHS-OIG Corporate Integrity Agreements (CIAs) and settlements with United States Attorney's and state Attorney General's Offices and regulators. The firm was also an Independent Review Organization (IRO) for an entity providing community-based treatment programs for alcohol and chemically dependent individuals.

Mr. Hoffman's firm has also been retained by government entities to assist them in healthcare related issues including pharmaceutical and assisted living matters. These government engagements also included policy-related consultation on issues pertaining to long-term care and resident safety and fraud and abuse in community-based programs. Mr. Hoffman has also been retained by the United States Department of Justice to provide expert consultation regarding failure of care matters in institutional settings. The firm also received state funding to enhance the hospital discharge process in order to advocate on behalf of vulnerable patients transferring from a hospital to an assisted living facility or personal care home.

Before creating the firm, Mr. Hoffman was an Assistant United States Attorney in the Eastern District of Pennsylvania for 12 ½ years. He prosecuted health care fraud matters, both civilly and criminally. Mr. Hoffman led the first health care fraud RICO prosecution in the district in a case involving multiple pharmacies and pharmacists, physicians, pharmaceutical drug representatives and street dealers. As a prosecutor, Mr. Hoffman successfully brought civil and/or criminal actions against physicians, managed care organizations, nurses, pharmacists, drug manufacturers, personal care home operators, educational institutions, hospitals and nursing homes. Mr. Hoffman pioneered the use of the federal civil False Claims Act to address failure of care matters. He prosecuted 13 cases involving long-term care facilities covering thousands of nursing home residents, that resulted in Consent Orders and Settlement Agreements mandating, among other requirements, corporate compliance programs that address clinical issues, diabetes monitoring, nutrition and wound care standards, and pain management protocols. As part of all of these settlements, the nursing homes were mandated to be monitored by geriatric nurse practitioners and medical experts as warranted.

In addition, Mr. Hoffman resolved allegations against the University of Pennsylvania and Children's National Medical Center and three physician researchers emanating from a gene

1

therapy study that ended with the death of Jesse Gelsinger. This settlement recovered over a million dollars from the institutions and incorporated systemic changes designed to protect human research participants.

In 1996 and again in 2001, Mr. Hoffman was awarded the Director's Award from the United States Department of Justice Executive Office for United States Attorneys for his work in protecting the elderly from abuse and neglect. He also was awarded the 1999 and 2005 Department of Health and Human Services Inspector General's Integrity Award.

Prior to joining the U.S. Attorney's Office, Mr. Hoffman served in the Governor's Office of General Counsel as Chief Counsel for the Pennsylvania Department of Aging. At the Department, Mr. Hoffman was instrumental in drafting and implementing laws and regulations designed to protect the elderly and ensure that the PACE Program, the largest pharmaceutical program for the elderly in the country at the time, was being complied with by pharmacy providers. Mr. Hoffman directed the PACE Program's fraud unit which investigated allegations of provider and recipient fraud against the program.

Before joining the Department of Aging, Mr. Hoffman was an Assistant District Attorney in Philadelphia, and also served as judicial law clerk to the Honorable Anthony J. Scirica in state and federal court.

Mr. Hoffman is a Practice Professor of Law at the Thomas R. Kline School of Law at Drexel University. He also served as an Adjunct Professor of Law at the Beasley School of Law at Temple University and has served as a Dean's Professor at the Mayes College of Healthcare Business and Policy at the University of the Sciences.

Mr. Hoffman is the former President of The Eastern Pennsylvania Geriatrics Society (EPGS), a multidisciplinary group of health professionals and the regional affiliate of the American Geriatrics Society (AGS).

Mr. Hoffman has been elected and inducted as a Fellow for The College of Physicians of Philadelphia, the nation's oldest medical professional organization in the country.

Mr. Hoffman is a graduate of the University of Pittsburgh and the University of Pittsburgh School of Law.