**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Case No. 17-32186 (MI)** |
| | § | |
| | § | **(Chapter 11)** |
| **UPLIFT RX, LLC** | § | |
| | § | **Jointly Administered** |
| | § | |
| **Debtor(s).** | § | |
| | § | |

**DISCLOSURE STATEMENT, PURSUANT TO 11 U.S.C. § 1125,**
**FOR CHAPTER 11 PLAN OF LIQUIDATION OF**
<u>**UPLIFT RX, LLC AND AFFILIATED DEBTORS**</u>

Dated January 11, 2019
Houston, Texas

**BAKER & HOSTETLER LLP**
*Attorneys to the Debtors*

Elizabeth A. Green, Esq.
Fed ID No. 903144
Email:  egreen@bakerlaw.com
Jimmy D. Parrish, Esq.
Fed. ID No. 2687598
Email:  jparrish@bakerlaw.com
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL 32801-3432
Telephone:  (407) 649-4000
Facsimile:  (407) 841-0168

-and-

Jorian L. Rose, Esq.
(*admitted pro hac vice* )
Email:  jrose@bakerlaw.com
45 Rockefeller Plaza
New York, New York
Telephone:  (212) 589-4200
Facsimile:  (212) 589-4201

## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | **Case No. 17-32186 (MI)** |
| | § | |
| | § | **(Chapter 11)** |
| **UPLIFT RX, LLC** | § | |
| | § | **Jointly Administered** |
| | § | |
| **Debtor(s)** | § | |
| | § | |

## DISCLOSURE STATEMENT, PURSUANT TO 11 U.S.C. § 1125, FOR CHAPTER 11 PLAN OF LIQUIDATION OF UPLIFT RX, LLC AND ITS AFFILIATED DEBTORS

## I.    INTRODUCTION AND SUMMARY

This Disclosure Statement ("Disclosure Statement") is filed pursuant to the requirements of Section 1125 of Title 11 of the United States Code (the "Bankruptcy Code"). This Disclosure Statement is intended to provide adequate, necessary, and material information to enable holders of claims in the above-captioned bankruptcy case (the "Bankruptcy Case") to make reasonably informed judgment about the Plan of Liquidation (the "Plan") submitted by UpLift Rx, LLC ("UpLift") and its affiliates who are also Debtors in these jointly administered cases (collectively, the "Debtors[1]"). The Debtors are soliciting votes to accept the Plan. The overall purpose of the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Uplift, LLC (9306); Belle Pharmacy, LLC (0143); Alliance Medical Holdings, LLC (5945); Geneva Pharmacy, LLC (1929); Ohana Rx, LLC (1722); Benson Pharmacy, Inc. (6606); Kendall Pharmacy, Inc. (0825); Richardson Pharmacy, LLC (9566); Innovative Rx, LLC (9986); Charleston Rx, LLC (5852); On Track Rx, LLC (9021); Uinta Rx, LLC (7157); Goodman Pharmacy, LLC (9373); BrooksideRx, LLC (5927); Osceola Clinic Pharmacy, LLC (4886); Oak Creek Rx, LLC (9722); Waverly Pharmacy, LLC (7342); Newton Rx, LLC (9510); Lone Peak Rx, LLC (5973); Improve Rx, LLC (9120); New Jersey Rx, LLC (0035); Berkshire Pharmacy, LLC (9197); Health Saver Rx, LLC (7810); Best Rx, LLC (0346); Delaney Pharmacy, LLC (7497); New Life Pharmacy, LLC (8292); Skyline Health Services, LLC (6876); Stonybrook Pharmacy, LLC (7700); Woodward Drugs, LLC (2385); Bridgestone Pharmacy, LLC (5294); Brookhill Pharmacy, LLC (5296); Burbank Pharmacy, LLC (5227); Canyons Pharmacy, LLC (1744); Cheshire Pharmacy, LLC (6370); Conoly Pharmacy, LLC (0367); Cottonwood Pharmacy, LLC (5131); Galena Pharmacy, LLC (0672); Garnett Pharmacy, LLC (6505); Hawthorne Pharmacy, LLC (5345); Hazelwood Pharmacy, LLC (1088); Medina Pharmacy, LLC (8987); Raven Pharmacy, LLC (5671); Glendale Square Rx, Inc. (1022); Lockeford Rx, Inc. (1853); Pinnacle Pharmacy Solutions, LLC (9760); Riverfront Rx, LLC (7152); Riverbend Prescription Services, LLC (1862); Raven Pharmacy Holdings, LLC (2464); Bridgestone Pharmacy Holdings, LLC (2840); Crestwell Pharmacy Holdings, LLC (1503); Galena Pharmacy Holdings, LLC (8609); Geneva Rx Holdings, LLC (8247); Hawthorne Rx Holdings, LLC (9531); Woodward Rx Holdings, LLC (2173); Philadelphia Pharmacy Holdings, LLC (8526); Health Rx Holdings, LLC (0909); Canyon Medical, LLC (4915); Alliance Medical Administration, Inc. (2899); Ollin Pharmaceutical, LLC (9815); Alta Distributors, LLC

2

Plan is to liquidate the Debtors' assets and liabilities in a manner designed to maximize recoveries to all creditors. The Debtors believe the Plan is reasonably calculated to lead to the best possible outcome for all creditors in the shortest amount of time and is preferable to all other alternatives.

**THIS DISCLOSURE STATEMENT AND ITS RELATED DOCUMENTS ARE THE ONLY DOCUMENTS AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES TO ACCEPT THE PLAN. THIS INTRODUCTION AND SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE REMAINING PORTIONS OF THIS DISCLOSURE STATEMENT AND THIS DISCLOSURE STATEMENT IN TURN IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN. THE PLAN IS AN INTEGRAL PART OF THIS DISCLOSURE STATEMENT AND ANY HOLDER OF ANY CLAIM OR INTEREST SHOULD READ AND CONSIDER THE PLAN CAREFULLY IN LIGHT OF THIS DISCLOSURE STATEMENT IN MAKING AN INFORMED JUDGMENT ABOUT THE PLAN. IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE PLAN CONTROLS.**

**EXCEPT AS OTHERWISE PROVIDED HEREIN, CAPITALIZED TERMS NOT OTHERWISE DEFINED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE MEANING ASCRIBED TO THEM IN THE PLAN.**

**NO REPRESENTATION CONCERNING THE DEBTORS IS AUTHORIZED OTHER THAN AS SET FORTH HEREIN. ANY REPRESENTATIONS OR INDUCEMENTS MADE, WHICH ARE OTHER THAN AS CONTAINED HEREIN, SHOULD NOT BE RELIED UPON IN ARRIVING AT A DECISION ABOUT THE PLAN.**

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO AUDIT. FOR THAT REASON, AS WELL AS THE COMPLEXITY OF THE DEBTORS' BUSINESS AND FINANCIAL AFFAIRS, AND THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES, AND PROJECTIONS WITH COMPLETE ACCURACY, THE DEBTORS ARE UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT INACCURACY, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THIS DISCLOSURE STATEMENT INCLUDES FORWARD LOOKING STATEMENTS BASED LARGELY ON THE DEBTORS' CURRENT EXPECTATIONS AND PROJECTIONS ABOUT FUTURE EVENTS AND FINANCIAL TRENDS AND ARE SUBJECT TO A NUMBER OF RISKS, UNCERTAINTIES, AND ASSUMPTIONS.**

---

(7407); Eat Great Café, LLC (2314); Alliance Health Networks, LLC (1815). The Debtors' mailing address is Uplift Rx, LLC, 15462 FM 529, Houston, TX 77095.

**THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSIONS, NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.  AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, CAUSES OF ACTION, AND OTHER ACTIONS, THE DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS**.

UpLift and its affiliates referenced above are debtors under Chapter 11 of the Bankruptcy Code the above-captioned jointly administered bankruptcy case pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court").

As prescribed by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, Claims asserted against, and Interests in, the Debtors are placed into "Classes."  The Plan designates forty-five (45) separate classes of Claims and Equity Interests.  The Plan contains forty (40) Classes of Unsecured Claims.  The classification of Claims and the treatment of each Class are discussed in detail below.

Except as otherwise provided herein, capitalized terms not otherwise defined in this Disclosure Statement shall have the meaning ascribed to them in the Plan.

To the extent the legal, contractual, or equitable rights with respect to any Claim or Equity Interest asserted against the Debtors is altered, modified, or changed by treatment proposed under the Plan, such Claim or Equity Interest is considered "Impaired" and the holder of such Claim or Equity Interest is entitled to vote in favor of or against the Plan.  A ballot for voting in favor of or against the Plan (the "Ballot") will be mailed along with the order approving this Disclosure Statement.

**THE VOTE OF EACH CLAIM HOLDER OR EQUITY INTEREST HOLDER WITH AN IMPAIRED CLAIM OR INTEREST IS IMPORTANT. TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED AT THE ADDRESS AND BY THE DATE SET FORTH IN THE BALLOT.**

---

**VOTING DEADLINE**

The last day to vote to accept or reject the Plan is _____, 2019.  All votes must be received by BMC Group, Inc., 300 N. Continental Boulevard, Suite 570, El Segundo, CA 90245 by 5:00 p.m. (CST) on that day.

---

Upon receipt, the Ballots will be tabulated and the results of the voting will be presented to the Bankruptcy Court for its consideration.  As described in greater detail in Section V of this Disclosure Statement, the Bankruptcy Code prescribes certain requirements for confirmation of a plan.  The Bankruptcy Court will schedule a hearing (the "Confirmation Hearing") to consider whether the Debtors have complied with those requirements.

You should use the Ballot that will be sent to you to cast your vote for or against the Plan.  You may not cast Ballots or vote orally or by facsimile.  A ballot that does not indicate acceptance or rejection of the Plan will not be considered.  Whether or not you vote, you will be bound by the terms and treatment set forth in the Plan if the Bankruptcy Court confirms the Plan.  The Bankruptcy Court may disallow any vote accepting or rejecting the Plan if the vote is not cast in good faith.

The Bankruptcy Code permits a court to confirm a plan even if all Classes whose members are holders of Claims or Interests which are impaired within the meaning of Section 1124 of the Bankruptcy Code (each, an "Impaired Class") have not voted in favor of a plan.  Confirmation of a plan over the objection of an Impaired Class is sometimes called "cramdown."  As described in greater detail in Section V of this Disclosure Statement, the Debtors have expressly reserved the right to seek "cramdown" in the event all Impaired Classes do not vote in favor of the Plan.

**THE DEBTORS BELIEVE THAT THE PLAN IS IN THE BEST INTEREST OF ALL HOLDERS OF CLAIMS AND URGES ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN TO VOTE TO <u>ACCEPT</u> THE PLAN.**

II.     <u>DESCRIPTION OF DEBTORS' BUSINESS</u>

    A.     <u>Pre-Bankruptcy Background.</u>

       Prior to the Petition Date, the Debtors owned and operated a network of pharmacies across the United States that specialized in providing prescriptions to patients with chronic health conditions, including diabetes (the "Alliance Healthcare Network"). Within the Alliance Healthcare Network, Alliance Medical Holdings, LLC, Alliance Medical Administration, Inc., and Alliance Health Networks, LLC (collectively, the "Administration Companies") provided marketing, accounting, and administrative functions of the Alliance Healthcare Network. Other Debtors including Pinnacle Pharmacy Solutions, LLC, Riverfront Rx, LLC, Eat Great Café, LLC, New Life Pharmacy, LLC, Alta Distributors, LLC, and Ollin Pharmaceutical, LLC assisted in distribution for the Debtors ("Distribution Companies" together with the Administration Companies and Skyline Health Services, LLC, the "Corporate Debtors"). The remainder of the Debtors either owned and operated or managed pharmacies within the Alliance Healthcare Network ("Pharmacy Debtors"). Within the Alliance Healthcare Network, leads were generated by the Corporate Debtors and provided to the appropriate Pharmacy Debtor. As the Pharmacy Debtors collected revenue, cash was sent up to the Corporate Debtors and pooled together. From there the Corporate Debtors would directly pay certain expenses of the Pharmacy Debtors and/or would send money back down to the appropriate Pharmacy Debtors to pay other expenses. The Debtors did not ever account for obligations amongst themselves or keep any type of ledger showing "due to and due from" among any of the Debtors. Because of the Debtors' business model, new pharmacies were constantly being formed and/or acquired to keep up with the leads generated by the Corporate Debtors.

As of the commencement of these chapter 11 cases, the Debtors had signed asset purchase agreements for three (3) pharmacies, Baytree Pharmacy, LLC, Alameda Pharmacy, LLC, and El Dorado Pharmacy, LLC, to purchase substantially all of their assets. Prior to the closing of these acquisitions, the Debtors managed these pharmacies through Skyline Health Services, LLC ("Skyline").   Skyline had entered into pre-purchase management agreements, among other agreements, to manage and receive the benefits of operating these pharmacies prior to such closings.   For regulatory reasons, the Debtors could not close those acquisitions until their pharmacy licenses were transferred to Debtors' affiliates. The Debtors had established three (3) entities, respectively, Benson Pharmacy, LLC, Kendall Pharmacy, LLC, and Richardson, LLC, awaiting the licensure transfer and closing of the acquisitions.   The Debtors did not close on these these acquisitions.

In 2014, the Alliance Healthcare Network companies obtained financing from Zions First National Bank ("Zions") to fund their growth and ongoing operations.   The financing consisted of a term loan, along with a revolving line of credit which the Corporate Debtors would regularly pay down and then draw upon in order to operate ("Zions Obligations").   In accordance with the parties' June 24, 2014 Credit Agreement ("Credit Agreement") and related loan documents (collectively, the "Loan Documents"), Zions claimed a first-position security interest in substantially all of the Debtors income, accounts receivables, assets and property (collectively, the "Collateral").

Among other things, the Loan Documents required the Corporate Debtors to notify Zions of the formation of any subsidiaries and required those subsidiaries to become additional guarantors under the Zions Obligations.   Often there was a lag between the formation of the various pharmacy subsidiaries and formal notification to Zions and ultimately the execution of a joinder by such new subsidiaries.

Beginning in 2016, the Debtors started falling out of compliance on various loan covenants under the Credit Agreement.  In addition, the Debtors were locked into several other disputes that had a significant negative impact on the company and its operations.  In August of 2016, certain of the Debtors and Zions executed a Waiver and Second Amendment to Credit Agreement ("Second Amendment"), which recognized several pending defaults, including the failure of the Debtors to promptly notify Zions of the formation of new pharmacy subsidiaries and making those new subsidiaries obligors under the Loan Documents.  Over the course of several months, the parties worked together to prepare a complete list of new subsidiaries and a joinder agreement to obligate those subsidiaries under the Loan Documents.  As of the beginning of February 2017, no joinder agreement had been executed and Zions had transferred management of the relationship to its special assets group.  Finally, on or about February 22, 2017, forty-three (43) pharmacy subsidiaries of Alliance Holdings (the "Joinder Pharmacies") and forty-three (43) pharmacy holding companies of Alliance Holdings (the "Holding Companies," and together with the Joinder Pharmacies, the "Additional Alliance Parties") entered into a joinder agreement (the "Joinder Agreement") whereby the Additional Alliance Parties agreed to be bound by all of the terms of the Loan Documents.

One day after execution of the Joinder Agreement, on February 23, 2017, the United States Government ("Government") executed sealed search and seizure warrants on several of the Debtors in connection with a United States Department of Justice inquiry into the Debtors' purchase of certain secondary market diabetic testing strips.  The Government raided offices of the Debtors and served sealed warrants on Zions to effectuate the seizure of the Debtors' business funds and other assets.  The Government also caused Zions to "dam" a substantial portion of accounts receivables to be received by the Debtors and seized approximately $1.2 million in cash from the Debtors' bank accounts with Zions.

The Government's actions immediately halted the Debtors' operations as it had no ability to access funds to operate. The Government's actions also prevented Zions from sweeping certain of the Debtors' accounts to pay down the term loan and the line of credit. Thereafter, the Debtors provided volumes of business documents to the Government and negotiated to have the damming warrants lifted on the Debtors' bank accounts, so that the Debtors could resume normal operations. The Government ultimately lifted the damming orders on March 16, 2017, presumably because it had determined that the Debtors' revenues were not proceeds from an unlawful business.

Unfortunately, as the damming orders were lifted, Zions declared a default on the loans and froze the Debtors' accounts. This completely shut off the Debtors' access to cash. Despite the freeze on the accounts, Zions continued sweeping the bank accounts and applying the cash to pay down the Zions Obligations. In the weeks just prior to the Petition Date, the Zions Obligations were reduced by $3,000,000.00. While Zions allowed for certain minimal expenses to be paid, the Debtors had no ability to order product to meet continuing customer demands. The Debtors attempted to negotiate a workout with Zions that would allow the Debtors to continue to operate and provide a reasonable time period for the Debtors to refinance in order to take out the Zions Obligations, but were unsuccessful. The Debtors decided that the only way to protect the going concern value of the business and maximize value for their creditors would be to seek protection under the Bankruptcy Code.

B.       Significant Events in the Bankruptcy Cases.

On April 7-9, 2017 (the "Petition Date"), each of the Debtors filed with the Bankruptcy Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Following the filing of the voluntary petitions, the Debtors filed several first day motions seeking emergency relief, including an emergency motion for the authority to use cash collateral (Doc. No. 8)("Cash Collateral Motion"). On April 11, 2017 at the emergency hearing on the Cash Collateral

9

Motion, both Zions and the Government asserted an interest in the Debtors' cash and objected to the Debtors' continued use of cash collateral.  The parties agreed to limited use of cash collateral for one week and the Bankruptcy Court scheduled a continued hearing for April 18, 2017.  At a continued hearing on the Cash Collateral Motion held on April 18, 2017 and with the agreement of the parties, the Bankruptcy Court entered an order approving further use of cash collateral by the Debtors on an interim basis, but entered an order requiring the appointment of a Chapter 11 Trustee in the Debtors' cases as adequate protection to both Zions and the Government (Doc. No. 37) ("Trustee Order").

On May 3, 2017, the United States Trustee for the Southern District of Texas appointed an official committee of the Debtors' unsecured creditors in the Bankruptcy Cases consisting of: BluPax Pharma, Inc., SBK Sales, Inc., Strategic Products Group, Inc., S.P. Distributors, and Zeetogroup, LLC   (collectively, the "Committee").  On May 18, 2017, the Bankruptcy Court entered its Order Appointing Ronald Glass ("Trustee") as Chapter 11 Trustee (Doc. No. 307) ("Trustee Order").  Following the then-recent appointment of both the Committee and the Trustee, at the continued hearing on the Cash Collateral Motion held on May 18, 2017, the parties agreed to approve use of cash collateral on a further interim basis and adjourn the final hearing on the Cash Collateral Motion.

Upon the appointment of the Committee and the Trustee, the Debtors and Committee focused on two primary objectives:  (i) locating a buyer for the Debtors' assets and (ii) analyzing Zions' secured position, including potential challenges to the validity, priority, or extent of Zions' lien as well as potential affirmative claims against Zions related to the timing and circumstances surrounding the Joinder Agreement and amounts paid by the Debtors to Zions under various legal theories. Following the appointment of the Trustee, the Debtors transitioned from its existing financial advisors at PricewaterhouseCoopers ("Pricewaterhouse") to GlassRatner

Advisory & Capital Group, LLC ("GlassRatner"). GlassRatner immediately started identifying potential purchasers and intensified discussions with parties already known to have an interest in purchasing the Debtors' assets. While efforts to sell the Debtors business were intensifying, the Debtors, the Committee, and Zions were engaged in extensive discovery regarding the potential claims against Zions. In an attempt to resolve the dispute with Zions, the Trustee, along with legal and financial advisors of the Debtors, Zions, and the Committee attended an in-person mediation in Houston, Texas on July 8, 2017. While the mediation was not successful, the parties continued negotiating and were ultimately able to reach an agreement that allowed the Debtors to continue to use cash collateral and substantially reduce Zions' claims against the Debtors.

The settlement reached by and between the Debtors, the Committee, and Zions was the product of extensive negotiations between the parties. A pivotal part of the settlement included the Debtors' and the Trustee's efforts to sell the Debtors' business as a going concern. Fortunately, the sale of the Debtors' business as a going concern was already a priority of the Debtors and the Trustee. On September 13, 2017, the Debtors, the Committee, and Zions executed a settlement agreement and stipulation that formalized the settlement and resolved the pending objections to the Debtors' use of cash collateral and the potential claims against Zions (the "Settlement Agreement"). The Settlement Agreement required the Debtors' to continue their marketing and sale process and included specific bench marks. In addition to the sale benchmarks, the Settlement Agreement provided that Zions would receive the first $7.5 million in proceeds from the sale of the Debtors' assets and that the Debtors would receive the next $8 million in proceeds. Proceeds above $15.5 million would be split fifty-five percent (55%) to Zions and forty-five percent (45%) to the Debtors' estates. The Settlement Agreement also provided for a release to Zions from the Debtors and for Zions to receive all rights associated with the funds seized by the Government.

On September 14, 2017, the Debtors filed their motion to approve the Settlement Agreement (Doc. No. 549) ("Compromise Motion").  Shortly thereafter, on September 20, 2017, the Debtors filed their motion to approve bid procedures and sale of substantially all of their assets free and clear of all liens, claims, and encumbrances (Doc. No. 561) ("Sale Motion").  Several creditors, including Highland Wholesale, LLC and Kross Pharmaceuticals, LLC, objected to both the Sale Motion and the Compromise Motion.  Further, the Committee objected due to, among other things, its position that the releases accompanying the proposed sale were inappropriate considering the connection between the proposed purchaser and certain insiders of the Debtors. The Bankruptcy Court held a final hearing on the Sale Motion on November 7, 2017 and entered its Order Authorizing the Sale Free and Clear of All Lines, Claims, and Encumbrances (Doc. No. 663) ("Sale Order"), which approved the sale of the Debtors assets to Upwell Holding, Inc. for $14,500,000.00.  Prior to the Court's ruling on and entry of the Sale Order, the Committee withdrew its objection once the insiders' releases were restricted such that those insiders could still face liability up to the amount of the Debtors' directors and officers insurance coverage.  The hearing on the Compromise Motion was continued for several months to allow for significant discovery by the objecting parties and allow the Trustee to recover from back surgery.  Following extensive discovery, the Bankruptcy Court conducted a multi-day trial on the Compromise Motion on various days from February 16- March 26, 2017.  At the conclusion of the trial, the Bankruptcy Court overruled the various objections and approved the Compromise Motion.  As a result of the sale of the Debtors' assets and Settlement Agreement, the Debtors' estates collectively received $7 million in proceeds from the sale of the Debtors' assets ("Settlement Proceeds").

C.    The Settlement Proceeds Allocation

Following the approval of the Compromise Motion, the Debtors and the Committee have spent an extraordinary amount of time analyzing the Debtors' books and records and various

12

operations of the Debtors in order to determine the appropriate allocation of the Settlement Proceeds and other assets among the Debtors.  As part of the analysis, the Debtors and Committee focused on specific rights of each of the Debtors.  The objective of the analysis was not to determine the value of each individual entity, but rather the relative value of the entities between each other and the whole enterprise as sold.  Multiple approaches including a net income approach, an asset approach, and net book value approach were considered.  Ultimately, the Debtors and the Committee agreed on a net book value approach because that approach could account for the deficiency of intercompany record keeping and the value of assets sold and still account for the revenue-driving activities and administrative functions provided by the Corporate Debtors to the Pharmacy Debtors.

In applying the net book value approach to the Debtors, Pharmacy Debtors are charged for the selling, marketing, and administrative expenses necessary to produce their respective sales and the Corporate Debtors are adjusted to account for the cash received from sales in the Pharmacy Debtors.  Goodwill and intangible assets recorded from prior purchases and mergers were written down to net realizable value.  Receivables that were deemed uncollectible because of their age or because of other underlying issues such as poor documentation, dispute, etc. were removed from the value calculation.  Finally, any fixed assets were adjusted to current usable assets instead of depreciated value.  A copy of the final allocation analysis which includes the allocation of the Settlement Proceeds based upon the net book value approach) is attached hereto as **Exhibit A** ("Allocation Analysis")**.**

    D.    <u>Dissolution of Certain Debtors</u>

Certain of the Debtors either have no allowed claims asserted against them or have so few claims that further administration of their respective estates would be cost prohibitive.  As a result, and as part of the overall Allocation Analysis, Berkshire Pharmacy, LLC (9197), Best Rx,

LLC (0346), Burbank Pharmacy, LLC (5227), Canyons Pharmacy, LLC (1744), Raven Pharmacy Holdings, LLC (2464), Bridgestone Pharmacy Holdings, LLC (2840), Crestwell Pharmacy Holdings, LLC (1503), Galena Pharmacy Holdings, LLC (8609), Geneva Rx Holdings, LLC 8247), Hawthorne Rx Holdings, LLC (9531), Woodward Rx Holdings, LLC (2173), Philadelphia Pharmacy Holdings, LLC (8526), and Health Rx Holdings, LLC (0909) (collectively, the "Dismissed Debtors") will each seek dismissal and be dissolved.  Prior to dismissal, the Debtors will allocate a total of $164.00 to Best Rx, LLC and $75 to Burbank Pharmacy, LLC which satisfy all claims against those two entities prior to their dismissal and dissolution.  No allocation will be made toward the remaining entities to be dismissed as they have no allowed claims against them.

      E.     <u>The Litigation Recovery Allocation</u>

      Notwithstanding the fact that the D&O Causes of Action are held within the Corporate Debtors, the proceeds of any recovery from the D&O Causes of Action will be split pro rata among each of the Debtors, excluding only the Dismissed Debtors.  The pro rata share to be allocated to each of the Corporate Debtors will be pooled together for the benefit of allowed claims against the substantively consolidated Corporate Debtors.  All other litigation recoveries will be allocated solely to the Debtor entity that holds the litigation claim.

## III.    <u>THE PLAN</u>

**THE FOLLOWING SUMMARY IS INTENDED ONLY TO PROVIDE AN OVERVIEW OF THE DEBTORS' PLAN.  ANY PARTY IN INTEREST CONSIDERING A VOTE ON THE PLAN SHOULD CAREFULLY READ THE PLAN IN ITS ENTIRETY BEFORE MAKING A DETERMINATION TO VOTE IN FAVOR OF OR AGAINST THE PLAN.  THIS SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE PLAN.**

      A.     <u>Overview.</u>

      The purpose of the Plan is to provide for the equitable distribution of the Settlement Proceeds, proceeds from the D&O Causes of Action and the liquidation and orderly distribution to creditors of the Debtors' remaining assets.

The Plan contemplates the creation of the Liquidating Trust, into which all of the Debtors' assets will be transferred.  On the Effective Date, the Settlement Proceeds will be distributed to creditors of the Debtors entitled to a percentage in accordance with the Allocation Analysis.  The Liquidating Trust will be created to liquidate the remaining assets of the Debtors and to make appropriate distributions to the respective Debtors in accordance with the Plan.  The D&O Causes of Action and/or any proceeds therefrom will be transferred to the Liquidating Trust for the benefit of all creditors as provided in the Plan.  All other Estate Assets including other Causes of Action will be transferred to the Liquidating Trust, so that the Liquidating Trustee can liquidate such assets and make appropriate distributions to the respective Debtors under the Plan.  While creditors of each of the Debtors will each be beneficiaries of the single Liquidating Trust, each creditor's distribution will be wholly dependent upon the recovery from Causes of Action and related expenses of that creditor's particular debtor.  For example, the creditors of Brookside Rx, LLC shall be entitled to a recovery only of the liquidated assets of Brookside Rx, LLC (including Brookside Rx, LLC's pro rata share of any proceeds from the D&O Causes of Action) after payment of any associated administrative costs related to the liquidation of the Brookside Rx, LLC assets.  The Liquidating Trustee shall be responsible for tracking assets and expenses of each debtor within the Liquidating Trust.

All Claims against the Debtors shall be classified and treated pursuant to the terms of the Plan. As noted more fully below, the Plan contains forty-five (45) Classes of Claims and Interests. There are three (3) Classes of Secured Claims, one (1) Class of Priority Non-Tax Claims, forty (40) Classes of Unsecured Claims, and one (1) Class of Interests.

B.    Classification and Treatment of Administrative Expense Claims, Priority Tax Claims and United States Trustee Statutory Fees.

1.    Administrative Claims.

a.      Filing Administrative Claims.

Any Person that asserts an Administrative Claim, or a protective application on account of any Administrative Claim, arising before the Effective Date, including Claims under Section 503(b) of the Code, but excluding (a) fees payable by the Debtors pursuant to 28 U.S.C. §1930 or any interest accruing thereto; (b)  fees and costs of professional advisors (e.g., attorneys, financial advisors, and accountants) retained by the Debtors, the Trustee, or the Committee in the Case ("Professional Fee Claims"); and (c) claims that are entitled to priority pursuant to §507(a)(8) of the Bankruptcy Code, shall, on or before the Administrative Claims Bar Date, file an application, motion, or request, as called for by the Rules, with the Bankruptcy Court for allowance of such Claim as an Administrative Claim specifying the amount of and basis for such Claim; *provided, however,* that applicants or movants who have previously filed applications or motions with the Bankruptcy Court need not file another such paper for the same Claim.  Failure to file a timely application or motion for allowance pursuant to this Section by any Holder of an Administrative Claim for an expense or liability incurred shall bar such a claimant from seeking recovery on such Administrative Claim.

b.      Treatment of Administrative Claims.

Except to the extent that a Holder of an Allowed Administrative Claim agrees to a different treatment, in writing, each Holder of an Allowed Administrative Claim shall receive, in full satisfaction, settlement and release of and in exchange for such Allowed Administrative Claim, Cash in an amount equal to such Allowed Administrative Claim, either:  (i) as soon as reasonably practicable after the Effective Date, or (ii) if the Administrative Claim is not Allowed as of the Effective Date, thirty (30) days after the date on which such Administrative Claim becomes an Allowed Administrative Claim.  Any Professional Fee Claims not paid under the Plan prior to the Effective Date shall be assumed by the Liquidating Trust as a claim payable

16

in the same priority and amount as would be payable by the Debtors. Any amounts that are not paid to a claimant on account of an Allowed 503(b)(9) Administrative Claims prior to the Effective Date for any reason shall retain their Chapter 11 administrative expense priority for payment under any further distribution of funds by the Liquidating Trust on account of the Debtor the claim is asserted against, including but not limited to post-effective date distributions, under the Liquidating Trust; provided, however, holders of Allowed 503(b)(9) Administrative Claims shall only be paid to the extent the Liquidating Trust has sufficient funds to pay amounts to its creditors.

     2.    <u>Priority Tax Claims.</u>

Each holder of an Allowed Priority Tax Claim will be paid either (i) the full amount of the Allowed Priority Tax Claim (without post-petition interest or penalty) in Cash on the Effective Date or as soon thereafter as is reasonably practicable, or (ii) such lesser amount as to which the holder of an Allowed Priority Tax Claim and the Liquidating Trustee might otherwise agree.

     3.    <u>Fees Under 28 U.S.C. § 1930.</u>

After confirmation, the Liquidating Trustee shall be responsible for filing joint post-confirmation quarterly financial reports on behalf of the Liquidating Trust. The Liquidating Trust shall be liable for all United States Trustee quarterly fees as they accrue until the Bankruptcy Court enters a final decree closing the case or enters an order either converting the case to a case under Chapter 7 or dismissing the case.

    C.    <u>Classification of Claims and Interests.</u>

The following table designates the Classes of Claims and Interests against the Debtors and specifies which of those Classes are (i) impaired or unimpaired by the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with Section 1126 of the Code, and (iii) deemed to reject the Plan:

17

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 | Allowed Priority Non-Tax Claims | Unimpaired | No |
| Class 2 | Zions Bank Claims | Unimpaired | No |
| Class 3 | Ad Valorem Tax Claims | Unimpaired | No |
| Class 4 | RA Health Claim Against UpLift Rx, LLC | Impaired | Yes |
| Class 5 | General Unsecured Claims Against the Corporate Debtors | Impaired | Yes |
| Class 6 | General Unsecured Claims Against UpLift Rx, LLC | Impaired | Yes |
| Class7 | Belle Pharmacy, LLC | Impaired | Yes |
| Class 8 | Benson Pharmacy, LLC | Impaired | Yes |
| Class 9 | Bridgestone Pharmacy, LLC | Impaired | Yes |
| Class 10 | Brookhill Pharmacy, LLC | Impaired | Yes |
| Class 11 | Brookside Rx, LLC | Impaired | Yes |
| Class 12 | Canyon Medical, LLC | Impaired | Yes |
| Class 13 | Charleston Rx, LLC | Impaired | Yes |
| Class 14 | Cheshire Pharmacy, LLC | Impaired | Yes |
| Class 15 | Conoly Pharmacy, LLC | Impaired | Yes |
| Class 16 | Cottonwood Pharmacy, LLC | Impaired | Yes |
| Class 17 | Delaney Pharmacy, LLC | Impaired | Yes |
| Class 18 | Galena Pharmacy, LLC | Impaired | Yes |
| Class 19 | Garnett Pharmacy, LLC | Impaired | Yes |
| Class 20 | Geneva Pharmacy, LLC | Impaired | Yes |
| Class 21 | Glendale Square Rx, Inc. | Impaired | Yes |
| Class 22 | Goodman Pharmacy, LLC | Impaired | Yes |
| Class 23 | Hawthorne Pharmacy, LLC | Impaired | Yes |
| Class 24 | Hazelwood Pharmacy, LLC | Impaired | Yes |
| Class 25 | Health Saver Rx, LLC | Impaired | Yes |
| Class 26 | Improve Rx, LLC | Impaired | Yes |
| Class 27 | Innovative Rx, LLC | Impaired | Yes |
| Class 28 | Kendall Pharmacy, LLC | Impaired | Yes |
| Class 29 | Lockeford Rx, Inc. | Impaired | Yes |
| Class 30 | Lone Peak Rx, LLC | Impaired | Yes |
| Class 31 | Medina Pharmacy, LLC | Impaired | Yes |
| Class 32 | New Jersey Rx, LLC | Impaired | Yes |
| Class 33 | Newton Rx, LLC | Impaired | Yes |
| Class 34 | Oak Creek Rx, LLC | Impaired | Yes |
| Class 35 | Ohana Rx, Inc. | Impaired | Yes |
| Class 36 | On Track Rx, LLC | Impaired | Yes |
| Class 37 | Osceola Clinic Pharmacy, LLC | Impaired | Yes |
| Class 38 | Raven Pharmacy, LLC | Impaired | Yes |
| Class 39 | Richardson Pharmacy, LLC | Impaired | Yes |

4816-2482-0357.1

| Class 40 | Riverbend Prescription Services, Inc. | Impaired | Yes |
| Class 41 | Stonybrook Pharmacy, LLC | Impaired | Yes |
| Class 42 | Uinta Rx, LLC | Impaired | Yes |
| Class 43 | Waverly Pharmacy, LLC | Impaired | Yes |
| Class 44 | Woodward Drugs, LLC | Impaired | Yes |
| Class 45 | Interests in the Debtors | Impaired | No (deemed to reject) |

D.      Treatment of Claims and Equity Interests

1.      Class 1 — Priority Non-Tax Claims

The legal, equitable and contractual rights of the Holders of Class 1 Claims are unaltered by the Plan.  Except to the extent that a Holder of an Allowed Priority Non-Tax Claim agrees to different treatment, each Holder of an Allowed Priority Non-Tax Claim shall receive, in full satisfaction, settlement and release of and in exchange for such Allowed Priority Non-Tax Claim, Cash in an amount equal to such Allowed Priority Non-Tax Claim, either:  (i) as soon as reasonably practicable after the Effective Date, or (ii) if the Priority Non-Tax Claim is not Allowed as of the Effective Date, thirty (30) days after the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim.  To the extent that such claims exist, Priority Non-Tax Claims are unimpaired and, as such, are not entitled to vote on the Plan.

2.      Class 2 — Zions Bank Claims.

Class 2 consists of the Zions Bank Claims against the Debtors.  Pursuant to the Settlement Agreement approved by the Bankruptcy Court, the Zions Bank Claims against all of the Debtors were fully satisfied by the Zions Bank Settlement Payment.  Zions' legal, equitable, and contractual rights are unaltered by the Plan.  Other than the Zions Bank Settlement Payment, Zions Bank shall neither receive nor retain any property or interest in property on account of the Zions Bank Claims and Zions Bank shall have no Claim against the Debtors or the Liquidating Trust.

4816-2482-0357.1

Class 2 in Unimpaired.  The Holder of the Zions Bank Claims is not entitled to vote for or against the Plan.

3. <u>Class 3 – Ad Valorem Tax Claims.</u>

Class 3 consists of the Ad Valorem Tax Claims against the Debtors.  The legal, equitable, and contractual rights of the Holders of Class 3 Claims are unaltered by the Plan. Except to the extent that a Holder of an Allowed Ad Valorem Tax Claim against the Debtors agrees to a different treatment of such Claim, each such Holder shall receive, from the indebted Debtors' Estate Assets, Cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Ad Valorem Tax Claim on the Effective Date or as soon thereafter as is practicable.

Class 3 is Unimpaired.   The Holders of Class 3 Claims are not entitled to vote to accept or reject the Plan.

4. <u>Class 4 – RA Health Claim Against UpLift Rx, LLC.</u>

Class 4 consists of the RA Health Claim against Uplift Rx, LLC.  The RA Health Claim was filed against Uplift Rx, LLC in the amount of $40,000.00 and is allegedly fully secured by all assets of Uplift Rx, LLC.  The claim is supported by an unsigned asset purchase agreement, and portions of various other documents.  Uplift Rx, LLC believes the RA Health Claim is not a valid Secured Claim, and that, to the extent the underlying Claim it valid, it is an Unsecured Claim.  The Debtors intend to object to the RA Health Claim.  In the event the RA Health Claim is found to be a valid Secured Claim against the assets of Uplift Rx, LLC that is senior to the claim of Zions Bank, then Uplift Rx, LLC shall pay the claim over five (5) years in equal annual payments on the annual anniversary of the Effective Date, plus interest at 5%.  In the event the RA Health Claim is an Allowed Unsecured Claim, it shall be treated as a Class 5 claim.

Class 4 is Impaired.  The Holder of the RA Heath Claim is entitled to vote to accept or reject the Plan.

5.      Class 5 – General Unsecured Claims Against the Corporate Debtors.

Class 5 consists of the Allowed Unsecured Claims against any of the Corporate Debtors.  As set forth in the Plan, on the Effective Date, the Corporate Debtors shall be substantively consolidated into a single entity.  Each Allowed Unsecured Claim in Class 5 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to the Corporate Debtors under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from the Corporate Debtors' Liquidating Trust Assets less applicable expenses.

The Class 5 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

6.      Class 6 - General Unsecured Claims Against UpLift Rx, LLC.

Class 6 consists of the Allowed Unsecured Claims against Uplift Rx, LLC. As set forth in the Plan, Uplift Rx, LLC shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 6 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Uplift Rx, LLC under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Uplift Rx, LLC's Liquidating Trust Assets less applicable expenses.

The Class 6 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

7.      Class 7 - General Unsecured Claims Against Belle Pharmacy, LLC.

Class 7 consists of the Allowed Unsecured Claims against Belle Pharmacy, LLC.  As set forth in the Plan, Belle Pharmacy, LLC shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 7 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Belle Pharmacy, LLC under the Allocation Analysis; and (ii)

Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Belle Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 7 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

8.    <u>Class 8 - General Unsecured Claims Against Benson Pharmacy, LLC</u>.

Class 8 consists of the Allowed Unsecured Claims against Benson Pharmacy, LLC.  As set forth in the Plan, Benson Pharmacy, LLC shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 8 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Benson Pharmacy, LLC under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Benson Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 8 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

9.    <u>Class 9 - General Unsecured Claims Against Bridgestone Pharmacy, LLC</u>.

Class 9 consists of the Allowed Unsecured Claims against Bridgestone Pharmacy, LLC.  As set forth in the Plan, Bridgestone Pharmacy, LLC shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 9 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Bridgestone Pharmacy, LLC under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Bridgestone Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 9 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

10. <u>Class 10 - General Unsecured Claims Against Brookhill Pharmacy, LLC</u>.

Class 10 consists of the Allowed Unsecured Claims against Brookhill Pharmacy, LLC. As set forth in the Plan, Brookhill Pharmacy, LLC shall not be substantively consolidated with any other Debtor. Each Allowed Unsecured Claim in Class 10 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Brookhill Pharmacy, LLC under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Brookhill Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 10 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

11. <u>Class 11 - General Unsecured Claims Against BrooksideRx, LLC</u>.

Class 11 consists of the Allowed Unsecured Claims against BrooksideRx, LLC. As set forth in the Plan, Brookside Rx, LLC shall not be substantively consolidated with any other Debtor. Each Allowed Unsecured Claim in Class 11 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to BrooksideRx, LLC under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from BrooksideRx, LLC's Liquidating Trust Assets less applicable expenses.

The Class 11 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

12. <u>Class 12 - General Unsecured Claims Against Canyon Medical, LLC</u>.

Class 12 consists of the Allowed Unsecured Claims against Canyon

Medical, LLC.  As set forth in the Plan, Canyon Medical, LLC shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 12 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Canyon Medical, LLC under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Canyon Medical, LLC's Liquidating Trust Assets less applicable expenses.

The Class 12 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

13. <u>Class 13 - General Unsecured Claims Against Charleston Rx, LLC</u>.

Class 13 consists of the Allowed Unsecured Claims against Charleston Rx, LLC.  As set forth in the Plan, Charleston Rx, LLC shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 13 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Charleston Rx, LLC under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Charleston Rx, LLC's Liquidating Trust Assets less applicable expenses.

The Class 13 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

14. <u>Class 14 - General Unsecured Claims Against Cheshire Pharmacy, LLC</u>.

Class 14 consists of the Allowed Unsecured Claims against Cheshire Pharmacy, LLC.  As set forth in the Plan, Cheshire Pharmacy, LLC shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 14 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Cheshire Pharmacy, LLC under the

24

Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Cheshire Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 14 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

15. <u>Class 15 - General Unsecured Claims Against Conoly Pharmacy, LLC</u>.

Class 15 consists of the Allowed Unsecured Claims against Conoly Pharmacy, LLC.  As set forth in the Plan, Conoly Pharmacy, LLC shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 15 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Conoly Pharmacy, LLC under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Conoly Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 15 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

16. <u>Class 16 - General Unsecured Claims Against Cottonwood Pharmacy, LLC</u>.

Class 16 consists of the Allowed Unsecured Claims against Cottonwood Pharmacy, LLC.  As set forth in the Plan, Cottonwood Pharmacy, LLC shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 16 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Cottonwood Pharmacy, LLC under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Cottonwood Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 16 Claims are Impaired and, as such, are entitled to vote to accept or

25

reject the Plan.

17.     <u>Class 17 - General Unsecured Claims Against Delaney Pharmacy, LLC</u>.

Class 17 consists of the Allowed Unsecured Claims against Delaney Pharmacy, LLC.  As set forth in the Plan, Delaney Pharmacy, LLC shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 17 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Delaney Pharmacy, LLC under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Delaney Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 17 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

18.     <u>Class 18 - General Unsecured Claims Against Galena Pharmacy, LLC</u>.

Class 18 consists of the Allowed Unsecured Claims against Galena Pharmacy, LLC.  As set forth in the Plan, Galena Pharmacy, LLC shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 18 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Galena Pharmacy, LLC under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Galena Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 18 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

19.     <u>Class 19 - General Unsecured Claims Against Garnett Pharmacy, LLC</u>.

26

Class 19 consists of the Allowed Unsecured Claims against Garnett Pharmacy, LLC.  As set forth in the Plan, Garnett Pharmacy, LLC shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 19 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Garnett Pharmacy, LLC under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Garnett Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 19 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

20.     Class 20 - General Unsecured Claims Against Geneva Pharmacy, LLC.

Class 20 consists of the Allowed Unsecured Claims against Geneva Pharmacy, LLC.  As set forth in the Plan, Geneva Pharmacy, LLC shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 20 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Geneva Pharmacy, LLC under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Geneva Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 20 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

21.     Class 21 - General Unsecured Claims Against Glendale Square Rx, Inc.

Class 21 consists of the Allowed Unsecured Claims against Glendale Square Rx, Inc.  As set forth in the Plan, Glendale Square Rx, Inc. shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 21 shall receive (i)

27

a Pro Rata Share of the Settlement Proceeds allocated to Glendale Square Rx, Inc. under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Glendale Square Rx, Inc.'s Liquidating Trust Assets less applicable expenses.

The Class 21 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

22.  <u>Class 22 - General Unsecured Claims Against Goodman Pharmacy, LLC</u>

Class 22 consists of the Allowed Unsecured Claims against Goodman Pharmacy, LLC.  As set forth in the Plan, Goodman Pharmacy, LLC, shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 22 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Goodman Pharmacy, LLC under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Goodman Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 22 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

23.  <u>Class 23 - General Unsecured Claims Against Hawthorne Pharmacy, LLC</u>

Class 23 consists of the Allowed Unsecured Claims against Hawthorne Pharmacy, LLC.  As set forth in the Plan, Hawthorne Pharmacy, LLC, shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 23 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Hawthorne Pharmacy, LLC under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Hawthorne Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

28

The Class 23 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

24.    <u>Class 24 - General Unsecured Claims Against Hazelwood Pharmacy, LLC</u>

Class 24 consists of the Allowed Unsecured Claims against Hazelwood Pharmacy, LLC.  As set forth in the Plan, Hazelwood Pharmacy, LLC, shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 24 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Hazelwood Pharmacy, LLC under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Hazelwood Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 24 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

25.    <u>Class 25 - General Unsecured Claims Against Health Saver Rx, LLC</u>

Class 25 consists of the Allowed Unsecured Claims against Health Saver Rx, LLC.  As set forth in the Plan, Health Saver Rx, LLC, shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 25 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Health Saver Rx, LLC under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Health Saver Rx, LLC's Liquidating Trust Assets less applicable expenses.

The Class 25 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

4816-2482-0357.1

26.   <u>Class 26 - General Unsecured Claims Against Improve Rx, LLC</u>

Class 26 consists of the Allowed Unsecured Claims against Improve Rx, LLC.  As set forth in the Plan, Improve Rx, LLC, shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 26 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Improve Rx, LLC under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Improve Rx, LLC's Liquidating Trust Assets less applicable expenses.

The Class 26 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

27.   <u>Class 27 - General Unsecured Claims Against Innovative Rx, LLC</u>

Class 27 consists of the Allowed Unsecured Claims against Innovative Rx, LLC.  As set forth in the Plan, Innovative Rx, LLC, shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 27 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Innovative Rx, LLC under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Innovative Rx, LLC's Liquidating Trust Assets less applicable expenses.

The Class 27 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

28.   <u>Class 28 - General Unsecured Claims Against Kendall Pharmacy, LLC</u>

Class 28 consists of the Allowed Unsecured Claims against Kendall Pharmacy, LLC.  As set forth in the Plan, Kendall Pharmacy, LLC, shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 28 shall receive (i)

a Pro Rata Share of the Settlement Proceeds allocated to Kendall Pharmacy, LLC under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Kendall Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 28 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

29.     <u>Class 29 - General Unsecured Claims Against Lockeford Rx, LLC</u>

Class 29 consists of the Allowed Unsecured Claims against Lockeford Rx, LLC.  As set forth in the Plan, Lockeford Rx, LLC, shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 29 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Lockeford Rx, LLC under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Lockeford Rx, LLC's Liquidating Trust Assets less applicable expenses.

The Class 29 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

30.     <u>Class 30 - General Unsecured Claims Against Lone Peak Rx, LLC</u>

Class 30 consists of the Allowed Unsecured Claims against Lone Peak Rx, LLC.  As set forth in the Plan, Lone Peak Rx, LLC, shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 30 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Lone Peak Rx, LLC under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Lone Peak Rx, LLC's Liquidating Trust Assets less applicable expenses.

The Class 30 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

31.     <u>Class 31 - General Unsecured Claims Against Medina Pharmacy, LLC</u>

Class 31 consists of the Allowed Unsecured Claims against Medina Pharmacy, LLC.  As set forth in the Plan, Medina Pharmacy, LLC, shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 31 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Medina Pharmacy, LLC under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Medina Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 31 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

32.     <u>Class 32 - General Unsecured Claims Against New Jersey Rx, LLC</u>

Class 32 consists of the Allowed Unsecured Claims against New Jersey Rx, LLC.  As set forth in the Plan, New Jersey Rx, LLC, shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 32 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to New Jersey Rx, LLC under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from New Jersey Rx, LLC's Liquidating Trust Assets less applicable expenses.

The Class 32 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

33.     <u>Class 33 - General Unsecured Claims Against Newton Rx, LLC</u>

Class 33 consists of the Allowed Unsecured Claims against Newton Rx,

LLC.  As set forth in the Plan, Newton Rx, LLC, shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 33 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Newton Rx, LLC under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Newton Rx, LLC's Liquidating Trust Assets less applicable expenses.

The Class 33 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

34.    Class 34 - General Unsecured Claims Against Oak Creek Rx, LLC

Class 34 consists of the Allowed Unsecured Claims against Oak Creek Rx, LLC.  As set forth in the Plan, Oak Creek Rx, LLC, shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 34 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Oak Creek Rx, LLC under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Oak Creek Rx, LLC's Liquidating Trust Assets less applicable expenses.

The Class 34 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

35.    Class 35 - General Unsecured Claims Against Ohana Rx, Inc.

Class 35 consists of the Allowed Unsecured Claims against Ohana Rx, Inc. As set forth in the Plan, Ohana Rx, Inc., shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 35 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Ohana Rx, Inc. under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust

Cash derived from Ohana Rx, Inc.'s Liquidating Trust Assets less applicable expenses.

The Class 35 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

36.    <u>Class 36 - General Unsecured Claims Against On Track Rx, LLC</u>

Class 36 consists of the Allowed Unsecured Claims against On Track Rx, LLC.  As set forth in the Plan, On Track Rx, LLC, shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 36 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to On Track Rx, LLC under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from On Track Rx, LLC's Liquidating Trust Assets less applicable expenses.

The Class 36 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

37.    <u>Class 37 - General Unsecured Claims Against Osceola Clinic Pharmacy, LLC</u>

Class 37 consists of the Allowed Unsecured Claims against Osceola Clinic Pharmacy, LLC.  As set forth in the Plan, Osceola Clinic Pharmacy, LLC, shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 37 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Osceola Clinic Pharmacy, LLC under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Osceola Clinic Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 37 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

38.    Class 38 - General Unsecured Claims Against Raven Pharmacy, LLC

Class 38 consists of the Allowed Unsecured Claims against Raven Pharmacy, LLC.  As set forth in the Plan, Raven Pharmacy Holdings, LLC, shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 38 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Raven Pharmacy, LLC under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Raven Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 38 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

39.    Class 39 - General Unsecured Claims Against Richardson Pharmacy, LLC

Class 39 consists of the Allowed Unsecured Claims against Richardson Pharmacy, LLC.  As set forth in the Plan, Richardson Pharmacy, LLC, shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 39 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Richardson Pharmacy, LLC under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Richardson Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 39 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

40.    Class 40 - General Unsecured Claims Against Riverbend Prescription Services, LLC

Class 40 consists of the Allowed Unsecured Claims against Riverbend Prescription Services, LLC.  As set forth in the Plan, Riverbend Prescription Services, LLC, shall

35

not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 40 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Riverbend Prescription Services, LLC under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Riverbend Prescription Services, LLC's Liquidating Trust Assets less applicable expenses.

The Class 40 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

41.    <u>Class 41 - General Unsecured Claims Against Stonybrook Pharmacy, LLC</u>

Class 41 consists of the Allowed Unsecured Claims against Stonybrook Pharmacy, LLC.  As set forth in the Plan, Stonybrook Pharmacy, LLC, shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 41 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Stonybrook Pharmacy, LLC under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Stonybrook Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 41 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

42.    <u>Class 42 - General Unsecured Claims Against Uinta Rx, LLC</u>

Class 42 consists of the Allowed Unsecured Claims against Uinta Rx, LLC. As set forth in the Plan, Uinta Rx, LLC, shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 42 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Uinta Rx, LLC under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Uinta Rx, LLC's Liquidating Trust Assets less applicable expenses.

The Class 42 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

43.     Class 43 - General Unsecured Claims Against Waverly Pharmacy, LLC

Class 43 consists of the Allowed Unsecured Claims against Waverly Pharmacy, LLC.  As set forth in the Plan, Waverly Pharmacy, LLC, shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 43 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Waverly Pharmacy, LLC under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Waverly Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 43 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

44.     Class 44 - General Unsecured Claims Against Woodward Drugs, LLC

Class 44 consists of the Allowed Unsecured Claims against Woodward Drugs, LLC.  As set forth in the Plan, Woodward Drugs, LLC, shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 44 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Woodward Drugs, LLC under the Allocation Analysis; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Woodward Drugs, LLC's Liquidating Trust Assets less applicable expenses.

The Class 44 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

45.     Class 45 – Interests in the Debtors.

All Equity Interests in the Debtors shall be cancelled on the Effective Date. Each holder of an Equity Interest shall neither receive nor retain any property or interest in property on account of such Equity Interest and such holder shall have no Claim against the Debtors or the Liquidating Trust on account of such Equity Interest.  Because the Class 45 Equity Interests are being cancelled, Holders of Equity Interests are deemed to reject the Plan, and as such, are not entitled to vote to accept or reject the Plan.

      E.    <u>Means of Implementation.</u>

      1.    <u>Substantive Consolidation of the Corporate Debtors.</u>  The Plan shall serve as a motion requesting the substantive consolidation of the Corporate Debtors into a single entity. Entry of the Confirmation Order shall constitute approval, pursuant to section 105(a) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the Corporate Debtors.  On and after the Effective Date:  (i) all assets and liabilities of the Corporate Debtors shall be merged, so that all of the assets of the Corporate Debtors shall be available to pay all of the liabilities of the Corporate Debtors under the Plan; (ii) no distributions shall be made under the Plan on account of Intercompany Claims between the Corporate Debtors; (iii) all guarantees by any of the Corporate Debtors of the obligations of any other Corporate Debtor shall be eliminated so that any Claim against any Corporate Debtor and any guarantee thereof executed by any of the Corporate Debtors shall be one obligation of the substantively consolidated entity; and (iv) each and every Claim filed or Allowed, or to be filed or Allowed, in the case of any of the Corporate Debtors shall be deemed filed or allowed against the substantively consolidated Corporate Debtors.

      2.    <u>No Substantive Consolidation of the Pharmacy Debtors.</u>  The Pharmacy Debtors shall not be substantively consolidated. Assets and claims related to the Pharmacy Debtors shall remain separate.  The Liquidating Trustee shall be responsible for segregating each Debtors'

portion the Liquidating Trust Assets and Settlement Proceeds, with the exception of the Corporate Debtors portion of the Liquidating Trust Assets and Settlement Proceeds, which may be combined because the Plan contemplates the consolidation of the Corporate Debtors.  For the avoidance of doubt, any provision of the Plan or Disclosure Statement referencing payments from the Liquidating Trust Assets shall refer to payment to a Holder of an Allowed Claim solely from the Liquidating Trust Assets attributable to the indebted Debtor, or, in the case of a Holder of an Allowed Claim against the Corporate Debtors, to payment from the Liquidating Trust Assets attributable to the to the Corporate Debtors.

> 3. <u>Transfers of Property to the Liquidating Trust</u>.  On the Effective Date, the Debtors shall be deemed to have irrevocably transferred and assigned the Liquidating Trust Assets to the Liquidating Trust, to hold in trust for the benefit of the Holders of Allowed Claims against the Debtors, pursuant to the terms of this Plan and of the Liquidating Trust Agreement.  Except as otherwise provided by this Plan or the Liquidating Trust Agreement, upon the Effective Date, title to the Liquidating Trust Assets shall pass to the Liquidating Trust free and clear of all Claims and Equity Interests, in accordance with section 1141 of the Bankruptcy Code, except for validly perfected liens on Liquidating Trust Assets, which shall continue to encumber the Liquidating Trust Assets to the same validity, extent and priority as existed prior to the Effective Date.  For the avoidance of doubt, it is the intent of this section that all assets of the Debtors be transferred to the Liquidating Trust, and that after the Effective Date, the Debtors will retain no assets of any nature whatsoever.

> 4. <u>Dissolution of the Debtors</u>.  Following the transfers contemplated in Section 6.3, above, the Debtors shall be deemed dissolved.  The Liquidating Trustee shall have all power to wind up the affairs of each of the Debtors under applicable state laws in addition to all the rights, powers, and responsibilities conferred by the Bankruptcy Code, the Plan, the Liquidating Trust

Agreement, and may, but shall not be required to, dissolve the Debtors under applicable state law.

     5.     <u>Liquidating Trust.</u>

     (a)     <u>Formation of Liquidating Trust</u>.  On or before the Effective Date, the Liquidating Trust Agreement shall be executed by the Debtors and Liquidating Trustee, and all other necessary steps shall be taken to establish the Liquidating Trust and the Beneficial Interests and Subordinated Beneficial Interests therein.

     (b)     <u>Material Terms of Liquidating Trust Agreement</u>.  The following provisions of this section are intended to summarize the material terms of the Liquidating Trust Agreement, which shall control the formation, operations and dissolution of the Liquidating Trust.  In the event of a conflict between the terms of this section and the terms of the Liquidating Trust Agreement, the terms of the Liquidating Trust Agreement shall control.

     (i)     <u>Purpose of Liquidating Trust</u>.  The Liquidating Trust shall be established for the sole purpose of liquidating and distributing its assets, in accordance with Treasury Regulation section 30.1.7701-4(d), with no objective to continue or engage in the pursuit of a trade or business.

     (ii)     <u>The Liquidating Trustee</u>.  The Liquidating Trustee shall be designated in the Plan Supplement.  The Debtors' designation of the Liquidating Trustee shall be effective as of the Effective Date without the need for a further order of the Bankruptcy Court.

     (iii)     <u>Governance of the Liquidating Trust</u>.  The Liquidating Trust shall be governed in accordance with the Liquidating Trust Agreement and consistent with the Plan.

     (iv)     <u>Authority of Liquidating Trustee</u>.  Subject only to the limitations contained in this Plan or in the a Liquidating Trust Agreement, the Liquidating Trustee shall have, by way of illustration and not limitation, the following duties, responsibilities, authorities, and powers:  (A) the power and authority to hold, manage, sell and distribute the Liquidating Trust

40

Asset in accordance with the Plan; (B) the power and authority to prosecute and resolve, in the name of the applicable Debtors and/or the name of the Liquidating Trust, the Liquidating Trust Assets; (C) the power and authority to prosecute and resolve objections to Disputed Claims against the Debtors that are payable from the Liquidating Trust Assets; (D) the power and authority to perform such other functions as are provided in the Plan and the Liquidating Trust Agreement; and (E) any other act that the Liquidating Trustee deems in the best interest of the Liquidating Trust.

(v)     <u>Distribution of Liquidating Trust Assets</u>.  The Liquidating Trustee shall be responsible for making distributions from the Liquidating Trust as provided by the Plan and the Liquidating Trust Agreement.  Any Liquidating Trust Assets available for distribution shall be applied (a) first, to pay or reimburse, as applicable the reasonable, documented out-of-pocket fees, costs, expenses and liabilities of the Liquidating Trust and the Trustee, and any Allowed Administrative Expense Claims not paid on the Effective Date (b) second, to distributions to the Holders of Beneficial Interests, and (c) to the extent that the Holders of Beneficial Interests are paid in full, to the Subordinated Beneficial Interests.

(vi)     <u>Retention and Compensation of the Liquidating Trustee and Professionals</u>.  The Liquidating Trustee may retain counsel and other professionals to assist in the Liquidating Trustee's duties on such terms as the Liquidating Trustee deems appropriate as set forth in the Liquidating Trust Agreement.  The Liquidating Trustee may retain professionals who represented parties in interest in the Bankruptcy Cases.  The Liquidating Trustee and professionals retained by the Liquidating Trustee shall be entitled to reasonable compensation from the Liquidating Trust as set forth in the Liquidating Trust Agreement.

(vii)     <u>Dissolution</u>.  The Liquidating Trust and the Liquidating Trustee shall be discharged or dissolved, as the case may be, at such time as (i) the Liquidating Trust Assets have been liquidated; (ii) all distributions required to be made by the Liquidating Trust under the

41

Plan have been made, but in no event shall the Liquidating Trust be dissolved later than three (3) years from the Effective Date, absent Bankruptcy Court approval.

(viii)    Limitation of Liability and Indemnification of Liquidating Trustee. The Liquidating Trustee and the Liquidating Trustee's agents and professionals, shall not be liable for actions taken or omitted in their capacity as, or on behalf of, the respective Liquidating Trustee, except those acts arising out of its or their own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts, and each shall be entitled to indemnification and reimbursement for fees and expenses incurred in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Liquidating Trustee, except for any actions or inactions involving willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts.  Any indemnification claim of the Liquidating Trustee, its agents or professionals, shall be satisfied from the Liquidating Trust Assets.  The Liquidating Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.

6.    Preservation of Causes of Action.

(c)    On the Effective Date, the Causes of Action shall be vested exclusively in the Liquidating Trust, except to the extent a Creditor other third party has, prior to the Effective Date, been specifically released from any Cause of Action by the terms of the Plan or by a Final Order of the Bankruptcy Court.  The Liquidating Trustee will have the rights, powers, and privileges to pursue, not pursue, settle, release, or enforce any Causes of Action without seeking approval from the Bankruptcy Court.  The Debtors are currently not in a position to express an opinion on the merits of any of the Causes of Action or on the recoverability of any amounts as a result of any such Causes of Action.  For purposes of providing notice, the Debtors state that any director, officers, member or employee of any Debtor and any Person that engaged in business or other transactions with the Debtors prior to the Debtors' respective Petition Dates or that received

42

payments from the Debtors prior to the Debtors' respective Petition Dates may be subject to litigation to the extent that applicable bankruptcy or non-bankruptcy law supports such litigation.

(d)      No Creditor or other Person should vote for the Plan or otherwise rely on Confirmation of the Plan or the entry of the Confirmation Order in order to obtain, or on the belief that it will obtain, any defense to any Cause of Action.  No Creditor or other party should act or refrain from acting on the belief that it will obtain any defense to any Cause of Action.  THE PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY CAUSES OF ACTION OR OBJECTIONS TO CLAIMS, AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF THE LIQUIDATING TRUST.  Creditors are advised that legal rights, claims, and rights of action the Debtors may have against them, if they exist, are retained under the Plan for prosecution unless a specific order of the Bankruptcy Court authorizes the Debtors to release such claims.  As such, Creditors are cautioned not to rely on (i) the absence of the listing of any legal right, claim, or Cause of Action against a particular Creditor in the Disclosure Statement, the Plan, or the Schedules or (ii) the absence of litigation or demand prior to the Effective Date of the Plan as any indication that the Debtors, the Liquidating Trust, or the Liquidating Trustee do not possess or does not intend to prosecute a particular claim or Cause of Action if a particular Creditor votes to accept the Plan.  IT IS THE EXPRESSED INTENTION OF THE PLAN TO PRESERVE RIGHTS, CLAIMS, AND CAUSES OF ACTION OF THE DEBTORS, WHETHER NOW KNOWN OR UNKNOWN, FOR THE BENEFIT OF THE LIQUIDATING TRUST AND THE DEBTORS' CREDITORS.  To the fullest extent allowed under applicable law, nothing in the Plan operates as a release of any Cause of Action, except as expressly provided otherwise, nor shall the Debtors' failure to describe with specificity any Cause of Action estop or preclude the Liquidating Trust from pursuing such Causes of Action.

Notwithstanding the foregoing, the Debtors have made a good faith effort to

identify and disclose known Causes of Action.  A schedule identifying the Debtors' known Causes of Action to be transferred and retained by the Liquidating Trust are attached to the Disclosure Statement as **Exhibit B**.

       7.     <u>Effectuating Documents and Further Transactions.</u>  The Debtors and the Liquidating Trustee are authorized and directed to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

      F.    <u>Leases and Executory Contracts.</u>

On the Effective Date, all executory contracts and unexpired leases to which the Debtors are a party shall be deemed rejected, except for any executory contract or unexpired lease that (i) has been assumed or rejected pursuant to Final Order of the Bankruptcy Court entered prior to the Effective Date, or (ii) is the subject of a separate motion to assume or reject filed under section 365 of the Bankruptcy Code by the Debtors prior to the Effective Date.

Entry of the Confirmation Order shall constitute the approval, pursuant to section 365(a) of the Bankruptcy Code, of the rejection or assumption, as the case may be, of the executory contracts and unexpired leases rejected or assumed as of the Effective Date pursuant to the Plan.

In the event that the rejection of an executory contract or unexpired lease by the Debtors pursuant to the Plan results in damages to the other party to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Debtors or any property to be distributed under the Plan unless a proof of claim is filed with the Bankruptcy Court and served upon the Debtors and Liquidating Trustee on or before thirty (30) days after the Confirmation Date.

## IV.    <u>TAX CONCERNS</u>

**THE FOLLOWING SUMMARY OF CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES HAS BEEN PROVIDED FOR INFORMATIONAL PURPOSES ONLY**

**AS MANDATED BY SECTION 1125 OF THE BANKRUPTCY CODE AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A HOLDER OF A CLAIM.  ALL HOLDERS OF CLAIMS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS FOR THE FEDERAL, STATE, LOCAL AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.**

      A.     <u>Certain U.S. Federal Income Tax Consequences to the Debtors.</u>

The Debtors will generally realize gain or loss on the sale, or transfer to the Liquidating Trust, of substantially all of their assets equal to the difference between (i) the amount realized on the sale and the fair market value of the assets sold or transferred to such Trust, and (ii) their adjusted tax basis in the assets sold or transferred.  The character of any gain or loss as capital or ordinary, and in the case of capital gain or loss, as short term or long term, will depend upon the nature of assets sold or transferred and the Debtors' holding period for the assets.

The discharge of a recourse debt obligation by a debtor for an amount of Cash and/or fair market value of property that is less than the adjusted issue price of the debt obligation (as determined for U.S. federal income tax purposes) gives rise to cancellation of indebtedness ("COD") income, which must be included in the debtor's income, subject to certain statutory or judicial exceptions that can apply to limit the amount of COD income (such as where the payment of the canceled debt would have given rise to a tax deduction).  A specific statutory exception applies to certain debtors if the discharge of indebtedness is granted in a case under Title 11 of the United States Code (relating to bankruptcy) and pursuant to a plan approved by a bankruptcy court in such case.  A separate exception applies to taxpayers if the discharge occurs when the taxpayer is insolvent.

To the extent that the consideration issued to holders of Claims pursuant to the Plan is attributable to accrued but unpaid interest, the Debtors should be entitled to interest deductions in the amount of such accrued interest, but only to the extent the Debtors has not already deducted

such amount.  The Debtors should not have COD income from the discharge of any accrued but unpaid interest pursuant to the Plan to the extent that the payment of such interest would have given rise to a deduction pursuant to Section 108(e)(2) of the Tax Code.

For the foregoing reasons, the precise amount of taxable gain or loss, COD income, or both, which the Debtors will realize as a result of effectuation of the Plan cannot be determined until the date of the sale, or transfer to the Liquidating Trust.

B.     Tax Consequences to Creditors.

The tax consequences of the implementation of the Plan and formation of the Liquidating Trust to a creditor of the Debtors (a "Creditor") will depend on a number of factors, including the type of consideration received by the Creditor in exchange for its Claim, whether the Creditor reports income on the accrual or cash basis, whether the Creditor receives consideration in more than one tax year of the Creditor, whether the Creditor is a resident of the United States and whether all consideration received by the Creditor is deemed to be received by that Creditor in an integrated transaction.  The tax consequences of the receipt of Cash or property that is allocable to accrued interest are discussed below in the section entitled "Receipt of Interest."

1.     Receipt of Cash and Other Property

A Creditor who receives Cash and/or other property (including Liquidating Trust Assets deemed received as discussed below) in satisfaction of its Claim generally will recognize gain (or loss) on the exchange equal to the difference between the amount of any Cash and the fair market value of any property received (not allocable to interest) and the Creditor's tax basis in its Claim.  The character of any gain or loss as capital or ordinary income or loss and, in the case of capital gain or loss, as short-term or long-term, will depend on a number of factors, including (i) the nature and origin of the Claim (e.g., Claims arising in the ordinary course of a trade or business or made for investment purposes); (ii) the tax status of the holder of the Claim;

46

(iii) whether the Claim is a capital asset in the hands of the holder; (iv) whether the Claim has been held by the holder for more than one year; (v) the extent to which the holder previously claimed a loss or a bad debt deduction with respect to the Claim; and (vi) the extent to which the holder acquired the Claim at a market discount.  Creditors should consult their own tax advisors regarding the amount and character of gain or loss, if any, to be recognized by them under the Plan.

> 2.      Receipt of Interest

Consideration received by a Creditor that is attributable to accrued interest not previously included in taxable income should be treated as ordinary income, regardless of whether the Creditor's existing Claims are capital.  Conversely, a holder of a Claim may be able to recognize a deductible loss (or possibly a write-off against a reserve for worthless debts) to the extent that any accrued interest on the Claim was previously included in the holder's gross income but was not paid in full by the Debtors.  The extent to which the consideration received by a holder of a Claim will be attributable to accrued interest is unclear.

> 3.      Market Discount

The Tax Code generally requires holders of debt instruments with "market discount" to treat as ordinary income any gain realized on the disposition of such debt instruments to the extent of the market discount accrued during the holder's period of ownership.  "Market discount" generally means the amount by which the "adjusted issue price" of a debt instrument (i.e., the sum of its issue price plus any accrued original issue discount) exceeds the holder's adjusted tax basis in such debt instrument.  Holders should consult their own tax advisors as to the potential application of the market discount rules to them in light of their individual circumstances.

> 4.      Backup Withholding

Under the Tax Code, interest, dividends and other "reportable payments" may, under certain circumstances, be subject to "backup withholding," currently at a 28% rate.

Backup withholding may apply to payments made pursuant to the Plan, unless you provide to the applicable withholding agent your taxpayer identification number, certified under penalties of perjury, as well as certain other information, or otherwise establish an exemption from backup withholding.  Backup withholding is not an additional tax.  Any amount withheld under the backup withholding rules is allowable as a credit against your U.S. federal income tax liability, if any, and a refund may be obtained from the IRS if the amounts withheld exceed your actual U.S. federal income tax liability and you timely provide the required information or appropriate claim from to the IRS.

      C.      <u>U.S. Federal Income Tax Consequences of the Liquidating Trust</u>

           1.      <u>Classification of the Liquidating Trust and the Litigation Trust</u>

The Liquidating Trust will be organized for the primary purpose of liquidating the respective assets transferred to it with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, its liquidating purpose.  Thus, the Liquidating Trust is intended to be classified for U.S. federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d).  Under the Plan, all relevant parties are required to treat the Liquidating Trust as liquidating trust, subject to definitive guidance to the contrary from the IRS.  In general, a liquidating trust is not a separate taxable entity but rather is treated as a grantor trust, pursuant to sections 671 et seq. of the Tax Code, owned by the grantors of the trust.  For this purpose, the beneficiaries of a liquidating trust are treated as the grantors of the trust.

Although the Liquidating Trust has been structured with the intention of complying with guidelines established by the IRS in Rev. Proc. 94-45, 1994-2 C.B. 684, for the formation of Liquidating Trust, it is possible that the IRS could require a different characterization of the Liquidating Trust, which could result in a different and possibly greater tax liability to the

4816-2482-0357.1

Liquidating Trust or the holders of the beneficial interests in the Liquidating Trust.  No request for a ruling from the IRS will be sought on the classification of the Liquidating Trust, and there can be no assurance that the IRS will not take a contrary position to the classification of the Liquidating Trust.  If the IRS were to successfully challenge the classification of the Liquidating Trust as a grantor trusts, the U.S. federal income tax consequences to the Liquidating Trust and the holders of the beneficial interests in the Liquidating Trust could be materially different from those discussed herein.  The following discussion assumes treatment of the Liquidating Trust as a grantor trusts for U.S. federal income tax purposes.

2.      <u>Creation of the Liquidating Trust</u>

If the Liquidating Trust is treated as a "liquidating trust" then, upon its creation, each beneficiary of the Liquidating Trust would be treated as having received and as owning an undivided interest in certain assets of the Liquidating Trust depending on such beneficiaries creditor class in exchange for surrendering all or a portion of such beneficiary's Claim followed by a transfer by the beneficiary of such assets to the Liquidating Trust.  Under the Plan, all parties (including, without limitation, the Debtors, the Trustee, the Liquidating Trust and the beneficiaries) are required to report consistently with the foregoing for federal and applicable state and local income tax purposes.  The basis of such beneficiary's interest in the Liquidating Trust's specific assets received will be equal to its fair market value as of the Effective Date.  The fair market value of the portion of the Liquidating Trust that is treated as having been transferred to each beneficiary will be determined by the Trustee, and all parties must utilize such fair market values determined by the Trustee for U.S. federal and applicable state and local income tax purposes.  The determination of the fair market value of a Claim holder's interest in the assets of the Liquidating Trust is factual in nature and the IRS may challenge any such determination.

3.      <u>Allocation of Income and Loss and Disposition of Liquidating Trust Assets</u>

Each holder of a beneficial interest in the Liquidating Trust must report on its U.S. federal income tax return its allocable share of income, gain, loss, deduction and credit recognized or incurred by the Liquidating Trust.  Deductions attributable to activities and administrative expenses of the Liquidating Trust may be subject to limitation in the hands of the holders of the beneficial interest holders.  Upon the sale or other disposition of any assets of the Liquidating Trust, each holder of a beneficial interest must report on its U.S. federal income tax return its share of any gain or loss measured by the difference between (i) its share of the amount of Cash and/or the fair market value of any property received by the Liquidating Trust in exchange for the assets so sold or otherwise disposed of, and (ii) such holder's adjusted tax basis in its share of such asset.  The character of any such gain or loss to any such holder will be determined as if such holder itself had directly sold or otherwise disposed of such asset.  The character of items of income, gain, loss, deduction and credit to any holder of a beneficial interest, and the ability of such holder to benefit from any deductions or losses, will depend on the particular circumstances or status of any such holder.

As noted above, each holder of a beneficial interest in the Liquidating Trust has an obligation to report its share of the Liquidating Trust's tax items (including gain on the sale or other disposition of a Liquidating Trust asset).  Accordingly, holders of a beneficial interest may incur a tax liability as a result of owning a beneficial interest in the Liquidating Trust, regardless of whether the Liquidating Trust distributes Cash or other assets.  Due to the Liquidating Trust's requirements to satisfy certain liabilities, and due to possible differences in the timing of income on, and the receipt of Cash from, the assets of the Liquidating Trust, a holder of a beneficial interest may, in certain years, be required to report and pay tax on a greater amount of income than the amount of Cash received from the Liquidating Trust by such holder in such year.

**V.**     **CONFIRMATION**

   A.     Confirmation Hearing.

         Section 1128 of the Bankruptcy Code requires the Court, after notice, to hold a

Confirmation Hearing on the Plan at which time any party in interest may be heard in support of

or in opposition to Confirmation.  The Confirmation Hearing may be adjourned from time-to-time

without further notice except for an announcement to be made at the Confirmation Hearing.  Any

objection to Confirmation must be made in writing and filed with the Clerk, and delivered to the

following persons, at least seven (7) days prior to the Confirmation Hearing:


         Counsel for Debtors:

         BAKER & HOSTETLER LLP

         Elizabeth A. Green, Esq.
         Fed ID No. 903144
         Email:  egreen@bakerlaw.com
         Jimmy D. Parrish, Esq.
         Fed. ID No. 2687598
         Email:  jparrish@bakerlaw.com
         SunTrust Center, Suite 2300
         200 South Orange Avenue
         Orlando, FL 32801-3432
         Telephone:  (407) 649-4000
         Facsimile:  (407) 841-0168

         Jorian L. Rose, Esq.
         (*admitted pro hac vice* 9/02/2015)
         Email:  jrose@bakerlaw.com
         45 Rockefeller Plaza
         New York, New York
         Telephone:  (212) 589-4200
         Facsimile:  (212) 589-4201
         *Counsel for Debtors*

         And

         United States Trustee:

         Attn:  Hector Duran
         515 Rusk Ave, Suite 3516

Houston, Texas 77002

B.     Financial Information Relevant to Confirmation.

The Debtors have evaluated potential alternatives to the Plan.  At this stage of the Debtors' cases, if no Chapter 11 plan can be confirmed, it is anticipated that the Bankruptcy Cases would be converted to a case under Chapter 7 of the Bankruptcy Code, in which event a trustee would be elected or appointed to liquidate the Debtors' assets for distribution to creditors in accordance with the priorities established by the Bankruptcy Code.  The Debtors believe that liquidation under Chapter 7 would cause distributions to be significantly reduced because of the increased costs and expenses of liquidation under chapter 7 arising from fees payable to a trustee for bankruptcy and professional advisors to such trustee.  Accordingly, the Debtors submit that Creditors of the Debtors will fair significantly better under the Plan than if the Debtors were forced into liquidation under Chapter 7.

C.     Confirmation Standards.

For a plan of reorganization to be confirmed, the Bankruptcy Code requires, among other things, that a plan be proposed in good faith and comply with the applicable provisions of Chapter 11 of the Bankruptcy Code. Section 1129 of the Bankruptcy Code also imposes requirements that, among other things, at least one class of Impaired Claims accept a plan, that confirmation of a plan is not likely to be followed by the need for further financial reorganization, that a plan be in the best interests of creditors, and that a plan be fair and equitable with respect to each class of Claims or Interests which is Impaired under the plan.

The Bankruptcy Court shall confirm a plan only if it finds that all of the requirements enumerated in Section 1129 of the Bankruptcy Code have been met.  The Debtors believe that the Plan satisfies all of the requirements for Confirmation.

1.     Best Interests Test.

52

Before the Plan may be confirmed, the Bankruptcy Court must find (with certain exceptions) that the Plan provides, with respect to each Class, that each holder of an Allowed Claim or Interest of such Class either:  (a) has accepted the Plan; or (b) will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were, on the Effective Date, liquidated under Chapter 7 of the Bankruptcy Code. Due to the increased costs that will result from the liquidation of the Debtors' assets under Chapter 7 of the Bankruptcy Code, the Debtors believe that the best interests test is satisfied under the circumstances.

To determine what holders of Claims and Interests would receive if the Debtors are liquidated, the Court must determine how the assets and properties of the Debtors would be liquidated and distributed in the context of Chapter 7 liquidation cases.

The Debtors' cost of liquidation under Chapter 7 cases would include the fees payable to a trustee in bankruptcy and to any additional attorneys and other professionals engaged by such trustee and any unpaid expenses incurred by the Debtors during the Chapter 11 cases, including compensation of attorneys and accountants.  The additional costs and expenses incurred by a trustee in a Chapter 7 liquidation could be substantial and would decrease the possibility that Unsecured Creditors would receive meaningful distributions.  This is particularly the case where the Debtors are engaged or will engage in ongoing litigation with third parties.  The trustee and his professionals will need to review and analyze complex agreements and statutory provisions which would likely result in significant cost to the estate.  The foregoing types of Claims arising from Chapter 7 administration and such other Claims as may arise in Chapter 7 or result from the pending Chapter 11 cases would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay the Claims of Unsecured Creditors.

Additionally, liquidation in Chapter 7 might substantially delay the date at which Creditors would receive any payment.

The Debtors have carefully considered the probable effects of liquidation under Chapter 7 on the ultimate proceeds available for distribution to Creditors and holders of Interests, including the following:

      a.     the possible costs and expenses of the Chapter 7 trustee or trustees and their professionals; and

      b.     the possible substantial increase in Claims, which would have priority over or on parity with those of Unsecured Creditors.

After review of all of the above-referenced considerations, the Debtors believe that the best interests test is satisfied under the circumstances.

    2.     <u>Financial Feasibility.</u>

The Bankruptcy Code requires, as a condition to Confirmation, that Confirmation of a plan is not likely to be followed by the liquidation or the need for further financial reorganization of the debtor unless the liquidation is proposed in the Plan. The Debtors asserts that the Plan contemplates liquidation and therefore meets the feasibility requirement under the Bankruptcy Code.

    3.     <u>Acceptance by Impaired Classes.</u>

The Bankruptcy Code requires as a condition to Confirmation that each Class of Claims or Interests that is Impaired under the Plan accept such plan, with the exception described in the following section. A Class of Claims has accepted the Plan if the Plan has been accepted by Creditors that hold at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class who vote to accept or to reject the Plan.

A Class of Interests has accepted the Plan if the Plan has been accepted by holders of Interests that hold at least two-thirds (2/3) in amount of the Allowed Interests of such

54

Class that vote to accept or reject the Plan. Holders of Claims or Interests who fail to vote are not counted as either accepting or rejecting the Plan.

A Class that is not Impaired under a Plan is deemed to have accepted such Plan; solicitation of acceptances with respect to such Class is not required. A Class is Impaired unless: (i) the legal, equitable, and contractual rights to which the Claim or Interest entitles the holder of such Claim or Interest are not modified; (ii) with respect to Secured Claims, the effect of any default is cured and the original terms of the obligation are reinstated; or (iii) the Plan provides that on the Effective Date the holder of the Claim or Interest receives on account of such claim or interest, Cash equal to the Allowed Amount of such Claim or, with respect to any Interest, any fixed liquidation preference to which the holder is entitled.

4.  **Confirmation Without Acceptance by all Impaired Classes: "Cramdown."**

The Bankruptcy Code contains provisions that enable the Bankruptcy Court to confirm the Plan, even though all Impaired Classes have not accepted the Plan, provided that the Plan has been accepted by at least one Impaired Class of Claims. Section 1129(b)(1) of the Bankruptcy Code states:

> "Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan."

This section makes clear that the Plan may be confirmed, notwithstanding the failure of an Impaired Class to accept the Plan, so long as the Plan does not discriminate unfairly and it is fair and equitable with respect to each Class of Claims that is Impaired under and has not accepted the Plan.

**THE DEBTORS BELIEVE THEY ARE ABLE TO MEET THE STATUTORY STANDARDS SET FORTH IN THE BANKRUPTCY CODE WITH RESPECT TO NONCONSENSUAL CONFIRMATION OF THE PLAN AND WILL SEEK SUCH RELIEF IF NECESSARY.**

D.      <u>Consummation.</u>

The Plan will be consummated and Payments made if the Plan is confirmed pursuant to a Final Order of the Bankruptcy Court and distributions under the Plan commence. It will not be necessary for the Debtors to await any required regulatory approvals from agencies or departments of the United States to consummate the Plan. The Plan will be implemented pursuant to its provisions and the Bankruptcy Code.

E.      <u>Effects of Confirmation.</u>

1.      <u>Authority to Effectuate the Plan</u>

Upon the entry of the Confirmation Order by the Bankruptcy Court, the Plan provides that all matters provided under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court.  The Debtors shall be authorized, without further application for an order of the Bankruptcy Court, to take whatever action is necessary to achieve consummation and carry out the Plan in accordance with the Plan and the Bankruptcy Code.

2.      <u>Binding Effect of Confirmation</u>

Confirmation of the Plan will legally bind the Debtors, all Creditors, Interest Holders, and other parties in interest to the provisions of the Plan whether or not the Claim or Interest Holder is impaired under the Plan and whether or not such Creditor or Interest Holder voted to accept the Plan.

## VI.  **ALTERNATIVE TO THE PLAN.**

If the Plan is not confirmed and consummated, the Debtors believe that the most likely alternative is liquidation of the Debtors under Chapter 7 of the Bankruptcy Code.  The Debtors believe that this alternative is a much less attractive to Creditors than the Plan because of the increased administrative expenses with no additional return to Creditors.

## VII.  **CONCLUSION.**

The Debtors recommend that Holders of Claims entitled to vote on the Plan vote to accept the Plan.


Dated:  January 11, 2019
         Houston, Texas

Respectfully submitted,

**BAKER & HOSTETLER, LLP**

*/s/ Elizabeth A. Green*
_____

Elizabeth A. Green, Esq.
Fed ID No. 903144
Email:  egreen@bakerlaw.com
Jimmy D. Parrish, Esq.
Fed. ID No. 2687598
Email:  jparrish@bakerlaw.com
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL 32801-3432
Telephone:  (407) 649-4000
Facsimile:  (407) 841-0168

Jorian L. Rose, Esq.
(*admitted pro hac vice* 9/02/2015)
Email:  jrose@bakerlaw.com
45 Rockefeller Plaza
New York, New York
Telephone:  (212) 589-4200
Facsimile:  (212) 589-4201

*Counsel for Debtors*