**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
08/08/2019

| | |
|---|---|
| IN RE: | CASE NO.: 17-32186 |
| UPLIFT RX, LLC [1] | CHAPTER 11 |
| Debtor(s). | Jointly Administered |

**ORDER CONFIRMING *AMENDED JOINT PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY
CODE OF UPLIFT RX, LLC AND ITS DEBTOR AFFILIATES***

On August 5, 2019, the Bankruptcy Court[2] held the a continued Confirmation Hearing to consider confirmation of the *Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code of Uplift Rx, LLC and Its Debtor Affiliates* [Doc. No. 1124] as supplemented by the *Plan Supplement* [Doc. No. 1153] (and as further supplemented, amended, or modified, the "Plan"), filed by the above-captioned Debtors by and through their duly appointed Chapter 11 Trustee, Ronald Glass (the "Debtors" and the "Trustee," respectively).

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Uplift Rx, LLC (9306); Belle Pharmacy, LLC (0143); Alliance Medical Holdings, LLC (5945); Geneva Pharmacy, LLC (1929); Ohana Rx, LLC (1722); Benson Pharmacy, Inc. (6606); Kendall Pharmacy, Inc. (0825); Richardson Pharmacy, LLC (9566); Innovative Rx, LLC (9986); Charleston Rx, LLC (5852); On Track Rx, LLC (9021); Uinta Rx, LLC (7157); Goodman Pharmacy, LLC (9373); BrooksideRx, LLC (5927); Osceola Clinic Pharmacy, LLC (4886); Oak Creek Rx, LLC (9722); Waverly Pharmacy, LLC (7342); Newton Rx, LLC (9510); Lone Peak Rx, LLC (5973); Improve Rx, LLC (9120); New Jersey Rx, LLC (0035); Berkshire Pharmacy, LLC (9197); Health Saver Rx, LLC (7810); Best Rx, LLC (0346); Delaney Pharmacy, LLC (7497); New Life Pharmacy, LLC (8292); Skyline Health Services, LLC (6876); Stonybrook Pharmacy, LLC (7700); Woodward Drugs, LLC (2385); Bridgestone Pharmacy, LLC (5294); Brookhill Pharmacy, LLC (5296); Burbank Pharmacy, LLC (5227); Canyons Pharmacy, LLC (1744); Cheshire Pharmacy, LLC (6370); Conoly Pharmacy, LLC (0367); Cottonwood Pharmacy, LLC (5131); Galena Pharmacy, LLC (0672); Garnett Pharmacy, LLC (6505); Hawthorne Pharmacy, LLC (5345); Hazelwood Pharmacy, LLC (1088); Medina Pharmacy, LLC (8987); Raven Pharmacy, LLC (5671); Glendale Square Rx, Inc. (1022); Lockeford Rx, LLC (1853); Pinnacle Pharmacy Solutions, LLC (9760); Riverfront Rx, LLC (7152); Riverbend Prescription Services, LLC (1862); Raven Pharmacy Holdings, LLC (2464); Bridgestone Pharmacy Holdings, LLC (2840); Crestwell Pharmacy Holdings, LLC (1503); Galena Pharmacy Holdings, LLC (8609); Geneva Rx Holdings, LLC (8247); Hawthorne Rx Holdings, LLC (9531); Woodward Rx Holdings, LLC (2173); Philadelphia Pharmacy Holdings, LLC (8526); Health Rx Holdings, LLC (0909); Canyon Medical, LLC (4915); Alliance Medical Administration, Inc. (2899); Ollin Pharmaceutical, LLC (9815); Alta Distributors, LLC (7407); Eat Great Café, LLC (2314); Alliance Health Networks, LLC (1815) . The Debtors' mailing address is Uplift Rx, LLC, 15462 FM 529, Houston, TX 77095.

[2] Capitalized terms used but not defined herein shall have the meaning given to them in the Plan and Disclosure Statement (as such terms are defined in this Order).

On April 15, 2019, the Debtors filed their *Amended Disclosure Statement, Pursuant to 11 U.S.C. § 1125, for Chapter 11 Plan of Liquidation of Uplift Rx, LLC and its Affiliated Debtors* [Doc. No. 1085] ("Disclosure Statement").  On June 10, 2019, the Debtors filed their *Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code of Uplift Rx, LLC and Its Debtor Affiliates* [Doc. No. 1124].

On April 25, 2019, the Bankruptcy Court entered its *Order Granting Debtors' Emergency Motion to Establish Administrative and Priority Claims Bar Dates* [Doc. No. 1093] (the "Bar Date Order"), which among other things: (a) established 30 days after the Effective Date of the Plan as the deadline to file any claim for fees and costs by a professional advisor retained by the Debtors, the Trustee, or the Official Committee of Unsecured Creditors in these cases  ("Professional Fee Claim," "Professional Fee Claims Bar Date," and the "Committee," respectively); and (b) established June 27, 2019 as the deadline to file a claim seeking, pursuant to Bankruptcy Code § 503(b) or otherwise, a higher or superior priority than that of a general unsecured creditor (the "Administrative and Priority Claims Bar Date") except for (i) Professional Fee Claims, (ii) Administrative Claims incurred and paid by the Debtors in the ordinary course of business on and after such Debtor's Petition Date, (iii) Administrative Claims that have been allowed by Court order prior to April 25, 2019, (iv) fees payment by the Debtors pursuant to 28 U.S.C. § 1930 or any interest accruing thereto, or (v) claims that are entitled to priority pursuant to 11 U.S.C. § 507(a)(8)).

On June 7, 2019, the Bankruptcy Court entered its *Order Approving Disclosure Statement and the Form and Manner of Services Related Thereto; (II) Setting Dates for the Objection Deadline and Hearing Relating to Confirmation of the Plan; and (III) Authorizing Related Relief* [Doc. No. 1118] ("Disclosure Statement Order").  Among other things, the

Disclosure Statement Order approved, on a final basis, the Debtors' Disclosure Statement and scheduled the Confirmation Hearing for July 11, 2019 (the "Confirmation Hearing").

On June 27, 2019, the Debtors filed its *Plan Supplement* [Doc. No. 1153] ("Plan Supplement"), which included a form of the Liquidating Trust Agreement (as the same may be modified, supplemented or amended, the "Liquidating Trust Agreement"), and designated Mark Shapiro as the Liquidating Trustee ("Liquidating Trustee").

On July 11, 2019, the Bankruptcy Court continued to Confirmation Hearing to August 5, 2019.

In support of Confirmation of the Plan, the Debtors filed, among other things, the *Declaration of Voting Agent Regarding Solicitation and Tabulation of Votes in Connection with the Debtors' First Amended Joint Plan of Liquidation, Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1161] (the "BMC Declaration" of the "Balloting Agent"). The BMC Declaration was later amended to reflect additional late filed ballots accepted by the Court as reflected in the Notice of Filing Projected Amended Ballot Tabulation filed on August 5, 2019 (Doc. No. 1230).

Based upon the Bankruptcy Court's review of, among other things, (i) the Plan, (ii) the Plan Supplement, including the Liquidating Trust Agreement, (iii) the BMC Declaration, (iv) objections to Confirmation of the Plan, the Debtors' responses to the same, and settlements announced on the record at the Confirmation Hearing in connection with same, (v) exhibits admitted and other evidence presented or proffered at the Confirmation Hearing, (vi) representations and arguments of counsel at the Confirmation Hearing, (vii) the docket of the Bankruptcy Case, and (viii) other relevant factors affecting these Bankruptcy Cases, the Bankruptcy Court makes the following findings of fact and conclusions of law, and issues this

Confirmation Order.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]

### Jurisdiction and Venue

A.  <u>Jurisdiction; Venue; Core Proceeding</u>. The Bankruptcy Court has jurisdiction over this Case pursuant to 28 U.S.C. § 1334. Venue in the Bankruptcy Court is proper under 28 U.S.C. §§1408 and 1409. The Debtors are and were qualified to be debtors under Bankruptcy Code §109. This matter constitutes a core proceeding under 28 U.S.C. §157(b)(2), including those proceedings set forth in subsections (b)(2)(A), (B), (G), (I), (K), (L), (M), and (O), and the Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

### Notice, Solicitation and Acceptance

B.  <u>Service of Solicitation Materials and Notices</u>.  As evidenced by certificates of service filed on the docket of these Bankruptcy Cases, all appropriate pleadings, notices, and Ballots were transmitted, mailed, and served to the extent required by the Disclosure Statement Order and Bankruptcy Rule 3017(d). The Balloting Agent mailed, by first class mail, either in paper  form or on a compact disc: (a) a copy of the Disclosure Statement Order; (b) a copy of the Disclosure Statement; (c) a copy of the Plan; (d) a Notice of Confirmation Hearing; (e) an appropriate Ballot; and (f) a self-addressed return envelope (collectively, the "<u>Solicitation Package</u>") to Holders of all Claims and Equity Interests.

C.  <u>Adequate Notice of Confirmation Hearing</u>. In accordance with Bankruptcy

---

[3] The findings and conclusions set forth in this Confirmation Order, together with any findings of fact and conclusions of law set forth in the record of the Confirmation Hearing, constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable to these proceedings pursuant to Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Rules 2002, 3018, 3019, 6004, 6006, 9007 and 9014, and the Disclosure Statement Order, adequate notice of the time for filing objections to Confirmation of the Plan and the authorizations and transfers contemplated thereby and adequate notice of the Confirmation Hearing was provided to all holders of Claims and Equity Interests and other parties in interest entitled to receive such notice under the Bankruptcy Code and the Bankruptcy Rules. No other or further notice of the Confirmation Hearing or Confirmation of the Plan is necessary or required.

D.     <u>Adequate Notice of Plan Supplement</u>.  Prior to the Confirmation Hearing, the Debtors filed the Plan Supplement, including the Liquidating Trust Agreement.  The Plan Supplement complies with the terms of the Plan, and the filing and notice of the Plan Supplement was appropriate and complied with the requirements of the Bankruptcy Code and the Bankruptcy Rules, and no other or further notice is or shall be required.  The Debtors are authorized to modify the Plan Supplement and Liquidating Trust Agreement following entry of this Confirmation Order in accordance with section 1127 of the Bankruptcy Code.

E.     <u>Good Faith Solicitation (11 U.S.C. §1125(e))</u>.  Based on the record, the Debtors, the Trustee and their respective employees, managers, members, attorneys, affiliates, agents, and professionals (including but not limited to their attorneys, financial advisors  accountants, solicitation agents, and other professionals that have been retained by such parties) (collectively, the "<u>Plan Parties</u>") have acted in "good faith" within the meaning of Bankruptcy Code §1125(e) and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order and applicable non-bankruptcy law in connection with all of their respective activities relating to (1) the solicitation of acceptances or rejections of the Plan, (2) the offer, sale, issuance and  distribution of the Liquidating Trust Beneficial Interests under the Plan,

and (3) their participation in the other activities described in Bankruptcy Code § 1125.  For the avoidance of doubt, the "Plan Parties" do not include any party that is or becomes a defendant in the New Jersey Actions (as defined below).  Votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with Bankruptcy Code §§ 1125 and 1126, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Disclosure Statement Order, all other applicable provisions of the Bankruptcy Code and all other applicable rules, laws and regulations. In addition, all procedures used to distribute the Solicitation Package to holders of Claims and Equity Interests were fair, and conducted in accordance with the Bankruptcy Code, the Rules, the Local Rules, and all other applicable rules, laws and regulations. Therefore, the Plan Parties are entitled to the full protections afforded by Bankruptcy Code § 1125(e).

## Compliance with Bankruptcy Code § 1129

F.      The Debtors have satisfied their burden of proof.  Debtors, as the plan proponents, have the burden to prove the requirements for confirmation by a preponderance of the evidence.[4]  Based on the findings and conclusions set forth herein, all other pleadings, documents, exhibits, statements, declarations and affidavits filed in connection with Confirmation of the Plan and all evidence and arguments made, proffered or adduced at the Confirmation Hearing, the Debtors have satisfied their burden of proof as to Confirmation of the Plan, and the Plan satisfies all requirements for confirmation set forth in Bankruptcy Code § 1129.

G.      Plan Compliance with Bankruptcy Code (11 U.S.C. §1129(a)(1)). The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying Bankruptcy Code §1129(a)(l).

---

[4] *See Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters. (In re Briscoe Enters., Ltd., II)*, 994 F.2d 1160, 1163-65 (5th Cir. 1993) (recognizing that "preponderance of the evidence is the debtor's appropriate standard of proof both under § 1129(a) and in a cram down").

a. <u>Plan Compliance with Bankruptcy Code §1122</u>.    The Plan complies with the classification requirements of the Bankruptcy Code. Classification of claims and interests is governed by Bankruptcy Code §1122, which provides that "a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). This section does not require that claims or interests within a particular class be identical.[5] A plan proponent has flexibility in classifying claims, so long as the proponent has some reasonable basis for the classification or the creditor agrees to it.[6]

b. Under the Plan, the Claims or Equity Interests within each Class are substantially similar to the other Claims or Equity Interests within that Class. In addition to Administrative Claims, Priority Tax Claims, and Professional Fee Claims, which need not be classified, the Plan classifies Claims and Equity Interests as follows:

---

[5] *In re DRW Property Co.,* 60 B.R. 505, 511 (Bankr. N.D. Tex. 1986); *see also Phoenix Mut. Life Ins. Co. v. Greystone Ill Joint Venture (In re Greystone 111 Joint Venture),* 995 F.2d 1274, 1278-79 (5th Cir. 1991) ("A fair reading of both subsections [of section 1122] suggests that ordinarily 'substantially similar claims,' those which share common priority and rights against the debtor's estate, should be placed in the same class").

[6] *See In re Jersey City Med. Center,* 817 F.2d 1055, 1060-61 (3d Cir. 1987) ("Congress intended to afford bankruptcy judges broad discretion [under section 1122 of the Bankruptcy Code] to decide the propriety of plans in light of the facts of each case."). *A* plan proponent cannot "classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan," but there may be good business reasons to support separate classification. *In re Briscoe Enterprises.,* 994 F.2d at 1167 (quotations omitted); *see also In re The Heritage Org., L.L.C.,* 375 B.R. 230, 288 (Bankr. N.D. Tex. 2007) ("Substantially similar claims must be classified together unless some reason, other than gerrymandering, exists for separating them").

| **Class** | **Designation** | **Impairment** | **Entitled to Vote** |
|---|---|---|---|
| Class 1 | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 2 | Zions Bank Claims | Unimpaired | No (deemed to accept) |
| Class 3 | Ad Valorem Tax Claims | Unimpaired | No (deemed to accept) |
| Class 4 | RA Health Claim Against Uplift Rx, LLC | Impaired | Yes |
| Class 5 | Unsecured Claims against the Corporate Debtors | Impaired | Yes |
| Class 6 | Uplift Rx, LLC | Impaired | Yes |
| Class 7 | Belle Pharmacy, LLC | Impaired | Yes |
| Class 8 | Benson Pharmacy, LLC | Impaired | Yes |
| Class 9 | Bridgestone Pharmacy, LLC | Impaired | Yes |
| Class 10 | Brookhill Pharmacy, LLC | Impaired | Yes |
| Class 11 | Brookside Rx, LLC | Impaired | Yes |
| Class 12 | Canyon Medical, LLC | Impaired | Yes |
| Class 13 | Charleston Rx, LLC | Impaired | Yes |
| Class 14 | Cheshire Pharmacy, LLC | Impaired | Yes |
| Class 15 | Conoly Pharmacy, LLC | Impaired | Yes |
| Class 16 | Cottonwood Pharmacy, LLC | Impaired | Yes |
| Class 17 | Delaney Pharmacy, LLC | Impaired | Yes |
| Class 18 | Galena Pharmacy, LLC | Impaired | Yes |
| Class 19 | Garnett Pharmacy, LLC | Impaired | Yes |
| Class 20 | Geneva Pharmacy, LLC | Impaired | Yes |
| Class 21 | Glendale Square Rx, Inc. | Impaired | Yes |
| Class 22 | Goodman Pharmacy, LLC | Impaired | Yes |
| Class 23 | Hawthorne Pharmacy, LLC | Impaired | Yes |
| Class 24 | Hazelwood Pharmacy, LLC | Impaired | Yes |
| Class 25 | Health Saver Rx, LLC | Impaired | Yes |
| Class 26 | Improve Rx, LLC | Impaired | Yes |
| Class 27 | Innovative Rx, LLC | Impaired | Yes |
| Class 28 | Kendall Pharmacy, LLC | Impaired | Yes |
| Class 29 | Lockeford Rx, Inc. | Impaired | Yes |
| Class 30 | Lone Peak Rx, LLC | Impaired | Yes |
| Class 31 | Medina Pharmacy, LLC | Impaired | Yes |
| Class 32 | New Jersey Rx, LLC | Impaired | Yes |
| Class 33 | Newton Rx, LLC | Impaired | Yes |
| Class 34 | Oak Creek Rx, LLC | Impaired | Yes |
| Class 35 | Ohana Rx, Inc. | Impaired | Yes |
| Class 36 | On Track Rx, LLC | Impaired | Yes |
| Class 37 | Osceola Clinic Pharmacy, LLC | Impaired | Yes |
| Class 38 | Raven Pharmacy, LLC | Impaired | Yes |
| Class 39 | Richardson Pharmacy, LLC | Impaired | Yes |

| Class 40 | Riverbend Prescription Services, Inc. | Unimpaired | No |
|---|---|---|---|
| Class 41 | Stonybrook Pharmacy, LLC | Impaired | Yes |
| Class 42 | Uinta Rx, LLC | Impaired | Yes |
| Class 43 | Waverly Pharmacy, LLC | Impaired | Yes |
| Class 44 | Woodward Drugs, LLC | Impaired | Yes |
| Class 45 | Equity Interests in the Debtors | Impaired | No (deemed to reject) |

c.  Valid business, legal, and factual reasons exist for the separate classification of each of these Classes of Claims and Equity Interests, and there is no unfair discrimination or gerrymandering between or among the holders of Claims and Equity Interests.

d.  In sum, all Claims and Equity Interests within each Class under the Plan are substantially similar and are afforded equal and reasonable treatment, or the claimant has agreed to the classification. Accordingly, the classification of Claims and Equity Interests under the Plan satisfies the requirements of Bankruptcy Code § 1122.

e.  The Plan Complies with Bankruptcy Code §1123. In accordance with Bankruptcy Code § 1123(a), the Plan: (1) designates Classes of Claims and Equity Interests, other than Claims of a kind specified in Bankruptcy Code §§ 507(a)(2), 507(a)(3), 507(a)(8); (2) specifies Classes of Claims and Equity Interests that are not Impaired under the Plan; (3) specifies the treatment of Classes of Claims and Equity Interests that are Impaired under the Plan; (4) provides the same treatment for each Claim or Equity Interest of a particular Class, unless the holder of a particular Claim or Equity Interest agrees to less favorable treatment of their respective Claim or Equity Interest; (5) provides

9

for adequate means for the Plan's implementation; (6) is a liquidating plan and accordingly (a) provides for the cancelation, termination, and extinguishment of the Equity Interests in the Debtors, (b) does not provide that any holder of Claims, any holder of Equity Interests, or any other Person will receive equity or other interests in the Debtors or the Liquidating Trust, (c) does not provide for either the Debtors or the Liquidating Trust to issue securities other than the Beneficial Interests (which are not equity securities) to any Person, and (d) provides for the termination of all of the directors, officers, and/or managers of any of the Debtors; and (7) contains only provisions that are consistent with the interests of holders of Claims and Equity Interests and with public policy with respect to the manner of selection of the Liquidating Trustee and Liquidating Trust Committee members on and after the Effective Date. The relief provided in the Plan is fair and necessary for the orderly implementation of the Plan and the administration of the Estates. Therefore, the Plan satisfies the requirements of Bankruptcy Code §1123(a) and (b).

H.    Debtors' Compliance with Bankruptcy Code (11 U.S.C. §1129(a)(2)). In accordance with Bankruptcy Code § 1129(a)(2), the Debtors have complied with the applicable provisions of the Bankruptcy Code.   The Debtors are proper debtors under Bankruptcy Code § 109. The Debtors have complied with the applicable provisions of the Bankruptcy Code (including §§ 1122, 1123, 1124, 1125, 1126, and 1128), the Bankruptcy Rules (including Bankruptcy Rules 3017, 3018, and 3019), and the Disclosure Statement Order in transmitting the Plan, the Disclosure Statement, the Ballots, and all related documents and notices, and in soliciting and tabulating votes on the Plan.

M.      Votes to accept or reject the Plan were solicited by the Plan Parties after the Court approved the adequacy of the Disclosure Statement pursuant to Bankruptcy Code § 1125(a).

N.      The Plan Parties have solicited and tabulated votes on the Plan and have participated in the activities described in Bankruptcy Code § 1125 fairly, in good faith within the meaning of Bankruptcy Code § 1125(e), and in a manner consistent with the applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable laws, rules, and regulations and are entitled to the protections afforded by Bankruptcy Code § 1125(e) and the exculpation provisions set forth in Section 13.4 of the Plan.

O.      The Trustee and his respective members, officers,  directors,  employees, advisors, attorneys, and agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distribution of recoveries under the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan, so long as such distributions are made consistent with and pursuant to the Plan.

P.      <u>Plan Proposed in Good Faith (11 U.S.C.  § 1129(a)(3)).</u> To be confirmed, a plan must have been "proposed in good faith and not by any means forbidden by law." 11 U.S.C. §1129(a)(3). A plan is proposed in good faith if there is a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.[7] "The

---

[7] *In re T-H New Orleans Ltd. P'ship,* 116 F.3d at 802; *In re Madison Hotel Assocs.,* 749 F.2d 410, 424-425 (7th Cir. 1984).

requirement of good faith must be viewed in light of the totality of the circumstances surrounding the establishment of a Chapter 11 plan . . . ." [8]

Q.       The Plan is proposed in good faith and not by any means forbidden by law. The Debtors commenced these cases case with the legitimate and honest purpose of developing an orderly process to compensate legitimate claimants while maximizing value. The Plan culminates a reorganization process during which the Debtors have consistently engaged in arm's-length negotiations among entities having very different and, in many instances, competing interests, all aimed at an over-arching goal of maximizing the value of the Debtors and the recovery to holders of Claims and Equity Interests in accordance with the Bankruptcy Code. In accordance with Bankruptcy Code § 1129(a)(3), the Debtors have proposed the Plan in good faith and not by any means forbidden by law. The treatment of holders of Claims and Equity Interests contemplated by the Plan was negotiated and consummated at arm's-length, without collusion, and in good faith. In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the formulation of the Plan and the solicitation of votes to accept or reject the Plan. Furthermore, the Plan represents extensive arms-length negotiations among the Debtors and other parties in interest, as well as their respective legal and financial advisors, and reflects the best interests of the Debtors' Estates and holders of Claims and Equity Interests.

R.       <u>Payment for Services or Costs and Expenses (11 U.S.C. §1129(a)(4))</u>.   In accordance with Bankruptcy Code § 1129(a)(4), all payments and distributions, made or to  be made by the Debtors or the Liquidating Trustee for services or for costs and expenses in, or in connection with, the Bankruptcy Cases, or in connection with the Plan and incident to the

---

[8] *Brite* v. *Sun Country Dev. (Jn re Sun Country Dev.),* 764 F.2d 406, 408 (5th Cir. 1985); *see also In re JT Thorpe Co.,* 308 B.R. 782, 787 (Bankr. S.D. Tex. 2003).

Bankruptcy Cases, have been approved by, or are subject to approval of, the Bankruptcy Court as reasonable, unless otherwise ordered by the Bankruptcy Court.

S.       Directors, Officers, and Insiders (11 U.S.C. §1129(a)(5)).   The Debtors have complied with Bankruptcy Code §1129(a)(5). The Persons that must be identified pursuant to Bankruptcy Code §1129(a)(5) have been identified. These provisions of the Plan are consistent with the interests of Claim and Equity Interest holders and with public policy, thereby satisfying Bankruptcy Code § 1129(a)(5).

T.       No Rate Changes (11 U.S.C. § 1129(a)(6)). The Plan does not provide for any rate change that requires regulatory approval.  Thus, Bankruptcy Code § 1129(a)(6) is satisfied.

U.       Best   Interests   of   Creditors   (11 U.S.C. § 1129(a)(7)).   Bankruptcy Code §1129(a)(7), the "best interests of creditors test," requires that, with respect to each impaired class, each holder of a claim or interest in the class:

> i.       has accepted the plan; or
>
> ii.      will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date.

V.       The testimony presented by the Debtors' financial adviser, Mr. Mark Shapiro of GlassRatner Advisory & Capital Group LLC, in connection with the Confirmation Hearing, and other evidence admitted at the Confirmation Hearing, establish that the requirements of Bankruptcy Code § 1129(a)(7) are satisfied by the Plan.  In accordance with Bankruptcy Code § 1129(a)(7), with respect to Classes of Impaired Claims or Impaired Equity Interests, each holder of a Claim or Equity Interest has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not

less than the amount that such holder would so receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

W.      Acceptance or Rejection of Certain Classes (11 U.S.C. § 1129(a)(8)). All Classes either voted to accept the plan or are deemed to have accepted the plan because they are not impaired.

X.      Treatment of Administrative, Priority, and Tax Claims (11 § U.S.C. § 1129(a)(9)). The Plan's treatment of Claims of a kind specified in Bankruptcy Code §§ 507(a)(l) through (8) satisfies the requirements set forth in Bankruptcy Code § 1129(a)(9).

Y.      Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)). In accordance with Bankruptcy Code § 1129(a)(l0), the Accepting Classes are Impaired and have voted to accept the Plan without including acceptances by any insider, and thus at least one Class of Claims that is Impaired under the Plan has voted to accept the Plan, without including acceptances of the Plan by any insider.

Z.      Feasibility (11 U.S.C. § 1129(a)(11)). The evidence proffered or adduced at the Confirmation Hearing with respect to feasibility (1) is persuasive, credible, and accurate as of the dates such analysis was prepared, presented, or proffered, (2) utilizes reasonable and appropriate methodologies and assumptions, (3) has not been controverted by other evidence, (4) establishes that Confirmation of the Plan is not likely to be followed by the need

for further financial reorganization or liquidation of the Liquidating Trust except with respect to such liquidation proposed in the Plan. Thus, the Plan satisfies the requirements of Bankruptcy Code § 1129(a)(11).

AA.    <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>. In accordance with Bankruptcy Code § 1129(a)(12), to the extent that fees payable to the United States Trustee under 28 U.S.C. § 1930(a)(6) have not been paid, the Plan provides for the payment of all such fees on the Effective Date of the Plan and as they come due after the Effective Date.

BB.    <u>Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>. In accordance with Bankruptcy Code § 1129(a)(13), the Plan does not alter retiree benefits to the extent any such benefits currently exist.

CC.    <u>Other Provisions of 11 U.S.C. § 1129(a)</u>. The provisions of 11 U.S.C. §§ 1129(a)(14), (a)(15), and (a)(16) are not applicable to the Debtors or the Plan.

DD.    Omitted.

EE.    Omitted.

FF.      As to Class 45, the Bankruptcy Court finds and concludes that Class 45 is an Impaired Class of Equity Interests, that are deemed to have rejected the Plan pursuant to Bankruptcy Code § 1126(g). The Plan does not discriminate unfairly and is fair and equitable with respect to Class 45 as required by Bankruptcy Code § 1129(b)(l) and (2).  With respect to a class of *equity interests,* "fair and equitable" includes the requirement that either  (i)  each impaired equity interest receives or retains, on account of that equity interest, property of a value equal to the greater of the allowed amount of any fixed liquidation preference to which the holder is entitled, any fixed redemption price to which the holder is entitled, *or the value of the equity interest,* or (ii) the holder of any equity interest that is junior to the equity interest of that class will not receive or retain under the plan, on account of that junior equity interest, any property.   11 U.S.C. §1129(b)(2)(C).  Based on the evidence, the value of the Equity Interests in the Debtors are negative. Accordingly, the first prong of Bankruptcy Code § 1129(b)(2)(C) is satisfied.  In addition, no junior classes will receive any property under the Plan, so the second prong of Bankruptcy Code § 1129(b)(2)(C) is also satisfied.

GG.      The Plan, therefore, satisfies the requirements of section 1129(b) of the Bankruptcy Code and may be confirmed.

HH.      Only One Plan – 11 U.S.C. §1129(c).  The Bankruptcy Court finds and concludes that, other than the Plan (including previous versions thereof), no other plan has been filed in the Bankruptcy Cases. Accordingly, the requirements of Bankruptcy Code §

1129(c) have been satisfied.

II.  Principal Purpose (11 U.S.C. § 1129(d)). No Person, including but not limited to the Securities and Exchange Commission ("SEC") or any other governmental entity or unit, has requested that the Bankruptcy Court deny Confirmation on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of section 5 of the 1933 Act. The Bankruptcy Court finds that the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the 1933 Act.

### Appeal of this Confirmation Order

JJ.  The reversal or modification on appeal of this Confirmation Order does not affect the validity of the authorizations and transfers contemplated under the Plan with respect to an entity that acquired property or an interest in property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorizations and transfers contemplated under the Plan are stayed pending appeal.

### Securities Findings and Conclusions/Exemptions

KK.  Issuance of Liquidating Trust Interests. The Liquidating Trust constitue or will constitute a "successor" and a "newly organized successor" to the Debtors under the Plan solely for purposes of Bankruptcy Code §§ 1145 and 1125(e) and the Debtors has participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, sale, issuance and distribution of the Liquidating Trust Beneficial Interests. With respect to the offer, sale, issuance and distribution of the Beneficial Interests (to the extent such interests and/or rights constitute securities under the 1933 Act or any State or local law) pursuant to the terms of the Plan, (1) neither the Debtors nor the Liquidating Trust are underwriters within the meaning of Bankruptcy Code § 1145(b), (2) the

offer, sale, issuance and distribution of the Beneficial Interests shall be pursuant to the Plan, (3) the Beneficial Interests are to be distributed in exchange for Claims against the Debtor, and (4) the Beneficial Interests (to the extent constituting a security under the 1933 Act or any State or local law), constitute securities of a successor or newly organized successor to the Debtors under the Plan for purposes of Bankruptcy Code §§ 1145 and 1 125(e). The findings of fact and conclusions of law in this Paragraph shall be binding upon all parties to the Bankruptcy Cases, the Debtors, the Liquidating Trust, and its Liquidating Trustee(s), the SEC, and all other federal, state, and local regulatory enforcement and other agencies.

LL.     Exemptions from Recording, Stamp, and Similar Taxes (11 U.S.C. § 1146(a)). The Bankruptcy Court finds and concludes that, in accordance with Bankruptcy Code § 1146(a), the issuance, transfer, or exchange of any security, and the making or delivery of any instrument of transfer pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment.

**Authorizations and Transfers Pursuant to the Plan**

MM.     Legal Binding Effect.  The provisions of the Plan will bind all holders of Claims and Equity Interests and their respective successors and assigns, whether or not they accept the Plan.

NN.     Exculpation. The exculpation provisions are an integral part of the Plan and represent a valid exercise of the Debtors' business judgment. Pursuing any such claims against the Exculpation Parties is not in the best interest of the Debtors' estate and various constituencies as the costs involved likely would outweigh any potential benefit from pursuing such claims. The failure to effect the release and exculpation provisions of the Plan would impair the Debtors'

ability to confirm the Plan, and the exculpation provisions of the Plan are fair, equitable and reasonable. Accordingly, the compromises and settlements embodied in the exculpation provisions described in the Plan are approved.

OO. <u>Issuance of Beneficial Interests</u>. The issuance and distribution of the Beneficial Interests in the Liquidating Trust in accordance with the provisions of the Plan are reasonable and necessary.

PP. <u>Transfer of Liquidating Trust Assets</u>. The Debtors' transfer of the Liquidating Trust Assets to the Liquidating Trust on the Effective Date in accordance with the Plan and the Trust Agreements is reasonable and necessary and made in accordance with applicable state law and applicable provisions of the Bankruptcy Code, including Bankruptcy Code §§ 363(b) and 1123(b)(3).

QQ. <u>Rejection of Executory Contracts and Unexpired Leases</u>. The rejection of executory contracts and unexpired leases pursuant to the Plan and this Confirmation Order is (i) a sound and reasonable exercise of the Debtors' business judgment, (ii) in the best interests of the Debtors, their Estates, Holders of Claims and Equity Interests, and (iii) necessary for the implementation of the Plan.

RR. <u>Plan Documents Valid and Binding</u>. All other documents reasonably necessary to implement the Plan, including, without limitation, the Liquidating Trust Agreement, have been negotiated in good faith and at arm's length, shall be, upon execution on or after the Effective Date, valid, binding, and enforceable agreements, and are in the best interests of the Debtors and their Estates and have been negotiated in good faith and at arm's length.

SS. <u>Compliance with Bankruptcy Rule 3016</u>. In accordance with Bankruptcy Rule 3016(a), the Plan is dated and the Debtors that submitted it and filed it are appropriately

identified. The filing of the Disclosure Statement with the clerk of this Court satisfies Bankruptcy Rule 3016(b).

### The Liquidating Trust Is Not A Successor to the Debtors

TT.    Except for purposes of compliance with Bankruptcy Code § 1145, the Liquidating Trust and its affiliates, successors, or assigns are not, as a result of actions taken in connection with the Plan, a successor to the Debtors or a continuation or substantial continuation of the Debtors or any enterprise of the Debtors. The Trusts shall be deemed to be a successor to the Debtors only for purposes of compliance with Bankruptcy Code § 1145 and for no other reason under any state or federal law.

### Miscellaneous Provisions

UU.    <u>Findings of Fact and Conclusions of Law on the Record.</u> All findings of fact and conclusions of law announced by this Bankruptcy Court on the record in connection with Confirmation of the Plan or otherwise at the Confirmation Hearing are incorporated herein by reference. To the extent that any of the findings of fact or conclusions of law constitutes an order of this Court, they are adopted as such.

### ORDER

Based on the foregoing findings of fact and conclusions of law, it is hereby ORDERED that:

1.    <u>Confirmation of Plan.</u> The Plan and all of its provisions are APPROVED and CONFIRMED.   A copy of the Plan is attached hereto as **<u>Exhibit A</u>**.  Except as otherwise set forth in this Confirmation Order, the Plan is valid and enforceable pursuant to its terms and the terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.

2.      _Objections Overruled_. All objections that have not been withdrawn, waived, resolved by stipulation, or settled are OVERRULED on the merits.

3.      _Approval of Plan Documents_. The form and substance of the Plan documents, including the Plan, Disclosure Statement, Plan Supplement and any documents related thereto (collectively, the "Plan Documents"), are hereby APPROVED. The execution, delivery, and performance by the Debtors, the Liquidating Trust and its Liquidating Trustee(s) of the Plan Documents are authorized and approved without the need for further corporate or other organizational action or further Order or authorization of the Bankruptcy Court. The Debtors are authorized and empowered to make any and all modifications to any and all documents included as part of the Plan and Plan Supplement that may be agreed to by the parties thereto and that are consistent with the Plan and the terms of this Confirmation Order.  The terms of the Plan, the Plan Supplement, and all other relevant and necessary documents shall be effective and binding as of the Effective Date of the Plan.

4.      _Authority_.

a.      The Plan Parties, the Liquidating Trust, and the Liquidating Trustee are authorized and empowered to take such actions and do all things as may be necessary or required to implement and effectuate the Plan, the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Liquidating Trust Agreement, and this Confirmation Order.

b.      The Plan Parties, the Liquidating Trust, and the Liquidating Trustee are authorized, empowered, and ordered to carry out all of the provisions of the Plan, to issue, execute, deliver, file and record, as appropriate, any instrument, or perform any act necessary to implement, effectuate, or consummate the Plan and this Confirmation Order, and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents (collectively, "Documents"), and to perform such other acts and execute and deliver such other Documents as are required by, consistent with and necessary or appropriate to implement, effectuate, or consummate the Plan and this Confirmation Order and the transfers contemplated thereby and hereby, all without the

requirement of further application to, or order of, the Bankruptcy Court or further action by their respective directors, stockholders, managers, members, or other beneficiaries, and with the like effect as if such actions had been taken by unanimous action of the respective directors, stockholders, managers, members, or other beneficiaries of such entities.

c.  The Debtors are further authorized, empowered, and ordered to enter into and, if applicable, cause to be filed with the Secretary of State or other applicable officials of any applicable governmental authority any and all amended and/or restated certificates or articles of incorporation, organization, or formation or amendments to limited liability company agreements, operating agreements, or regulations and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental authorities with respect to compliance with Bankruptcy Code § 1123(a)(6).

d.  This Confirmation Order shall constitute all approvals and consents, if any, required by all applicable business organization, corporation, trust, and other laws of the applicable governmental authorities with respect to the implementation and consummation of the Plan and all actions authorized by this Confirmation Order.

e.  The Trustee, and from and after the Effective Date, the Liquidating Trustee, are authorized to execute and perform, for and on behalf of the Debtors, any and all Documents and other instruments referred to in the foregoing clauses (b) and (c) and to certify or attest to any of the foregoing actions taken by the Debtor. The execution of any such Document or instrument or the taking of any such action by the Trustee or, from and after the Effective Date, the Liquidating Trustee, shall be, and hereby is, deemed conclusive evidence of the authority of such action.

f.  As of the Effective Date, the Liquidating Trustee (as trustee of the Liquidating Trust) is hereby irrevocably appointed as the Debtors' attorney-in-fact (which appointment as attorney-in-fact shall be coupled with an interest), with full authority in the place and stead of the Debtors and in the name of the Debtors to take any action and to execute any instrument that the Liquidating Trustee, in his sole discretion, may deem to be necessary or advisable to convey, transfer, vest, perfect, and confirm title of the Liquidating Trust Assets in the Liquidating Trust, including without limitation to issue, execute, deliver, file, and record such contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents, and to file any claims, to take any action, and to institute any proceedings that the Liquidating Trustee may deem necessary or desirable in furtherance thereof, each solely to the extent and as authorized in the Liquidating

Trust Agreement.

g.   All amendments to the certificates of incorporation or formation, the articles of incorporation or organization, the operating agreements, the limited liability company agreements, the partnership agreements, and/or bylaws of the Debtors and all other corporate action on behalf of the Debtors as may be necessary to put into effect or carry out the terms and intent of the Plan, including, without limitation, any mergers, consolidations, or dissolutions of the Debtors, may be effected, exercised, and taken without further action by the Debtors' directors, officers, managers, and/or members with like effect as if effected, exercised, and taken by unanimous action of the directors, officers, managers, and/or members of the Debtors. The Liquidating Trustee, as authorized signatory of the Debtors, is authorized to execute any document, certificate or agreement necessary to effectuate any and all transactions contemplated under the Plan on behalf of such Debtors (including, without limitation, any mergers, consolidations or dissolutions of the Debtors), and file with the Secretary of State of the State of Texas any articles or certifications of merger or dissolution or such other documents as may be necessary in order to effect such actions, which documents, certificates and agreements shall be binding on the Debtors, all holders of Claims, and all holders of Equity Interests and, upon execution by the Liquidating Trustee as authorized herein, shall have the same force and effect as if approved by all requisite partners, members, managers or Equity Interest holders of the Debtors.

5.    <u>Approval of Liquidating Trust Agreement</u>.  The Liquidating Trust Agreement  in substantially the form filed by the Debtors at Docket No. 1153 (together with  all schedules, addendums, exhibits, annexes, and other attachments thereto and as  supplemented, amended, and modified, the "<u>Liquidating Trust Agreement</u>") is APPROVED, and the Debtors, the Liquidating Trustee, and the Liquidating Trust are authorized to take all actions contemplated under the Liquidating Trust Agreement, including making appropriate  modifications that do not materially affect substantive rights.

6.    <u>General Settlement of Claims and Equity Interests</u>.  As one element of, and in consideration for, an overall negotiated settlement of numerous disputed Claims and issues embodied in the Plan, pursuant to Bankruptcy Rule 9019 and Bankruptcy Code § 1123 and in

23

consideration for the classification, distributions, and other benefits provided under the Plan, the provisions of the Plan shall, upon consummation of the Plan, constitute a good faith compromise and settlement of all controversies resolved pursuant to the Plan, Claims, and Equity Interests. All distributions made to Holders of Allowed Claims in any Class are intended to be and shall be final.

7.      Plan    Classification    Controlling. The terms of the Plan shall govern the classification of Claims and Equity Interests for purposes of the distributions to be made thereunder. To the extent the Ballots identified a particular Class to which a Holder was a member, the classifications set forth on the Ballots tendered to or returned by the Holders of Claims in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or to reject the Plan; and (b) shall not be binding on the Debtors except for voting purposes.

8.      Preservation of Causes of Action. The provisions of Section 6.7 of the Plan are hereby approved in their entirety. The Debtors, the Liquidating Trust, and the Liquidating Trustee, as applicable, expressly reserve all rights to prosecute any and all of their respective Causes of Action against any Person, except as otherwise expressly provided in the Plan or in this Order. Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Debtors, the Liquidating Trust, and the Liquidating Trustee, as applicable, expressly reserve all of their respective Causes of Action for later adjudication.

9.      Liquidating Trust Assets. The property of the Debtors' Estates will not revest in the Debtors on or after the Effective Date. Except as otherwise set forth in the Plan or this Confirmation Order: (i) all property of the Estates constituting the Liquidating Trust Assets shall

be conveyed and transferred by the Debtors to the Liquidating Trust on the Effective Date, free and clear of all interests, Claims, Liens and encumbrances, but subject to the Liquidating Trust's obligations under the Plan and the Liquidating Trust Agreement.  From and after the Effective Date, the Liquidating Trust shall perform and pay when due liabilities under, or related to the ownership or operation of, the Liquidating Trust Assets.

10.    Liquidating Trustee..   Mark Shapiro of Glass Ratner Advisory & Capital LLC is hereby approved to serve as the Liquidating Trustee subject to the terms set forth in the Plan, including the Plan Supplement, and the Liquidating Trust Agreement. Mr. Shapiro and his successors (if any) are authorized in accordance with 11 U.S.C§1123(b)(3) to take the actions contemplated in the Plan, the Liquidating Trust Agreement, and this Confirmation Order. The Liquidating Trustee shall be permitted to pay his fees and expenses and the fees and expenses of his professionals for services rendered in connection with this Bankruptcy Cases, the Liquidating Trustee's appointment under the Plan, the Liquidating Trust Agreement, and this Confirmation Order to the extent permitted by the Plan, the Plan Supplement, and the Liquidating Trust Agreement. Such payments shall be made by the Liquidating Trust in accordance with the Plan and the Liquidating Trust Agreement.

11.    Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. §1123(b)(2). Except to the extent (a) the Debtors have previously assumed, and (if applicable) assigned, or rejected an executory contract or unexpired lease or (b) prior to the Effective Date, the Bankruptcy Court has entered an Order authorizing the assumption,  and (if applicable) assignment, of an executory contract or unexpired lease, the Debtors' executory contracts and unexpired leases shall be deemed rejected on the Effective Date,  pursuant to Bankruptcy Code §§ 365 and 1123.

12.     <u>Authority</u>. All actions and transfers contemplated under the Plan, including but not limited to, any certificates, agreements or other documents or instruments to be executed in connection with the transfer and assignment of the Liquidating Trust Assets to the Liquidating Trust, free and clear of interests, Claims, Liens, and encumbrances shall be authorized upon entry of this Confirmation Order without the need of further approvals, notices or meetings of the Debtors' directors, officers, managers, and/or members.

13.     <u>Legal Binding Effect</u>. The provisions of the Plan shall bind all holders of Claims and Equity Interests and their respective successors and assigns, whether or not they accept the Plan.

14.     <u>Exculpations and Injunction</u>.  The following exculpations and injunction, which are also set forth in the Plan, are approved and authorized in their entirety:

15.     <u>Exculpation.</u>  Neither the Plan Parties nor the Creditors' Committee, including its members, advisors, professionals, Independent Contractors, and agents (collectively, "<u>Exculpation Parties</u>") shall have or incur any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, related to, or arising out of these Bankruptcy Cases, negotiations regarding or concerning the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence, and, in all respects, the Exculpation Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

NOTHING CONTAINED IN THE PLAN SHALL OPERATE AS A RELEASE, WAIVER, OR DISCHARGE OF ANY CLAIM, CAUSE OF ACTION, RIGHT OR OTHER LIABILITY AGAINST THE MEMBERS OF THE CREDITORS' COMMITTEE IN ANY CAPACITY OTHER THAN AS A MEMBER OF THE CREDITORS' COMMITTEE.

16.     <u>Injunction.</u> PURSUANT TO §§ 105, 1123, 1129 AND 1141 OF THE

26

BANKRUPTCY CODE, IN ORDER TO PRESERVE AND IMPLEMENT THE VARIOUS TRANSACTIONS CONTEMPLATED BY AND PROVIDED FOR IN THE PLAN, AS OF THE EFFECTIVE DATE, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THE PLAN OR IN THE CONFIRMATION ORDER, ALL PERSONS OR ENTITIES THAT HAVE HELD, CURRENTLY HOLD, OR MAY HOLD A CLAIM, DEBT, OR LIABILITY THAT IS TREATED PURSUANT TO THE TERMS OF THE PLAN ARE AND SHALL BE PERMANENTLY ENJOINED AND FOREVER BARRED TO THE FULLEST EXTENT PERMITTED BY LAW FROM TAKING ANY OF THE FOLLOWING ACTIONS ON ACCOUNT OF SUCH CLAIMS, DEBTS, OR LIABILITIES, OTHER THAN ACTIONS BROUGHT TO ENFORCE ANY RIGHTS OR OBLIGATIONS UNDER THE PLAN:  (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING AGAINST THE DEBTORS, THE LIQUIDATING TRUST, THE LIQUIDATING TRUSTEE, THE ESTATE ASSETS, THE COMMITTEE, THE PURCHASER, OR THE TRANSFERRED ASSETS; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DEBTORS, THE LIQUIDATING TRUST, THE LIQUIDATING TRUSTEE, THE ESTATE ASSETS, THE PURCHASER, OR THE TRANSFERRED ASSETS; (C) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE AGAINST THE DEBTORS, THE LIQUIDATING TRUST, THE LIQUIDATING TRUSTEE, THE ESTATE ASSETS, THE PURCHASER, OR THE TRANSFERRED ASSETS; (D) ASSERTING A SETOFF, RIGHT OF SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY, OR OBLIGATION DUE TO THE DEBTORS, THE LIQUIDATING TRUST, THE LIQUIDATING TRUSTEE, THE ESTATE ASSETS, THE

PURCHASER, OR THE TRANSFERRED ASSETS; (E) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION THAT DOES NOT COMPLY OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN OR CONFIRMATION ORDER; OR (F) INTERFERING WITH THE RIGHTS AND REMEDIES OF THE DEBTORS, THE LIQUIDATING TRUST, OR THE LIQUIDATING TRUSTEE UNDER THE PLAN AND THE DOCUMENTS EXECUTED IN CONNECTION THEREWITH.  THE DEBTORS, THE LIQUIDATING TRUST, AND THE PURCHASER SHALL HAVE THE RIGHT TO INDEPENDENTLY SEEK ENFORCEMENT OF THIS INJUNCTION PROVISION.  THIS INJUNCTION PROVISION IS AN INTEGRAL PART OF THE PLAN AND IS ESSENTIAL TO ITS IMPLEMENTATION.

17.    <u>Exemption from Certain Taxes</u>. In accordance with Bankruptcy Code § 1146(a), none of the issuance, transfer or exchange of any securities under the Plan, the release of any mortgage, deed of trust or other Lien, the making, assignment, filing or recording of any lease or sublease, the transfer of title to or ownership of any of the Debtors' interests in any property, or the making or delivery of any deed, bill of sale or other  instrument of transfer under, in furtherance of, or in connection with the Plan shall be subject to any document recording tax, stamp tax, conveyance fee, sales or use tax, bulk sale tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee or other similar tax or governmental assessment in the United States. Federal, state and/or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

18.     <u>Exemption from Securities Laws</u>.  To the extent constituting securities under the 1933 Act, the Beneficial Interests offered, sold, issued and/or distributed pursuant to the Plan are deemed to have been offered, sold, issued and distributed pursuant to Bankruptcy Code § 1145.  Pursuant to Bankruptcy Code § 1145, the exemption of the offer and sale of securities from the registration requirements of the 1933 Act, and any state or local law requiring registration for the offer or sale of a security, applies with respect to Beneficial Interests distributed pursuant to the Plan, to the extent constituting securities under the 1933 Act. Without limiting the generality of the foregoing the offer, sale, issuance, and distribution of the Beneficial Interests to Claimants pursuant to the Plan are and shall be exempt from the requirements of Section 5 of the Securities Act and any State or local law requiring registration for offer or sale of a security or registration or licensing of an issuer, broker, or dealer thereof pursuant to Bankruptcy Code § 1145(a).

19.     <u>Injunctions and Automatic Stay</u>.  Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in these Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court entered as of or prior to the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect through and including the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

20.     <u>Cancellation of Securities</u>. Unless otherwise provided for in the Plan, on the Effective Date, all promissory notes, stock, instruments, indentures, bonds, agreements, certificates or other documents evidencing, giving rise to, or governing any Equity Interest in, or debt obligation of, the Debtors shall be deemed cancelled and shall represent only the right, if

29

any, to participate in the distributions contemplated by the Plan. Except as otherwise provided in the Plan, the obligations of the Debtors thereunder or in any away related thereto shall be fully released, terminated, extinguished and discharged and, with respect to the Equity Interests in the Debtors, retired and thereafter cease to exist, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person.

### Miscellaneous Provisions

21.     <u>Effective Date.</u>   The Plan shall not become Effective until the conditions set forth in Article 9.1 of the Plan are satisfied or waived in writing by the Debtors.

22.     <u>Effective Date Payments</u>.   Within 30 days after the Effective Date, each Professional whose retention with respect to the Debtors' Bankruptcy Cases has been approved by the Bankruptcy Court and who holds or asserts an Administrative Claim that is a Professional Fee Claim shall file with the Bankruptcy Court, and serve on all parties required to receive notice, a final fee application.  Such claims shall be paid by the Liquidation Trustee upon Final Order as set forth in the Plan.

23.     <u>Other Pending Civil Actions</u>.  Notwithstanding any other provision of this Order to the contrary, neither the Trustee, the Liquidating Trustee, nor any other person or entity acting on behalf of either of them, may interfere in any way with any direct claims that are personal to any other creditor, including, without limitation, the following civil actions: (i) *Roche Diagnostics Corp. et al. v Jeffrey C. Smith et al.*, Civil Action No. 19-8761 (CCC) (D.N.J.) and (ii) *LifeScan, Inc., et al. v. Smith, et al.*, Case No. 17-5552 (CCC) (D.N.J.) (collectively, the "<u>New Jersey Actions</u>").

24.     <u>Reservation of Rights</u>.  Prior to the Effective Date, none of the filing of the Plan, any statement or provision contained herein or the taking of any action by the Debtors with respect to

this Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtors of any kind, including with respect to the holders of Claims or Equity Interests or as to any treatment or classification of any contract or lease.

25.    <u>Notice of Effective Date</u>. On or before five Business Days after the occurrence of the Effective Date, the Liquidating Trustee shall file on the docket of the Bankruptcy Cases a notice of the entry of the Confirmation Order, the occurrence of the Effective Date, and such other matters as the Liquidating Trustee deems appropriate or as may be ordered by the Bankruptcy Court.

27.    <u>Waiver or Estoppel</u>.   Each Holder of a Claim or an Equity Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Equity Interest should be Allowed in a certain amount, in a certain priority, Secured, or not subordinated, by virtue of an agreement made with the Debtors or its counsel, or any other Person, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with this Court prior to the Confirmation Date.

28.    <u>Non-Occurrence of Effective Date</u>. If confirmation does not occur, or if the Effective Date does not occur on or before thirty (30) days after the Confirmation Order becomes a Final order, the Confirmation Order may be vacated by the Bankruptcy Court.  If the Confirmation Order is vacated pursuant to this section, the Plan shall be null and void in all respects, and nothing contained in the Plan shall constitute a waiver, or release of any Claims against the Debtors.

29.    <u>References to Plan Provisions</u>. The failure specifically to include or reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court that the Plan be confirmed in its entirety (except as otherwise modified in this Confirmation Order).

31

30. <u>Reversal</u>. If any or all of the provisions of this Confirmation Order are hereafter reversed, modified, or vacated by subsequent order of this Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtors' receipt of written notice of any such order. Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

31. <u>Applicable Non-Bankruptcy Law</u>. Pursuant to Bankruptcy Code §§ 1123(a) and 1142(a), the provisions of this Confirmation Order, the Plan, or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

32. <u>Modification of the Plan Prior to Substantial Consummation</u>. After the Confirmation Date and prior to the Effective Date of the Plan, the Debtors may, under Bankruptcy Code § 1127(b), (i) amend the Plan so long as such amendment shall not materially and adversely affect the treatment of any holder of a Claim, (ii) institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, and (iii) amend the Plan as may be necessary to carry out the purposes and effects of the Plan so long as such amendment does not materially or adversely affect the treatment of holders of Claims or Equity Interests under the Plan; provided, however, prior notice of any amendment shall be served in accordance with the Bankruptcy Rules or Order of the Bankruptcy Court.

33. <u>Conflicts between Plan and Confirmation Order</u>. If there is any conflict between the

Plan (as supplemental by the Plan Supplement) and this Confirmation Order, the terms of this Confirmation Order shall control.

34.  <u>Severability of Plan Provisions</u>. Each term and provision of the Plan, as it may be altered or interpreted, is valid and enforceable pursuant to its terms.

35.  <u>Retention of Jurisdiction</u>. This Bankruptcy Court's retention of jurisdiction as set forth in Article 11 of the Plan is approved. Such retention of jurisdiction does not affect the finality of this Confirmation Order. For the avoidance of doubt, the Bankruptcy Court shall retain jurisdiction over all pending matters, including adversary proceedings.

36.  <u>Nonseverable and Mutually Dependent</u>. The provisions of this Confirmation Order are nonseverable and mutually dependent.

37.  <u>Recordable Form</u>. This Confirmation Order shall be, and hereby is, declared to be in recordable form and shall be accepted by any filing or recording officer or authority of any applicable governmental entity for filing and recording purposes without further or additional orders, certifications or other supporting documents. Further, the Bankruptcy Court authorizes the Liquidating Trustee and the Liquidating Trust, as applicable, to file a memorandum of this Confirmation Order in any appropriate filing or recording office as evidence of the matters herein contained.

38.  <u>Immediate Effectiveness.</u>  Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, 8001, 8002, or otherwise, immediately upon entry of this Confirmation Order, the terms of (a) this Confirmation Order and (b) subject to the occurrence of the Effective Date, the Plan and the Plan Supplement, in each case shall be immediately effective and enforceable and deemed binding on the Debtors, the Liquidating Trust, any and all Holders, any trustees or examiners appointed in these Bankruptcy Cases, all persons and entities that are party to or subject to the settlements, compromises, discharges, injunctions, stays, and exculpations described in the Plan

or herein, each person or entity acquiring property under the Plan, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors.

       39.   <u>Final Order</u>.  This Confirmation Order is a Final Order and the period in which an appeal must be filed will commence upon entry of the Confirmation Order.

Signed: August 08, 2019

 

Marvin Isgur
United States Bankruptcy Judge

# **Exhibit A**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE: | CASE NO.: 17-32186 |
| UPLIFT RX, LLC [1] | CHAPTER 11 |
| Debtor(s). | Jointly Administered |

## AMENDED JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF UPLIFT RX, LLC AND ITS DEBTOR AFFILIATES

Dated: June 10, 2019

*/s/ Elizabeth A. Green*
Elizabeth A. Green, Esq.
egreen@bakerlaw.com
BAKER & HOSTETLER LLP
So. Dist. Fed. ID. 903144
200 South Orange Avenue, Suite 2300
Orlando, Florida 32801-3432
Telephone: (407) 649-4000
Facsimile: (407) 841-0168
*Counsel for the Debtors*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Uplift Rx, LLC (9306); Belle Pharmacy, LLC (0143); Alliance Medical Holdings, LLC (5945); Geneva Pharmacy, LLC (1929); Ohana Rx, LLC (1722); Benson Pharmacy, Inc. (6606); Kendall Pharmacy, Inc. (0825); Richardson Pharmacy, LLC (9566); Innovative Rx, LLC (9986); Charleston Rx, LLC (5852); On Track Rx, LLC (9021); Uinta Rx, LLC (7157); Goodman Pharmacy, LLC (9373); BrooksideRx, LLC (5927); Osceola Clinic Pharmacy, LLC (4886); Oak Creek Rx, LLC (9722); Waverly Pharmacy, LLC (7342); Newton Rx, LLC (9510); Lone Peak Rx, LLC (5973); Improve Rx, LLC (9120); New Jersey Rx, LLC (0035); Berkshire Pharmacy, LLC (9197); Health Saver Rx, LLC (7810); Best Rx, LLC (0346); Delaney Pharmacy, LLC (7497); New Life Pharmacy, LLC (8292); Skyline Health Services, LLC (6876); Stonybrook Pharmacy, LLC (7700); Woodward Drugs, LLC (2385); Bridgestone Pharmacy, LLC (5294); Brookhill Pharmacy, LLC (5296); Burbank Pharmacy, LLC (5227); Canyons Pharmacy, LLC (1744); Cheshire Pharmacy, LLC (6370); Conoly Pharmacy, LLC (0367); Cottonwood Pharmacy, LLC (5131); Galena Pharmacy, LLC (0672); Garnett Pharmacy, LLC (6505); Hawthorne Pharmacy, LLC (5345); Hazelwood Pharmacy, LLC (1088); Medina Pharmacy, LLC (8987); Raven Pharmacy, LLC (5671); Glendale Square Rx, Inc. (1022); Lockeford Rx, Inc. (1853); Pinnacle Pharmacy Solutions, LLC (9760); Riverfront Rx, LLC (7152); Riverbend Prescription Services, LLC (1862); Raven Pharmacy Holdings, LLC (2464); Bridgestone Pharmacy Holdings, LLC (2840); Crestwell Pharmacy Holdings, LLC (1503); Galena Pharmacy Holdings, LLC (8609); Geneva Rx Holdings, LLC (8247); Hawthorne Rx Holdings, LLC (9531); Woodward Rx Holdings, LLC (2173); Philadelphia Pharmacy Holdings, LLC (8526); Health Rx Holdings, LLC (0909); Canyon Medical, LLC (4915); Alliance Medical Administration, Inc. (2899); Ollin Pharmaceutical, LLC (9815); Alta Distributors, LLC (7407); Eat Great Café, LLC (2314); Alliance Health Networks, LLC (1815) . The Debtors' mailing address is Uplift Rx, LLC, 15462 FM 529, Houston, TX 77095.

# <u>TABLE OF CONTENTS</u>

ARTICLE I DEFINITIONS AND INTERPRETATION ...................................................................1
   1.1    Administrative Claims Bar Date ...................................................................................1
   1.2    Administrative Expense Claim ....................................................................................2
   1.3    Ad Valorem Tax Claims ...............................................................................................2
   1.4    Allocation Methodology ...............................................................................................2
   1.5    Allocation Percentage ...................................................................................................2
   1.6    Allowed ..........................................................................................................................2
   1.7    Allowed Priority Non-Tax Claim .................................................................................2
   1.8    Allowed Priority Tax Claim .........................................................................................2
   1.9    Allowed Secured Claim ................................................................................................2
   1.10   Allowed Unsecured Claim ............................................................................................3
   1.11   Available Trust Cash ....................................................................................................3
   1.12   Avoidance Actions .......................................................................................................3
   1.13   Ballot ............................................................................................................................3
   1.14   Bankruptcy Cases .........................................................................................................3
   1.15   Bankruptcy Code ..........................................................................................................3
   1.16   Bankruptcy Court ..........................................................................................................3
   1.17   Bankruptcy Rules ..........................................................................................................3
   1.18   Beneficial Interests ......................................................................................................3
   1.19   Business Day .................................................................................................................3
   1.20   Cash ...............................................................................................................................3
   1.21   Causes of Action ..........................................................................................................3
   1.22   Claim ............................................................................................................................4
   1.23   Claims Register ............................................................................................................4
   1.24   Class .............................................................................................................................4
   1.25   Collateral .....................................................................................................................4
   1.26   Confirmation Date ........................................................................................................4
   1.27   Confirmation Hearing ..................................................................................................4
   1.28   Confirmation Order ......................................................................................................4
   1.29   Corporate Debtors ........................................................................................................4
   1.30   Creditor .........................................................................................................................4
   1.31   Creditors' Committee ...................................................................................................4
   1.32   D&O Causes of Action ................................................................................................4
   1.33   D&O Recovery .............................................................................................................4
   1.34   Debtor ...........................................................................................................................4
   1.35   Disclosure Statement ...................................................................................................5
   1.36   Disputed .......................................................................................................................5
   1.37   Distribution Record Date .............................................................................................5
   1.38   Effective Date ..............................................................................................................5
   1.39   Equity Interest ..............................................................................................................5
   1.40   Estate ............................................................................................................................5
   1.41   Estate Assets .................................................................................................................5
   1.42   Exculpation Parties ......................................................................................................5
   1.43   Final Order ...................................................................................................................5
   1.44   Holder ..........................................................................................................................5

| 1.45 | Insider | 5 |
| 1.46 | Intercompany Claim | 6 |
| 1.47 | Lien | 6 |
| 1.48 | Liquidating Trust Assets | 6 |
| 1.49 | Liquidating Trust | 6 |
| 1.50 | Liquidating Trustee | 6 |
| 1.51 | Liquidating Trust Agreement | 6 |
| 1.52 | Party in Interest | 6 |
| 1.53 | Person | 6 |
| 1.54 | Petition Dates | 6 |
| 1.55 | Pharmacy Debtors | 6 |
| 1.56 | Plan | 6 |
| 1.57 | Plan Supplement | 6 |
| 1.58 | Priority Non-Tax Claim | 6 |
| 1.59 | Priority Tax Claim | 7 |
| 1.60 | Pro Rata Share | 7 |
| 1.61 | Professional Fee Claims | 7 |
| 1.62 | Purchaser | 7 |
| 1.63 | RA Health Claim | 7 |
| 1.64 | Retained Cash | 7 |
| 1.65 | Sale Closing Date | 7 |
| 1.66 | Sale Motion | 7 |
| 1.67 | Sale Order | 7 |
| 1.68 | Sale Proceeds | 7 |
| 1.69 | Sale Transaction | 7 |
| 1.70 | Schedules | 7 |
| 1.71 | Secured Claim | 7 |
| 1.72 | Settlement Agreement | 8 |
| 1.73 | Settlement Proceeds | 8 |
| 1.74 | Seized Funds | 8 |
| 1.75 | Subordinated Beneficial Interests | 8 |
| 1.76 | Tax Code | 8 |
| 1.77 | Transferred Assets | 8 |
| 1.78 | United States Trustee | 8 |
| 1.79 | Unsecured Claim | 8 |
| 1.80 | Zions Bank | 8 |
| 1.81 | Zions Bank Claims | 8 |
| 1.82 | Zions Bank Settlement Payment | 8 |
| 1.83 | Zions Bank Prepetition Loan Facility | 8 |
| | | |
| ARTICLE II | ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS | 9 |
| 2.1 | Filing Administrative Claims | 9 |
| 2.2 | Administrative Expense Claim Treatment | 9 |
| 2.3 | Compensation and Reimbursement Claims | 9 |
| 2.4 | Fees Under 28 U.S.C. §1930 | 10 |
| 2.5 | Priority Tax Claims | 10 |

ARTICLE III CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ..........................10

ARTICLE IV TREATMENT OF CLAIMS AND EQUITY INTERESTS ...................................11
    4.1       Class 1 – Priority Non-Tax Claims............................................................11
    4.2       Class 2 – Zions Bank Claims .....................................................................12
    4.3       Class 3 – Ad Valorem Tax Claims. .............................................................12
    4.4       Class 4 – RA Heath Claim Against Uplift Rx, LLC. ..................................12
    4.5       Class 5 - Unsecured Claims Against the Corporate Debtors .....................12
    4.6       Class 6 – Unsecured Claims Against Uplift Rx, LLC. ...............................13
    4.7       Class 7 – Unsecured Claims Against Belle Pharmacy, LLC. .....................13
    4.8       Class 8 – Unsecured Claims Against Benson Pharmacy, LLC. ..................13
    4.9       Class 9 – Unsecured Claims Against Bridgestone Pharmacy, LLC. ..........13
    4.10    Class 10 – Unsecured Claims Against Brookhill Pharmacy, LLC. ...........14
    4.11    Class 11 – Unsecured Claims Against Brookside Rx, LLC. ......................14
    4.12    Class 12 – Unsecured Claims Against Canyon Medical, LLC. .................14
    4.13    Class 13 – Unsecured Claims Against Charleston Rx, LLC. .....................14
    4.14    Class 14 – Unsecured Claims Against Cheshire Pharmacy, LLC. ............15
    4.15    Class 15 – Unsecured Claims Against Conoly Pharmacy, LLC.................15
    4.16    Class 16 – Unsecured Claims Against Cottonwood Pharmacy, LLC.........15
    4.17    Class 17 – Unsecured Claims Against Delaney Pharmacy, LLC. ..............15
    4.18    Class 18 – Unsecured Claims Against Galena Pharmacy, LLC. ...............16
    4.19    Class 19 – Unsecured Claims Against Garnett Pharmacy, LLC. ..............16
    4.20    Class 20 – Unsecured Claims Against Geneva Pharmacy, LLC. ..............16
    4.21    Class 21 – Unsecured Claims Against v Glendale Square Rx, Inc.............17
    4.22    Class 22 – Unsecured Claims Against Goodman Pharmacy, LLC.............17
    4.23    Class 23 – Unsecured Claims Against Hawthorne Pharmacy, LLC..........17
    4.24    Class 24 – Unsecured Claims Against Hazelwood Pharmacy, LLC. ........17
    4.25    Class 25 – Unsecured Claims Against Health Saver Rx, LLC. .................18
    4.26    Class 26 – Unsecured Claims Against Improve Rx, LLC. .........................18
    4.27    Class 27 – Unsecured Claims Against Innovative Rx, LLC.......................18
    4.28    Class 28 – Unsecured Claims Against Kendall Pharmacy, LLC................18
    4.29    Class 29 – Unsecured Claims Against Lockeford Rx, LLC. .....................19
    4.30    Class 30 – Unsecured Claims Against Lone Peak Rx, LLC......................19
    4.31    Class 31 – Unsecured Claims Against Medina Pharmacy, LLC. ..............19
    4.32    Class 32 – Unsecured Claims Against New Jersey Rx, LLC. ...................19
    4.33    Class 33 – Unsecured Claims Against Newton Rx, LLC. .........................20
    4.34    Class 34 – Unsecured Claims Against Oak Creek Rx, LLC......................20
    4.35    Class 35 – Unsecured Claims Against Ohana Rx, LLC. ...........................20
    4.36    Class 36 – Unsecured Claims Against On Track Rx, LLC........................20
    4.37    Class 37 – Unsecured Claims Against Osceola Clinic Pharmacy, LLC.....21
    4.38    Class 38 – Unsecured Claims Against Raven Pharmacy, LLC. ................21
    4.39    Class 39 – Unsecured Claims Against Richardson Pharmacy, LLC. ........21
    4.40    Class 40 – Unsecured Claims Against Riverbend Prescription Services, LLC. ..........................................................................................................21
    4.41    Class 41 – Unsecured Claims Against Stonybrook Pharmacy, LLC.........22
    4.42    Class 42 – Unsecured Claims Against Uinta Rx, LLC..............................22
    4.43    Class 43 – Unsecured Claims Against Waverly Pharmacy, LLC..............22

4829-4345-1289.2

4.44    Class 44 – Unsecured Claims Against Woodward Drugs, LLC. ............................22
4.45    Class 45 – Equity Interests ...................................................................................23

ARTICLE V PROVISIONS GOVERNING DISTRIBUTIONS ...................................................23
5.1     General Settlement of Claims and Interests ..........................................................23
5.2     Distribution Record Date ......................................................................................23
5.3     Transfer of Claim .................................................................................................23
5.4     Method of Distributions Under the Plan ...............................................................23
5.5     Withholding and Reporting Requirements ............................................................24
5.6     Minimum Distributions .........................................................................................24
5.7     Setoffs ..................................................................................................................24

ARTICLE VI MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN .........25
6.1     General Overview of the Plan ...............................................................................25
6.2     Substantive Consolidation of the Corporate Debtors ...........................................25
6.3     No Substantive Consolidation ..............................................................................25
6.4     Transfers of Property to the Liquidating Trust .....................................................26
6.5     Dissolution of the Debtors ....................................................................................26
6.6     The Liquidating Trust ...........................................................................................26
6.7     Preservation of Causes of Action .........................................................................28
6.8     Effectuating Documents and Further Transactions ...............................................29

ARTICLE VII PROCEDURES FOR DISPUTED CLAIMS ......................................................29
7.1     Objections to Claims .............................................................................................29
7.2     No Distribution Pending Allowance .....................................................................29
7.3     Estimation .............................................................................................................29
7.4     Disallowance of Certain Claims and Equity Interests ..........................................30
7.5     Controversy Concerning Impairment ....................................................................30
7.6     No Distribution Pending Allowance .....................................................................30

ARTICLE VIII EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................30
8.1     Executory Contracts and Unexpired Leases .........................................................30
8.2     Approval of Assumption and Rejection of Executory Contracts and
        Unexpired Leases ..................................................................................................30
8.3     Rejection Claims ...................................................................................................30

ARTICLE IX EFFECTIVENESS OF THE PLAN ......................................................................31
9.1     Conditions Precedent to Effective Date ................................................................31
9.2     Notice of the Effective Date. ................................................................................31
9.3     Satisfaction of Conditions ....................................................................................31
9.4     Effect of Nonoccurrence of Conditions to Effective Date ....................................31

ARTICLE X EFFECT OF CONFIRMATION ............................................................................32
10.1    Vesting of Assets ..................................................................................................32
10.2    Binding Effect .......................................................................................................32
10.3    Term of Injunctions or Stays .................................................................................32
10.4    Injunction ..............................................................................................................32

10.5     Injunction Against Interference with Plan .................................................................32

ARTICLE XI RETENTION OF JURISDICTION ............................................................................32
11.1     Jurisdiction of Bankruptcy Court ............................................................................32

ARTICLE XII CRAMDOWN RESERVATION ............................................................................34
12.1     Nonconsensual Confirmation ..................................................................................34

ARTICLE XIII MISCELLANEOUS PROVISIONS ......................................................................34
13.1     Dissolution of Creditors' Committee ......................................................................34
13.2     Substantial Consummation ......................................................................................34
13.3     Exemption from Transfer Taxes ..............................................................................34
13.4     Exculpation ..............................................................................................................34
13.5     General Injunction ...................................................................................................35
13.6     No Discharge of Claims ...........................................................................................36
13.7     Modification of Plan ................................................................................................36
13.8     Revocation or Withdrawal of Plan ..........................................................................36
13.9     Courts of Competent Jurisdiction ...........................................................................36
13.10    Governing Law .........................................................................................................36
13.11    Exhibits ....................................................................................................................36
13.12    Successors and Assigns ............................................................................................36
13.13    Time ..........................................................................................................................37
13.14    Notices ......................................................................................................................37
13.15    Entire Agreement .....................................................................................................37

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE: | CASE NO.: 17-32186 |
| UPLIFT RX, LLC [2] | CHAPTER 11 |
| Debtor(s). | Jointly Administered |

## JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF UPLIFT RX, LLC AND ITS DEBTOR AFFILIATES

The above-captioned debtors propose the following chapter 11 plan of liquidation pursuant to section 1121(a) of the Bankruptcy Code:

## ARTICLE I
## DEFINITIONS AND INTERPRETATION

For purposes of the Plan, the following terms will have the meanings set forth below. A term used but not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

1.1 **Administrative Claims Bar Date.** means the deadline to file administrative expense claims against the Debtors as provided in the Order Granting Debtors' Emergency Motion to Establish Administrative and Priority Claims Bar Dates entered on April 25, 2019 (Doc. No.

---

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Uplift Rx, LLC (9306); Belle Pharmacy, LLC (0143); Alliance Medical Holdings, LLC (5945); Geneva Pharmacy, LLC (1929); Ohana Rx, LLC (1722); Benson Pharmacy, Inc. (6606); Kendall Pharmacy, Inc. (0825); Richardson Pharmacy, LLC (9566); Innovative Rx, LLC (9986); Charleston Rx, LLC (5852); On Track Rx, LLC (9021); Uinta Rx, LLC (7157); Goodman Pharmacy, LLC (9373); BrooksideRx, LLC (5927); Osceola Clinic Pharmacy, LLC (4886); Oak Creek Rx, LLC (9722); Waverly Pharmacy, LLC (7342); Newton Rx, LLC (9510); Lone Peak Rx, LLC (5973); Improve Rx, LLC (9120); New Jersey Rx, LLC (0035); Berkshire Pharmacy, LLC (9197); Health Saver Rx, LLC (7810); Best Rx, LLC (0346); Delaney Pharmacy, LLC (7497); New Life Pharmacy, LLC (8292); Skyline Health Services, LLC (6876); Stonybrook Pharmacy, LLC (7700); Woodward Drugs, LLC (2385); Bridgestone Pharmacy, LLC (5294); Brookhill Pharmacy, LLC (5296); Burbank Pharmacy, LLC (5227); Canyons Pharmacy, LLC (1744); Cheshire Pharmacy, LLC (6370); Conoly Pharmacy, LLC (0367); Cottonwood Pharmacy, LLC (5131); Galena Pharmacy, LLC (0672); Garnett Pharmacy, LLC (6505); Hawthorne Pharmacy, LLC (5345); Hazelwood Pharmacy, LLC (1088); Medina Pharmacy, LLC (8987); Raven Pharmacy, LLC (5671); Glendale Square Rx, Inc. (1022); Lockeford Rx, Inc. (1853); Pinnacle Pharmacy Solutions, LLC (9760); Riverfront Rx, LLC (7152); Riverbend Prescription Services, LLC (1862); Raven Pharmacy Holdings, LLC (2464); Bridgestone Pharmacy Holdings, LLC (2840); Crestwell Pharmacy Holdings, LLC (1503); Galena Pharmacy Holdings, LLC (8609); Geneva Rx Holdings, LLC (8247); Hawthorne Rx Holdings, LLC (9531); Woodward Rx Holdings, LLC (2173); Philadelphia Pharmacy Holdings, LLC (8526); Health Rx Holdings, LLC (0909); Canyon Medical, LLC (4915); Alliance Medical Administration, Inc. (2899); Ollin Pharmaceutical, LLC (9815); Alta Distributors, LLC (7407); Eat Great Café, LLC (2314); Alliance Health Networks, LLC (1815) . The Debtors' mailing address is Uplift Rx, LLC, 15462 FM 529, Houston, TX 77095.

1093).**Administrative Expense Claim** means any right to payment constituting a cost or expense of administration of any of the Bankruptcy Cases allowed under sections 503(b), 507(a)(1), and 1114(e) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtors' estate; any actual and necessary costs and expenses of operating the Debtors' businesses; any indebtedness or obligations incurred or assumed by the Debtors, as debtors-in-possession, during the Bankruptcy Cases.

      1.3    **Ad Valorem Tax Claims** means all Allowed Claims against any of the Debtors based on ad valorem taxes levied on property owned by the Debtors, which shall include, but not be limited to, proofs of claims to the extent such claims are Allowed: (1) proof of claim number 73 filed by Clear Creek Independent School District against Uplift Rx, LLC in the amount of $270.19; (2) proof of claim 31 filed by Cypress-Fairbanks ISD Tax Assessor against Uplift Rx, LLC in the amount of $6,124.63; (3) proof of claim number 3-3 filed by Dallas County Tax Office against Richardson Pharmacy, LLC in the amount of $18,920.73; (4) proof of claim number 71 filed by Harris County Municipal Utility District #186 against Uplift Rx, LLC in the amount of $978.25; (5) proof of claim number 30 filed by the Harris County Tax Assessor against Uplift Rx, LLC in the amount of $3,386.81; and (6) proof of claim number 72 filed by Harris County WCID #145 against Uplift Rx, LLC in the amount of $231.44.

      1.4    **Allocation Methodology** means the Trustee's proposed method of allocating the Settlement Proceeds among the Debtors attached to the Disclosure Statement as **Exhibit A**.

      1.5    **Allocation Percentage** means the percentage of the Settlement Proceeds that is allocated to each respective Debtor under the Trustee's Allocation Methodology.

      1.6    **Allowed** means, with reference to any Claim, (i) any Claim against the Debtors that has been listed by the Debtors in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (ii) any timely filed Claim as to which no objection to allowance has been interposed in accordance with this Plan, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, or (iii) any Claim expressly allowed by a Final Order or the Plan.

      1.7    **Allowed Priority Non-Tax Claim** means a Priority Non-Tax Claim to the extent such Priority Non-Tax Claim is or becomes an Allowed Claim.

      1.8    **Allowed Priority Tax Claim** means a Priority Tax Claim to the extent such Priority Tax Claim becomes an Allowed Claim.

      1.9    **Allowed Secured Claim** means a Secured Claim to the extent provided under Section 506 of the Bankruptcy Code and to the extent that neither the Lien underlying the Claim is challenged nor the amount of the Claim is challenged as provided for herein.

      1.10    **Allowed Unsecured Claim** means an Unsecured Claim to the extent such Unsecured Claim is or becomes an Allowed Claim.

**1.11** **Available Trust Cash** means proceeds of the Liquidating Trust's assets that are available for distribution to holders of Beneficial Interests in the Liquidating Trust in accordance with the Plan and the Liquidating Trust Agreement.

**1.12** **Avoidance Actions** means any actions commenced, or that may be commenced, before or after the Effective Date pursuant to section 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code.

**1.13** **Ballot** means the ballot, accompanying the Disclosure Statement and the Plan, for voting in favor of or against the Plan.

**1.14** **Bankruptcy Cases** means the jointly administered chapter 11 cases of the Debtors.

**1.15** **Bankruptcy Code** means title 11 of the United States Code, as amended from time to time, as applicable to these Bankruptcy Cases.

**1.16** **Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of Texas, in which the Debtors' Bankruptcy Cases are pending, and any Court having jurisdiction to hear appeals or certiorari proceedings therefrom.

**1.17** **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure as amended from time to time, applicable to these Bankruptcy Cases, and any Local Rules of the Bankruptcy Court.

**1.18** **Beneficial Interests** means the uncertificated beneficial interests in the Liquidating Trust evidencing the right of each holder of Allowed Unsecured Claims against any of the Debtors to receive distributions from the Liquidating Trust in accordance with the Plan and the Liquidating Trust Agreement.

**1.19** **Business Day** means any day other than (a) a Saturday, (b) a Sunday, or (c) a "legal holiday" as defined in Bankruptcy Rule 9006(a).

**1.20** **Cash** means legal tender of the United States of America.

**1.21** **Causes of Action** means any and all actions, causes of action, derivative litigation claims, claims against directors and officers, liabilities, obligations, rights, suits, damages, judgments, claims, and demands whatsoever, including, but not limited to, all causes of actions identified on **Exhibit C** to the Disclosure Statement as may be amended prior to the entry of the Confirmation Order, and further including all Avoidance Actions, whether known or unknown, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Debtors' respective Petition Dates or during the course of these Bankruptcy Cases.

**1.22** **Claim** has the meaning set forth in section 101(5) of the Bankruptcy Code.

3

**1.23**  **Claims Register** means the database of proofs of claim maintained by the Clerk of the Bankruptcy Court.

**1.24**  **Class** means any group of Claims or Equity Interests classified by the Plan pursuant to section 1122(a)(1) of the Bankruptcy Code.

**1.25**  **Collateral** means any property or interest in property of the estate of the Debtors subject to a lien, charge, or other encumbrance to secure the payment or performance of a Claim, which lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

**1.26**  **Confirmation Date** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

**1.27**  **Confirmation Hearing** means the hearing to be held by the Bankruptcy Court regarding confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

**1.28**  **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.29**  **Corporate Debtors** means, collectively, the following Debtors:  Alliance Medical Holdings, LLC, Alliance Medical Administration, Inc., Alliance Health Networks, LLC, Pinnacle Pharmacy Solutions, LLC, Riverfront Rx, LLC, Eat Great Café, LLC, New Life Pharmacy, LLC, Alta Distributors, LLC, Ollin Pharmaceutical, LLC, and Skyline Health Services, LLC.

**1.30**  **Creditor** has the meaning set forth in Section 101(10) of the Bankruptcy Code.

**1.31**  **Creditors' Committee** means the statutory committee of unsecured creditors appointed in the Bankruptcy Cases by the Office of the United States Trustee pursuant to section 1102 of the Bankruptcy Code.

**1.32**  **D&O Causes of Action** means Causes of Action commenced prior or subsequent to the Effective Date against any current or past office or director of any Debtor and any Causes of Action against an insurer under any D&O policy concerning coverage under such policy.

**1.33**  **D&O Recovery** means the recovery from the D&O Causes of Action, which shall be allocated to the Corporate Debtors.

**1.34**  **Debtor** means each of the Debtors in the Bankruptcy Cases on and after their respective Petition Dates, and "**Debtors**" means all of them collectively, and where the term is used with respect to rights and obligations on or after the Effective Date, it shall mean the Liquidating Trustee.

**1.35**  **Disclosure Statement** means the disclosure statement relating to the Plan, including, without limitation, all exhibits thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

4

**1.36**   **Disputed** means, with respect to any Claim or Equity Interest, any Claim or Equity Interest to which the Debtors or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or that is otherwise disputed by the Debtors in accordance with applicable law, which objection, request for estimation, or dispute has not been settled, waived, withdrawn, or determined by a Final Order. A Claim that is Disputed by the Debtors as to its amount only shall be deemed Allowed in the amount the Debtors admit owing, if any, and Disputed as to the excess.

**1.37**   **Distribution Record Date** means the date that is the Confirmation Date.

**1.38**   **Effective Date** means a Business Day on or after the Confirmation Date specified by the Debtors on which (i) no stay of the Confirmation Order is in effect, and (ii) the conditions to the effectiveness of the Plan specified in Section 9.1 hereof have been satisfied or waived.

**1.39**   **Equity Interest** means any ownership interests in any of the Debtors, which includes, but is not limited to, issued or authorized common or preferred stock, warrants for the issuance of such shares, other stock, stock equivalents, limited partnership interests, membership interests, and any option, warrant or right, contractual or otherwise, to acquire any such interest.

**1.40**   **Estate** means the bankruptcy estate of any of the Debtors in the Bankruptcy Cases, and "**Estates**" means, collectively, the bankruptcy estates of all of the Debtors in the Bankruptcy Cases, as created under section 541 of the Bankruptcy Code.

**1.41**   **Estate Assets** means all of the assets, property, and cash of each of the Debtors, as defined in section 541 of the Bankruptcy Code (excluding assets previously distributed, expended, or otherwise disposed of by the Debtors prior to the Confirmation Date and not otherwise subject to recovery), wherever located or of whatever type or nature, existing as of the Confirmation Date, including, without limitation, the Causes of Action and the D&O Causes of Action.

**1.42**   **Exculpation Parties** shall have the meaning ascribed to it in Section 13.4 of the Plan.

**1.43**   **Final Order** means an Order or judgment of the Bankruptcy Court, which is no longer subject to appeal or certiorari proceedings and as to which no appeal or certiorari proceeding is pending or, in the discretion of the Debtors, if an appeal is filed and no stay has been entered.

**1.44**   **Holder** means the legal or beneficial owner of a Claim or Equity Interest, and when used on conjunction with a class or type of Claim or Equity Interest, means a Holder of a Claim or Equity Interest in such Class or of such type.

**1.45**   **Insider** has the meaning set forth in section 101(31) of the Bankruptcy Code.

**1.46**   **Intercompany Claim** means a Claim held by a Debtor against another Debtor.

**1.47**   **Lien** means a judicial lien as defined in section 101(36) of the Bankruptcy Code; a lien as defined in section 101(37) of the Bankruptcy Code; a security interest as defined in section

101(51) of the Bankruptcy Code; and a statutory lien as defined in section 101(53) of the Bankruptcy Code.

**1.48** **Liquidating Trust Assets** means all Estate Assets including the Causes of Action.

**1.49** **Liquidating Trust** means the trust that will come into existence upon the Effective Date, and into which all of the Liquidating Trust Assets will vest pursuant to the Plan, which trust shall be formed pursuant to and governed by the Liquidating Trust Agreement.

**1.50** **Liquidating Trustee** means the trustee of the Liquidating Trust. The Debtors shall designate the Liquidating Trustee in the Plan Supplement.

**1.51** **Liquidating Trust Agreement** means the agreement governing the Liquidating Trust, dated as on or before the Effective Date, substantially in the form included in the Plan Supplement.

**1.52** **Party in Interest** means any entity or person with a legal or beneficial interest at issue in the Bankruptcy Cases.

**1.53** **Person** has the meaning set forth in section 101(41) of the Bankruptcy Code.

**1.54** **Petition Dates** means April 7-9, 2017, which are the dates on which the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court.

**1.55** **Pharmacy Debtors** means, collectively all of the Debtors except for the Corporate Debtors.

**1.56** **Plan** means this chapter 11 plan of liquidation, including exhibits hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

**1.57** **Plan Supplement** means a separate volume of documents to be filed with the Bankruptcy Court not less than fourteen (14) days prior to the Confirmation Hearing, which shall include, but may not be limited to, the Liquidating Trust Agreement and the designation of the Liquidating Trustee.

**1.58** **Priority Non-Tax Claim** means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

**1.59** **Priority Tax Claim** means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.60    Pro Rata Share** means the proportion that the amount of an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims (including Disputed Claims, but excluding Disallowed Claims) in that particular Class.

**1.61    Professional Fee Claims** means fees and costs of professional advisors (e.g., attorneys, financial advisors, and accountants) retained by the Debtors, the Trustee, or the Committee in the Bankruptcy Cases.

**1.62    Purchaser** means UpWell Holdings, Inc., the buyer of substantially all of the Debtors' assets under the Sale Order.

**1.63    RA Health Claim** means proof of claim number 70 filed by RA Health Management LLC against Uplift Rx, LLC as a fully secured claim in the amount of $40,000.00.

**1.64    Retained Cash** means each Debtors' respective cash on hand as of the Effective Date.

**1.65    Sale Closing Date** means November 17, 2017, the date of closing of the Sale Transaction.

**1.66    Sale Motion** means the Debtors' Expedited Amended Motion for Entry of an Order: (A) Approving the Amended Bidding Procedures; (B) Authorizing Amended Procedures for the Assignment and Assumption of Certain Executory Contracts; and (C) Granting Related Relief (Doc. No. 597).

**1.67    Sale Order** means the Bankruptcy Court's order (Doc. No. 663) granting the Sale Motion.

**1.68    Sale Proceeds** shall mean all proceeds paid by the Purchaser to the Debtors as part of the Sale Transaction.

**1.69    Sale Transaction** means the Court-approved sale of substantially all of the Debtors' assets to the Purchaser in accordance with the Sale Order in exchange for the Sale Proceeds.

**1.70    Schedules** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statements have been or may be supplemented or amended through the Confirmation Date.

**1.71    Secured Claim** means a Claim (i) secured by Collateral, to the extent of the value of such Collateral (a) as set forth in the Plan, (b) as agreed to by the holder of such Claim and the Debtors, or (c) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (ii) secured by the amount of any rights of setoff of the holder thereof under section 553 of the Bankruptcy Code.

7

**1.72** **Settlement Agreement** means the Settlement Agreement and Stipulation by and among Zions Bank, the Debtors and their non-debtor affiliates, and the Creditors Committee, which was approved by the Bankruptcy Court on April 10, 2018 (Doc. No. 824), and which, among other things, divided the Sale Proceeds between Zions Bank and the Debtors (i.e. the "Settlement Proceeds").

**1.73** **Settlement Proceeds** means the portion of the Sales Proceeds allocated to the Debtors under the Bankruptcy Court approved Settlement Agreement, in the approximate amount of $7 million.

**1.74** **Seized Funds** means the Debtors' assets seized by the U.S. Government from the bank accounts of the Debtors at Zions Bank.

**1.75** **Subordinated Beneficial Interests** means the junior class of beneficial interests in the Liquidating Trust that shall not receive payment unless and until all of the Holders of Beneficial Interests are paid in full, and upon such occurrence, that shall receive all remaining Liquidating Trust Assets.

**1.76** **Tax Code** means title 26 of the United States Code, as amended from time to time.

**1.77** **Transferred Assets** means the assets sold to the Purchaser in accordance with the Sale Order.

**1.78** **United States Trustee** means the Office of the United States Trustee for Region 7.

**1.79** **Unsecured Claim** means any Claim against the Debtors that is (i) not an Administrative Expense Claim, Priority Tax Claim, or Priority Non- Tax Claim, or (ii) otherwise determined by the Bankruptcy Court to be a Unsecured Claim.

**1.80** **Zions Bank** means ZB, N.A.

**1.81** **Zions Bank Claims** means all Claims of Zions Bank arising under or in connection with the Zions Prepetition Loan Facility.

**1.82** **Zions Bank Settlement Payment** means (i) Cash in the amount of $7.5 million, and (ii) all rights, title, interest, and/or claims held by the Trustee, Debtors and Debtors' estates to the Seized Funds.

**1.83** **Zions Bank Prepetition Loan Facility** means that certain Credit Agreement dated June 24, 2014, by and among Zions Bank and Alliance Medical Holdings, LLC and thirty-six (36) of its subsidiaries, as guarantors, and the related loan documents, including a Security Agreement (All Assets) and Joinder Agreement, under which, as of the Petition Dates, the Debtors were jointly, severally, and unconditionally obligated to Zions Bank in a principal amount of not less than $29,076,663, which indebtedness was secured by a first-priority Lien in substantially all of the Debtors individual and joint assets and property of any nature whatsoever.

8

# ARTICLE II
## ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

**2.1** **Filing Administrative Claims** Any Person that asserts an Administrative Claim, or a protective application on account of any Administrative Claim, arising before the Effective Date, including Claims under Section 503(b) of the Code, but excluding (a) fees payable by the Debtors pursuant to 28 U.S.C. §1930 or any interest accruing thereto; (b) Professional Fee Claims; and (c) claims that are entitled to priority pursuant to §507(a)(8) of the Bankruptcy Code, shall, on or before the Administrative Claims Bar Date, file an application, motion, or request, as called for by the Rules, with the Bankruptcy Court for allowance of such Claim as an Administrative Claim specifying the amount of and basis for such Claim; *provided, however,* that applicants or movants who have previously filed applications or motions with the Bankruptcy Court need not file another such paper for the same Claim. Failure to file a timely application or motion for allowance pursuant to this Section by any Holder of an Administrative Claim for an expense or liability incurred shall bar such a claimant from seeking recovery on such Administrative Claim.

**2.2** **Administrative Expense Claim Treatment.** Except to the extent that a Holder of an Allowed Administrative Claim agrees to a different treatment, in writing, each Holder of an Allowed Administrative Claim shall receive, in full satisfaction, settlement and release of and in exchange for such Allowed Administrative Claim, Cash in an amount equal to such Allowed Administrative Claim, either: (i) as soon as reasonably practicable after the Effective Date, or (ii) if the Administrative Claim is not Allowed as of the Effective Date, thirty (30) days after the date on which such Administrative Claim becomes an Allowed Administrative Claim. Any Professional Fee Claims not paid under the Plan prior to the Effective Date shall be assumed by the Liquidating Trust as a claim payable in the same priority and amount as would be payable by the Debtors. Any amounts that are not paid to a claimant on account of an Allowed 503(b)(9) Administrative Claims prior to the Effective Date for any reason shall retain their Chapter 11 administrative expense priority for payment under any further distribution of funds by the Liquidating Trust on account of the Debtor the claim is asserted against, including but not limited to post-effective date distributions, under the Liquidating Trust; provided, however, holders of Allowed 503(b)(9) Administrative Claims shall only be paid to the extent the Liquidating Trust has sufficient funds to pay amounts to its creditors.

**2.3** **Compensation and Reimbursement Claims**. All entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 327, 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code (i) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the respective Administrative Claims Bar Date, and (ii) shall be paid by the Liquidating Trustee, in full satisfaction of such Claim, an amount in Cash equal to the Allowed amount of such Claim. Applications for payment of compensation and reimbursement claims filed after this date shall be discharged, forever barred and shall receive no payment under this Plan.

**2.4** **Fees Under 28 U.S.C. §1930**. All fees payable in the Bankruptcy Cases under 28 U.S.C. § 1930, will, if not previously paid in full, be paid in Cash on the Effective Date and

will continue to be paid by the Liquidating Trustee as required under 28 U.S.C. § 1930 until such time as an order is entered by the Bankruptcy Court closing the Bankruptcy Cases.

2.5     **Priority Tax Claims**.  Each holder of an Allowed Priority Tax Claim will be paid either (i) the full amount of the Allowed Priority Tax Claim (without post-petition interest or penalty) in Cash on the Effective Date or as soon thereafter as is reasonably practicable, or (ii) such lesser amount as to which the holder of an Allowed Priority Tax Claim and the Liquidating Trustee might otherwise agree.

**ARTICLE III**
**CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS**

The following table designates the Classes of Claims against and Equity Interests in the Debtors and specifies which of those Classes are: (i) impaired or unimpaired by the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (iii) deemed to reject the Plan:

| **Class** | **Designation** | **Impairment** | **Entitled to Vote** |
|---|---|---|---|
| Class 1 | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 2 | Zions Bank Claims | Unimpaired | No (deemed to accept) |
| Class 3 | Ad Valorem Tax Claims | Unimpaired | No (deemed to accept) |
| Class 4 | RA Health Claim Against Uplift Rx, LLC | Impaired | Yes |
| Class 5 | Unsecured Claims against the Corporate Debtors | Impaired | Yes |
| Class 6 | Uplift Rx, LLC | Impaired | Yes |
| Class 7 | Belle Pharmacy, LLC | Impaired | Yes |
| Class 8 | Benson Pharmacy, LLC | Impaired | Yes |
| Class 9 | Bridgestone Pharmacy, LLC | Impaired | Yes |
| Class 10 | Brookhill Pharmacy, LLC | Impaired | Yes |
| Class 11 | Brookside Rx, LLC | Impaired | Yes |
| Class 12 | Canyon Medical, LLC | Impaired | Yes |
| Class 13 | Charleston Rx, LLC | Impaired | Yes |
| Class 14 | Cheshire Pharmacy, LLC | Impaired | Yes |
| Class 15 | Conoly Pharmacy, LLC | Impaired | Yes |
| Class 16 | Cottonwood Pharmacy, LLC | Impaired | Yes |
| Class 17 | Delaney Pharmacy, LLC | Impaired | Yes |
| Class 18 | Galena Pharmacy, LLC | Impaired | Yes |
| Class 19 | Garnett Pharmacy, LLC | Impaired | Yes |
| Class 20 | Geneva Pharmacy, LLC | Impaired | Yes |
| Class 21 | Glendale Square Rx, Inc. | Impaired | Yes |
| Class 22 | Goodman Pharmacy, LLC | Impaired | Yes |

10

| | | | |
|---|---|---|---|
| Class 23 | Hawthorne Pharmacy, LLC | Impaired | Yes |
| Class 24 | Hazelwood Pharmacy, LLC | Impaired | Yes |
| Class 25 | Health Saver Rx, LLC | Impaired | Yes |
| Class 26 | Improve Rx, LLC | Impaired | Yes |
| Class 27 | Innovative Rx, LLC | Impaired | Yes |
| Class 28 | Kendall Pharmacy, LLC | Impaired | Yes |
| Class 29 | Lockeford Rx, Inc. | Impaired | Yes |
| Class 30 | Lone Peak Rx, LLC | Impaired | Yes |
| Class 31 | Medina Pharmacy, LLC | Impaired | Yes |
| Class 32 | New Jersey Rx, LLC | Impaired | Yes |
| Class 33 | Newton Rx, LLC | Impaired | Yes |
| Class 34 | Oak Creek Rx, LLC | Impaired | Yes |
| Class 35 | Ohana Rx, Inc. | Impaired | Yes |
| Class 36 | On Track Rx, LLC | Impaired | Yes |
| Class 37 | Osceola Clinic Pharmacy, LLC | Impaired | Yes |
| Class 38 | Raven Pharmacy, LLC | Impaired | Yes |
| Class 39 | Richardson Pharmacy, LLC | Impaired | Yes |
| Class 40 | Riverbend Prescription Services, Inc. | Impaired | Yes |
| Class 41 | Stonybrook Pharmacy, LLC | Impaired | Yes |
| Class 42 | Uinta Rx, LLC | Impaired | Yes |
| Class 43 | Waverly Pharmacy, LLC | Impaired | Yes |
| Class 44 | Woodward Drugs, LLC | Impaired | Yes |
| Class 45 | Equity Interests in the Debtors | Impaired | No (deemed to reject) |

**ARTICLE IV**
**TREATMENT OF CLAIMS AND EQUITY INTERESTS**

**4.1    Class 1 – Priority Non-Tax Claims**.

The legal, equitable, and contractual rights of the Holders of Class 1 Claims are unaltered by the Plan.  Except to the extent that a Holder of an Allowed Priority Non-Tax Claim against the Debtors agrees to a different treatment of such Claim, each such Holder shall receive, from the indebted Debtor's Estate Assets, Cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Priority Non-Tax Claim on the Effective Date or as soon thereafter as is practicable.

Class 1 in Unimpaired.  The Holders of Priority Non-Tax Claims are not entitled to vote for or against the Plan.

**4.2    Class 2 – Zions Bank Claims**.

11

Class 2 consists of the Zions Bank Claims against the Debtors.  Pursuant to the Settlement Agreement approved by the Bankruptcy Court, the Zions Bank Claims against all of the Debtors were fully satisfied by the Zions Bank Settlement Payment.  Zions' legal, equitable, and contractual rights are unaltered by the Plan.  Other than the Zions Bank Settlement Payment, Zions Bank shall neither receive nor retain any property or interest in property on account of the Zions Bank Claims and Zions Bank shall have no Claim against the Debtors or the Liquidating Trust.

Class 2 in Unimpaired.  The Holder of the Zions Bank Claims is not entitled to vote for or against the Plan.

### 4.3     Class 3 – Ad Valorem Tax Claims.

Class 3 consists of the Ad Valorem Tax Claims against the Debtors.  The legal, equitable, and contractual rights of the Holders of Class 3 Claims are unaltered by the Plan.  Except to the extent that a Holder of an Allowed Ad Valorem Tax Claim against the Debtors agrees to a different treatment of such Claim, each such Holder shall receive, from the indebted Debtor's Estate Assets, Cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Ad Valorem Tax Claim on the Effective Date or as soon thereafter as is practicable.

Class 3 is Unimpaired.   The Holders of Class 3 Claims are not entitled to vote to accept or reject the Plan.

### 4.4     Class 4 – RA Heath Claim Against Uplift Rx, LLC

Class 4 consists of the RA Health Claim against Uplift Rx, LLC.   The RA Health Claim was filed against Uplift Rx, LLC in the amount of $40,000.00 and is allegedly fully secured by all assets of Uplift Rx, LLC.  The claim is supported by an unsigned asset purchase agreement, and portions of various other documents.  Uplift Rx, LLC believes the RA Health Claim is not a valid Secured Claim, and that, to the extent the underlying Claim it valid, it is an Unsecured Claim.  The Debtors intend to object to the RA Health Claim.  In the event the RA Health Claim is found to be a valid Secured Claim against the assets of Uplift Rx, LLC that is senior to the claim of Zions Bank, then Uplift Rx, LLC shall pay the claim over five (5) years in equal annual payments on the annual anniversary of the Effective Date, plus interest at 5%.  In the event the RA Health Claim is an Allowed Unsecured Claim, it shall be treated as a Class 6 claim.

Class 4 is Impaired.  The Holder of the RA Heath Claim is entitled to vote to accept or reject the Plan.

### 4.5     Class 5 - Unsecured Claims Against the Corporate Debtors.

Class 5 consists of the Allowed Unsecured Claims against any of the Corporate Debtors.  As set forth in Section 6.2, below, on the Effective Date, the Corporate Debtors shall be substantively consolidated into a single entity.  Each Allowed Unsecured Claim in Class 5 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to the Corporate Debtors under the Allocation Methodology after payment in full of all Allowed Administrative Claims; and (ii)

12

Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from the Corporate Debtors' Liquidating Trust Assets.

The Class 5 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.6 **Class 6 – Unsecured Claims Against Uplift Rx, LLC.**

Class 6 consists of the Allowed Unsecured Claims against Uplift Rx, LLC. As set forth in Section 6.3, below, Uplift Rx, LLC shall not be substantively consolidated with any other Debtor. Each Allowed Unsecured Claim in Class 6 shall receive a Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Uplift Rx, LLC's Liquidating Trust Assets less applicable expenses.

The Class 6 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.7 **Class 7 – Unsecured Claims Against Belle Pharmacy, LLC.**

Class 7 consists of the Allowed Unsecured Claims against Bella Pharmacy, LLC. As set forth in the Plan, below, Belle Pharmacy, LLC shall not be substantively consolidated with any other Debtor. Each Allowed Unsecured Claim in Class 7 shall receive a Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Belle Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 7 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.8 **Class 8 – Unsecured Claims Against Benson Pharmacy, LLC.**

Class 8 consists of the Allowed Unsecured Claims against Benson Pharmacy, LLC. As set forth in the Plan, below, Benson Pharmacy, LLC shall not be substantively consolidated with any other Debtor. Each Allowed Unsecured Claim in Class 8 shall receive a Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Benson Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 8 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.9 **Class 9 – Unsecured Claims Against Bridgestone Pharmacy, LLC.**

Class 9 consists of the Allowed Unsecured Claims against Bridgestone Pharmacy, LLC. As set forth in the Plan, below, Bridgestone Pharmacy, LLC shall not be substantively consolidated with any other Debtor. Each Allowed Unsecured Claim in Class 9 shall receive a Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust

13

Cash derived from Bridgestone Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 9 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

**4.10**     **Class 10 – Unsecured Claims Against Brookhill Pharmacy, LLC.**

Class 10 consists of the Allowed Unsecured Claims against Brookhill Pharmacy, LLC. As set forth in the Plan, below, Brookhill Pharmacy, LLC shall not be substantively consolidated with any other Debtor. Each Allowed Unsecured Claim in Class 10 shall receive a Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Brookhill Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 10 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

**4.11**     **Class 11 – Unsecured Claims Against Brookside Rx, LLC.**

Class 11 consists of the Allowed Unsecured Claims against Brookside Rx, LLC. As set forth in the Plan, below, Brookside Rx, LLC shall not be substantively consolidated with any other Debtor. Each Allowed Unsecured Claim in Class 11 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Brookside Rx, LLC under the Allocation Methodology after payment in full of all Allowed Administrative Claims; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Brookside Rx, LLC's Liquidating Trust Assets less applicable expenses.

The Class 11 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

**4.12**     **Class 12 – Unsecured Claims Against Canyon Medical, LLC.**

Class 12 consists of the Allowed Unsecured Claims against Canyon Medical, LLC. As set forth in the Plan, below, Canyon Medical, LLC shall not be substantively consolidated with any other Debtor. Each Allowed Unsecured Claim in Class 12 shall receive a Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Canyon Medical, LLC's Liquidating Trust Assets less applicable expenses.

The Class 12 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

**4.13**     **Class 13 – Unsecured Claims Against Charleston Rx, LLC.**

Class 13 consists of the Allowed Unsecured Claims against Charleston Rx, LLC. As set forth in the Plan, below, Charleston Rx, LLC shall not be substantively consolidated with any other Debtor. Each Allowed Unsecured Claim in Class 13 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Charleston Rx, LLC under the Allocation Methodology after

14

payment in full of all Allowed Administrative Claims; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Charleston Rx, LLC's Liquidating Trust Assets less applicable expenses.

The Class 13 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.14    Class 14 – Unsecured Claims Against Cheshire Pharmacy, LLC.

Class 14 consists of the Allowed Unsecured Claims against Cheshire Pharmacy, LLC.  As set forth in the Plan, below, Cheshire Pharmacy, LLC shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 14 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Cheshire Pharmacy, LLC under the Allocation Methodology after payment in full of all Allowed Administrative Claims; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Cheshire Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 14 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.15    Class 15 – Unsecured Claims Against Conoly Pharmacy, LLC.

Class 15 consists of the Allowed Unsecured Claims against Conoly Pharmacy, LLC.  As set forth in the Plan, below, Conoly Pharmacy, LLC shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 15 shall receive a Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Conoly Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 15 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.16    Class 16 – Unsecured Claims Against Cottonwood Pharmacy, LLC.

Class 16 consists of the Allowed Unsecured Claims against Cottonwood Pharmacy, LLC.  As set forth in the Plan, below, Cottonwood Pharmacy, LLC shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 16 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Cottonwood Pharmacy, LLC under the Allocation Methodology after payment in full of all Allowed Administrative Claims; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Cottonwood Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 16 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.17    Class 17 – Unsecured Claims Against Delaney Pharmacy, LLC.

15

4829-4345-1289.2

Class 17 consists of the Allowed Unsecured Claims against Delaney Pharmacy, LLC. As set forth in the Plan, below, Delaney Pharmacy, LLC shall not be substantively consolidated with any other Debtor. Each Allowed Unsecured Claim in Class 17 shall receive a Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Delaney Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 17 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.18     Class 18 – Unsecured Claims Against Galena Pharmacy, LLC.

Class 18 consists of the Allowed Unsecured Claims against Galena Pharmacy, LLC. As set forth in the Plan, below, Galena Pharmacy, LLC shall not be substantively consolidated with any other Debtor. Each Allowed Unsecured Claim in Class 18 shall receive a Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Galena Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 18 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.19     Class 19 – Unsecured Claims Against Garnett Pharmacy, LLC.

Class 19 consists of the Allowed Unsecured Claims against Garnett Pharmacy, LLC. As set forth in the Plan, below, Garnett Pharmacy, LLC shall not be substantively consolidated with any other Debtor. Each Allowed Unsecured Claim in Class 19 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Garnett Pharmacy, LLC under the Allocation Methodology after payment in full of all Allowed Administrative Claims; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Garnett Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 19 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.20     Class 20 – Unsecured Claims Against Geneva Pharmacy, LLC.

Class 20 consists of the Allowed Unsecured Claims against Geneva Pharmacy, LLC. As set forth in the Plan, below, Geneva Pharmacy, LLC shall not be substantively consolidated with any other Debtor. Each Allowed Unsecured Claim in Class 20 shall receive (i) a Pro Rata Share of the Settlement Proceeds allocated to Geneva Pharmacy, LLC under the Allocation Methodology after payment in full of all Allowed Administrative Claims; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Geneva Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 20 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

16

**4.21    Class 21 – Unsecured Claims Against v Glendale Square Rx, Inc.**

Class 21 consists of the Allowed Unsecured Claims against Glendale Square Rx, Inc. As set forth in the Plan, below, Glendale Square Rx, Inc. shall not be substantively consolidated with any other Debtor. Each Allowed Unsecured Claim in Class 21 shall receive a Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Glendale Square Rx, Inc.'s Liquidating Trust Assets less applicable expenses.

The Class 21 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

**4.22    Class 22 – Unsecured Claims Against Goodman Pharmacy, LLC.**

Class 22 consists of the Allowed Unsecured Claims against Goodman Pharmacy, LLC. As set forth in the Plan, below, Goodman Pharmacy, LLC shall not be substantively consolidated with any other Debtor. Each Allowed Unsecured Claim in Class 22 shall receive a Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Goodman Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 22 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

**4.23    Class 23 – Unsecured Claims Against Hawthorne Pharmacy, LLC.**

Class 23 consists of the Allowed Unsecured Claims against Hawthorne Pharmacy, LLC. As set forth in the Plan, below, Hawthorne Pharmacy, LLC shall not be substantively consolidated with any other Debtor. Each Allowed Unsecured Claim in Class 23 shall receive a Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Hawthorne Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 23 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

**4.24    Class 24 – Unsecured Claims Against Hazelwood Pharmacy, LLC.**

Class 24 consists of the Allowed Unsecured Claims against Hazelwood Pharmacy, LLC. As set forth in the Plan, below, Hazelwood Pharmacy, LLC shall not be substantively consolidated with any other Debtor. Each Allowed Unsecured Claim in Class 24 shall receive a Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Hazelwood Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 24 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

4829-4345-1289.2

**4.25    Class 25 – Unsecured Claims Against Health Saver Rx, LLC.**

Class 25 consists of the Allowed Unsecured Claims against Health Saver Rx, LLC.  As set forth in the Plan, below, Health Saver Rx, LLC shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 25 shall receive a Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Health Saver Rx, LLC's Liquidating Trust Assets less applicable expenses.

The Class 25 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

**4.26    Class 26 – Unsecured Claims Against Improve Rx, LLC.**

Class 26 consists of the Allowed Unsecured Claims against Improve Rx, LLC.  As set forth in the Plan, below, Improve Rx, LLC shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 26 shall receive a Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Improve Rx, LLC's Liquidating Trust Assets less applicable expenses.

The Class 26 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

**4.27    Class 27 – Unsecured Claims Against Innovative Rx, LLC.**

Class 27 consists of the Allowed Unsecured Claims against Innovative Rx, LLC.  As set forth in the Plan, below, Innovative Rx, LLC shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 27 shall receive (i) a Pro Rata Share of the Sale Proceeds allocated to Innovative Rx, LLC under the Allocation Analysis after payment in full of all Allowed Administrative Claims; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Innovative Rx, LLC's Liquidating Trust Assets less applicable expenses.

The Class 27 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

**4.28    Class 28 – Unsecured Claims Against Kendall Pharmacy, LLC.**

Class 28 consists of the Allowed Unsecured Claims against Kendall Pharmacy, LLC.  As set forth in the Plan, below, Kendall Pharmacy, LLC shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 28 shall receive a Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Kendall Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 28 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

**4.29     Class 29 – Unsecured Claims Against Lockeford Rx, LLC.**

Class 29 consists of the Allowed Unsecured Claims against Lockeford Rx, LLC.  As set forth in the Plan, below, Lockeford Rx, LLC shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 29 shall receive (i) a Pro Rata Share of the Sale Proceeds allocated to Lockeford Rx, LLC under the Allocation Analysis after payment in full of all Allowed Administrative Claims; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Lockeford Rx, LLC's Liquidating Trust Assets less applicable expenses.

The Class 29 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

**4.30     Class 30 – Unsecured Claims Against Lone Peak Rx, LLC.**

Class 30 consists of the Allowed Unsecured Claims against Lone Peak Rx, LLC.  As set forth in the Plan, below, Lone Peak Rx, LLC shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 30 shall receive a Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Lone Peak Rx, LLC's Liquidating Trust Assets less applicable expenses.

The Class 30 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

**4.31     Class 31 – Unsecured Claims Against Medina Pharmacy, LLC.**

Class 31 consists of the Allowed Unsecured Claims against Medina Pharmacy, LLC.  As set forth in the Plan, below, Medina Pharmacy, LLC shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 31 shall receive a Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Medina Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 31 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

**4.32     Class 32 – Unsecured Claims Against New Jersey Rx, LLC.**

Class 32 consists of the Allowed Unsecured Claims against New Jersey Rx, LLC.  As set forth in the Plan, below, New Jersey Rx, LLC shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 32 shall receive (i) a Pro Rata Share of the Sale Proceeds allocated to New Jersey Rx, LLC under the Allocation Analysis after payment in full of all Allowed Administrative Claims; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from New Jersey Rx, LLC's Liquidating Trust Assets less applicable expenses.

The Class 32 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

4829-4345-1289.2

**4.33     Class 33 – Unsecured Claims Against Newton Rx, LLC.**

Class 33 consists of the Allowed Unsecured Claims against Newton Rx, LLC.  As set forth in the Plan, below, Newton Rx, LLC shall not be substantively consolidated with any other Debtor. Each Allowed Unsecured Claim in Class 33 shall receive a Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Newton Rx, LLC's Liquidating Trust Assets less applicable expenses.

The Class 33 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

**4.34     Class 34 – Unsecured Claims Against Oak Creek Rx, LLC.**

Class 34 consists of the Allowed Unsecured Claims against Oak Creek Rx, LLC.  As set forth in the Plan, below, Oak Creek Rx, LLC shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 34 shall receive a Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Oak Creek Rx, LLC's Liquidating Trust Assets less applicable expenses.

The Class 34 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

**4.35     Class 35 – Unsecured Claims Against Ohana Rx, LLC.**

Class 35 consists of the Allowed Unsecured Claims against Ohana Rx, LLC.  As set forth in the Plan, below, Ohana Rx, LLC shall not be substantively consolidated with any other Debtor. Each Allowed Unsecured Claim in Class 35 shall receive a Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Ohana Rx, Inc.'s Liquidating Trust Assets less applicable expenses.

The Class 35 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan..

**4.36     Class 36 – Unsecured Claims Against On Track Rx, LLC.**

Class 36 consists of the Allowed Unsecured Claims against On Track Rx, LLC.  As set forth in the Plan, below, On Track Rx, LLC shall not be substantively consolidated with any other Debtor. Each Allowed Unsecured Claim in Class 36 shall receive a Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from On Track Rx, LLC's Liquidating Trust Assets less applicable expenses.

The Class 36 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

20

**4.37     Class 37 – Unsecured Claims Against Osceola Clinic Pharmacy, LLC.**

Class 37 consists of the Allowed Unsecured Claims against Osceola Clinic Pharmacy, LLC.  As set forth in the Plan, below, Osceola Clinic Pharmacy, LLC shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 37 shall receive a Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Osceola Clinic Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 37 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

**4.38     Class 38 – Unsecured Claims Against Raven Pharmacy, LLC.**

Class 38 consists of the Allowed Unsecured Claims against Raven n Pharmacy, LLC.  As set forth in the Plan, below, Raven Pharmacy, LLC shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 38 shall receive a Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Raven Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 38 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

**4.39     Class 39 – Unsecured Claims Against Richardson Pharmacy, LLC.**

Class 39 consists of the Allowed Unsecured Claims against Richardson Pharmacy, LLC.  As set forth in the Plan, below, Richardson Pharmacy, LLC shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 39 shall receive a Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Richardson Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 39 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

**4.40     Class 40 – Unsecured Claims Against Riverbend Prescription Services, LLC.**

Class 40 consists of the Allowed Unsecured Claims against Riverbend Prescription Services, LLC.  As set forth in the Plan, below, Riverbend Prescription Services, LLC shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 40 shall receive a Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Riverbend Prescription Services, LLC's Liquidating Trust Assets less applicable expenses.

The Class 40 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

4829-4345-1289.2

**4.41   Class 41 – Unsecured Claims Against Stonybrook Pharmacy, LLC.**

Class 41 consists of the Allowed Unsecured Claims against Stonybrook Pharmacy, LLC. As set forth in the Plan, below, Stonybrook Pharmacy, LLC shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 41 shall receive a Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Stonybrook Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 41 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

**4.42   Class 42 – Unsecured Claims Against Uinta Rx, LLC.**

Class 42 consists of the Allowed Unsecured Claims against Uinta Rx, LLC.  As set forth in the Plan, below, Uinta Rx, LLC shall not be substantively consolidated with any other Debtor. Each Allowed Unsecured Claim in Class 42 shall receive (i) a Pro Rata Share of the Sale Proceeds allocated to Uinta Rx, LLC under the Allocation Analysis after payment in full of all Allowed Administrative Claims; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Uinta Rx, LLC's Liquidating Trust Assets less applicable expenses.

The Class 42 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

**4.43   Class 43 – Unsecured Claims Against Waverly Pharmacy, LLC.**

Class 43 consists of the Allowed Unsecured Claims against Waverly Pharmacy, LLC.  As set forth in the Plan, below, Waverly Pharmacy, LLC shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 43 shall receive a Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Waverly Pharmacy, LLC's Liquidating Trust Assets less applicable expenses.

The Class 43 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

**4.44   Class 44 – Unsecured Claims Against Woodward Drugs, LLC.**

Class 44 consists of the Allowed Unsecured Claims against Woodward Drugs, LLC.  As set forth in the Plan, below, Woodward Drugs, LLC shall not be substantively consolidated with any other Debtor.  Each Allowed Unsecured Claim in Class 44 shall receive (i) a Pro Rata Share of the Sale Proceeds allocated to Woodward Drugs, LLC under the Allocation Analysis after payment in full of all Allowed Administrative Claims; and (ii) Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from Woodward Drugs, LLC's Liquidating Trust Assets less applicable expenses.

22

The Class 44 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

**4.45    Class 45 – Equity Interests**.

All Equity Interests in the Debtors shall be cancelled on the Effective Date. Each holder of an Equity Interest shall neither receive nor retain any property or interest in property on account of such Equity Interest and such holder shall have no Claim against the Debtors or the Liquidating Trust on account of such Equity Interest. Because the Class 45 Equity Interests are being cancelled, Holders of Equity Interests are deemed to reject the Plan, and as such, are not entitled to vote to accept or reject the Plan.

**ARTICLE V**
**PROVISIONS GOVERNING DISTRIBUTIONS**

**5.1    General Settlement of Claims and Interests**. Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan.

**5.2    Distribution Record Date**. On the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Equity Interests as maintained by the Debtors, or their agents, shall be deemed closed, and there shall be no further changes in the record holders, or record ownership of any of the Claims or Equity Interests. Except as set forth in Section 5.3, the Liquidating Trustee shall have no obligation to recognize any transfer of record ownership of the Claims, or Equity Interests occurring on or after the Distribution Record Date.

**5.3    Transfer of Claim**. In the event that the Holder of any Claim transfers such Claim after the Effective Date, such Holders shall immediately advise the Liquidating Trustee in writing of such transfer and provide sufficient written evidence of such transfer. The Liquidating Trustee shall be entitled to assume that no transfer of any Claim has been made unless and until the Liquidating Trustee shall have received written notice to the contrary.

**5.4    Method of Distributions Under the Plan**.

(a)    **Procedure for Distribution of Liquidating Trust Assets**. The Liquidating Trustee shall distribute Cash, in accordance with the Liquidating Trust Agreement, beginning on the Effective Date or as soon thereafter as is practicable, from the Liquidating Trust Assets on hand (including any Cash received from the Debtors on the Effective Date), except such amounts (i) as would be distributable to a holder of a Disputed Claim if such Disputed Claim had been Allowed, prior to the time of such distribution (but only until such Claim is resolved), (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the applicable Liquidating Trust Assets, (iii) to pay reasonable expenses (including, but not limited to, any taxes imposed on the  Liquidating Trust or on the Liquidating Trust Assets), and (iv) to satisfy other

23

liabilities incurred by the Liquidating Trust in accordance with this Plan or the Liquidating Trust Agreement.

(b)  **Delivery of Distributions**.  Subject to Bankruptcy Rule 9010, unless otherwise provided in the Plan, all distributions to any holder of an Allowed Claim will be made to the holder of each Allowed Claim at the address of such holder as listed in the Schedules, or on the books and records of the Debtors or their agents unless the Debtors or Liquidating Trustee have been notified, in advance, in writing a change of address, including, without limitation, by the timely filing of a proof of claim by such holder that provides an address for such holder different from the address reflected in the Schedules or in the Debtors' books and records.

(c)  **Unclaimed Distributions.**

(i)  If the Holder of an Allowed Claim fails to negotiate a check for a distribution issued to such Holder within sixty (60) days of the date the check was issued, then the Liquidating Trust shall provide written notice to such Holder that, unless such Holder negotiates the check within thirty (30) days after the date of such notice, the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim with respect to such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further distributions under the Plan with respect to such Claim.

(ii)  If a check for the for a distribution under the Plan is return to the Liquidating Trust due to an incorrect or incomplete address for the Holder of such Allowed Claim, and no claim is made in writing to the Liquidating Trustee as to such check within sixty (60) days of the date of such distribution was made, then the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim with respect to such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further distributions under the Plan with respect to such Claim.

(iii)  Any unclaimed distributions shall become Liquidating Trust Assets to be distributed to Holders of Allowed Claims pursuant to the terms of the Plan.

5.5  **Withholding and Reporting Requirements**.  In connection with the Plan and all instruments issued in connection therewith and distributed thereon, the Liquidating Trustee shall, to the extent practicable, comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.

5.6  **Minimum Distributions**.  No payment of Cash less than $50 shall be made by the Liquidating Trustee, and any payment required to be made hereunder that would total less than $50 shall be deemed waived.

5.7  **Setoffs**.  The Liquidating Trustee may, but shall not be required to, set off against any Claim (for purposes of determining the Allowed amount of such Claim, on which distribution

24

4829-4345-1289.2

shall be made), any claims of any nature whatsoever that the Debtors may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trustee of any such claim the Debtors may have against the holder of such Claim.

**ARTICLE VI**
**MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN**

**6.1** **General Overview of the Plan**. The purpose of the Plan is to provide for the allocation and distribution of the Estate Assets to the Holders of Claims against the Debtors (i) on a substantively consolidated basis as to the Corporate Debtors, and (ii) on a Debtor-by-Debtor basis as to the Pharmacy Debtors. To accomplish this, the Plan contemplates the creation of the Liquidating Trust controlled by the Liquidating Trustee. On the Effective Date of the Plan, the Settlement Proceeds will be distributed to creditors of the Debtors entitled to a percentage in accordance with the Allocation Analysis and after payment of administrative claims. The remaining assets will be transferred to the Liquidating Trust. The Liquidating Trust will liquidate such assets in an orderly fashion for the benefit of the Debtors' respective Creditors. The Plan also provides that the Holders of Allowed Administrative Claims and Allowed Priority Tax Claims will be paid in full on the Effective Date or the date that such Claims become Allowed Claims. Upon the Effective Date, all Equity Interests in the Debtors will be cancelled.

**6.2** **Substantive Consolidation of the Corporate Debtors.** The Plan shall serve as a motion requesting the substantive consolidation of the Corporate Debtors into a single entity. Entry of the Confirmation Order shall constitute approval, pursuant to section 105(a) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the Corporate Debtors. On and after the Effective Date: (i) all assets and liabilities of the Corporate Debtors shall be merged, so that all of the assets of the Corporate Debtors shall be available to pay all of the liabilities of the Corporate Debtors under the Plan; (ii) no distributions shall be made under the Plan on account of Intercompany Claims between the Corporate Debtors; (iii) all guarantees by any of the Corporate Debtors of the obligations of any other Corporate Debtor shall be eliminated so that any Claim against any Corporate Debtor and any guarantee thereof executed by any of the Corporate Debtors shall be one obligation of the substantively consolidated entity; and (iv) each and every Claim filed or Allowed, or to be filed or Allowed, in the case of any of the Corporate Debtors shall be deemed filed or allowed against the substantively consolidated Corporate Debtors.

**6.3** **No Substantive Consolidation of the Pharmacy Debtors**. The Plan shall not substantively consolidate the Pharmacy Debtors. The Liquidating Trustee shall be responsible for segregating each Debtors' portion the Liquidating Trust Assets and Settlement Proceeds, with the exception of the Corporate Debtors portion of the Liquidating Trust Assets and Settlement Proceeds, which may be combined because the Plan contemplates the consolidation of the Corporate Debtors. For the avoidance of doubt, any provision of the Plan or Disclosure Statement referencing payments from the Liquidating Trust Assets shall refer to payment to a Holder of an Allowed Claim solely from the Liquidating Trust Assets attributable to the indebted Debtor, or, in

25

the case of a Holder of an Allowed Claim against the Corporate Debtors, to payment from the Liquidating Trust Assets attributable to the to the Corporate Debtors.

**6.4**     **Transfers of Property to the Liquidating Trust**. On the Effective Date, the Debtors shall be deemed to have irrevocably transferred and assigned the Liquidating Trust Assets to the Liquidating Trust, to hold in trust for the benefit of the Holders of Allowed Claims against the Debtors, pursuant to the terms of this Plan and of the Liquidating Trust Agreement.

Except as otherwise provided by this Plan or the Liquidating Trust Agreement, upon the Effective Date, title to the Liquidating Trust Assets shall pass to the Liquidating Trust free and clear of all Claims and Equity Interests, in accordance with section 1141 of the Bankruptcy Code, except for validly perfected liens on Liquidating Trust Assets, which shall continue to encumber the Liquidating Trust Assets to the same validity, extent and priority as existed prior to the Effective Date. For the avoidance of doubt, it is the intent of this section that all assets of the Debtors be transferred to the Liquidating Trust, and that after the Effective Date, the Debtors will retain no assets of any nature whatsoever.

**6.5**     **Dissolution of the Debtors**. Certain of the Debtors either have no allowed claims asserted against them or have so few claims that further administration of their respective estates would be cost prohibitive.  As a result, and as part of the overall Allocation Methodology, Berkshire Pharmacy, LLC (9197), Best Rx, LLC (0346), Burbank Pharmacy, LLC (5227), Canyons Pharmacy, LLC (1744), Raven Pharmacy Holdings, LLC (2464), Bridgestone Pharmacy Holdings, LLC (2840), Crestwell Pharmacy Holdings, LLC (1503), Galena Pharmacy Holdings, LLC (8609), Geneva Rx Holdings, LLC 8247), Hawthorne Rx Holdings, LLC (9531), Woodward Rx Holdings, LLC (2173), Philadelphia Pharmacy Holdings, LLC (8526), and Health Rx Holdings, LLC (0909) (collectively, the "Dismissed Debtors") will each seek dismissal and be dissolved.  Prior to dismissal, the Debtors will allocate a total of $164.00 to Best Rx, LLC and $75 to Burbank Pharmacy, LLC which satisfy all claims against those two entities prior to their dismissal and dissolution.  No allocation will be made toward the remaining entities to be dismissed as they have no allowed claims against them.

 Following the transfers contemplated in Section 6.4, above, the remaining Debtors shall be deemed dissolved.  The Liquidating Trustee shall have all power to wind up the affairs of each of the Debtors under applicable state laws in addition to all the rights, powers, and responsibilities conferred by the Bankruptcy Code, the Plan, the Liquidating Trust Agreement, and may, but shall not be required to, dissolve the Debtors under applicable state law.

**6.6**     **The Liquidating Trust**.

(a)     **Formation of Liquidating Trust**.  On or before the Effective Date, the Liquidating Trust Agreement shall be executed by the Debtors and Liquidating Trustee, and all other necessary steps shall be taken to establish the Liquidating Trust and the Beneficial Interests and Subordinated Beneficial Interests therein.

(b)     **Material Terms of Liquidating Trust Agreement**.    The following provisions of this section are intended to summarize the material terms of the Liquidating Trust

26

Agreement, which shall control the formation, operations and dissolution of the Liquidating Trust. In the event of a conflict between the terms of this section and the terms of the Liquidating Trust Agreement, the terms of the Liquidating Trust Agreement shall control.

        (i)     **Purpose of Liquidating Trust**.  The Liquidating Trust shall be established for the sole purpose of liquidating and distributing its assets, in accordance with Treasury Regulation section 30.1.7701-4(d), with no objective to continue or engage in the pursuit of a trade or business.

        (ii)     **The Liquidating Trustee**.  The Liquidating Trustee shall be designated in the Plan Supplement.  The Debtors' designation of the Liquidating Trustee shall be effective as of the Effective Date without the need for a further order of the Bankruptcy Court.

        (iii)     **Governance of the Liquidating Trust**. The Liquidating Trust shall be governed in accordance with the Liquidating Trust Agreement and consistent with the Plan.

        (iv)     **Authority of Liquidating Trustee**.  Subject only to the limitations contained in this Plan or in the a Liquidating Trust Agreement, the Liquidating Trustee shall have, by way of illustration and not limitation, the following duties, responsibilities, authorities, and powers: (A) the power and authority to hold, manage, sell and distribute the Liquidating Trust Asset in accordance with the Plan; (B) the power and authority to prosecute and resolve, in the name of the applicable Debtors and/or the name of the Liquidating Trust, the Liquidating Trust Assets; (C) the power and authority to prosecute and resolve objections to Disputed Claims against the Debtors that are payable from the Liquidating Trust Assets; (D) the power and authority to perform such other functions as are provided in the Plan and the Liquidating Trust Agreement; and (E) any other act that the Liquidating Trustee deems in the best interest of the Liquidating Trust.

        (v)     **Distribution of Liquidating Trust Assets**.  The Liquidating Trustee shall be responsible for making distributions from the Liquidating Trust as provided by the Plan and the Liquidating Trust Agreement.  Any Liquidating Trust Assets available for distribution shall be applied (a) first, to pay or reimburse, as applicable the reasonable, documented out-of-pocket fees, costs, expenses and liabilities of the Liquidating Trust and the Trustee, and any Allowed Administrative Expense Claims not paid on the Effective Date (b) second, to distributions to the Holders of Beneficial Interests, and (c) to the extent that the Holders of Beneficial Interests are paid in full, to the Subordinated Beneficial Interests.

        (vi)     **Retention and Compensation of the Liquidating Trustee and Professionals**.  The Liquidating Trustee may retain counsel and other professionals to assist in the Liquidating Trustee's duties on such terms as the Liquidating Trustee deems appropriate as set forth in the Liquidating Trust Agreement.  The Liquidating Trustee may retain professionals who represented parties in interest in the Bankruptcy Cases.  The Liquidating Trustee and professionals retained by the Liquidating Trustee shall be entitled to reasonable compensation from the Liquidating Trust as set forth in the Liquidating Trust Agreement.

        (vii)     **Dissolution**.  The Liquidating Trust and the Liquidating Trustee shall be discharged or dissolved, as the case may be, at such time as (i) the Liquidating Trust Assets

27

4829-4345-1289.2

have been liquidated; (ii) all distributions required to be made by the Liquidating Trust under the Plan have been made, but in no event shall the Liquidating Trust be dissolved later than three (3) years from the Effective Date, absent Bankruptcy Court approval.

(viii) **Limitation of Liability and Indemnification of Liquidating Trustee**.  The Liquidating Trustee and the Liquidating Trustee's agents and professionals, shall not be liable for actions taken or omitted in their capacity as, or on behalf of, the respective Liquidating Trustee, except those acts arising out of its or their own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts, and each shall be entitled to indemnification and reimbursement for fees and expenses incurred in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Liquidating Trustee, except for any actions or inactions involving willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts.  Any indemnification claim of the Liquidating Trustee, its agents or professionals, shall be satisfied from the Liquidating Trust Assets.  The Liquidating Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.

(ix) **Non-transferability of Beneficial Interests**.  The Beneficial Interests in the Liquidating Trust shall not be certificated and are not transferable (except as otherwise provided in the Liquidating Trust Agreement).

### 6.7    Preservation of Causes of Action.

(a)    On the Effective Date, the Causes of Action shall be vested exclusively in the Liquidating Trust, except to the extent a Creditor other third party has, prior to the Effective Date, been specifically released from any Cause of Action by the terms of the Plan or by a Final Order of the Bankruptcy Court.  The Liquidating Trustee will have the rights, powers, and privileges to pursue, not pursue, settle, release, or enforce any Causes of Action without seeking approval from the Bankruptcy Court.  The Debtors are currently not in a position to express an opinion on the merits of any of the Causes of Action or on the recoverability of any amounts as a result of any such Causes of Action.  For purposes of providing notice, the Debtors that that any director, officers, member or employee of any Debtor and any Person that engaged in business or other transactions with the Debtors prior to the Debtors' respective Petition Dates or that received payments from the Debtors prior to the Debtors' respective Petition Dates may be subject to litigation to the extent that applicable bankruptcy or non-bankruptcy law supports such litigation.

(b)    No Creditor or other Person should vote for the Plan or otherwise rely on Confirmation of the Plan or the entry of the Confirmation Order in order to obtain, or on the belief that it will obtain, any defense to any Cause of Action.  No Creditor or other party should act or refrain from acting on the belief that it will obtain any defense to any Cause of Action.  THE PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY CAUSES OF ACTION OR OBJECTIONS TO CLAIMS, AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF THE LIQUIDATING TRUST.  Creditors are advised that legal rights, claims, and rights of action the Debtors may have against them, if they exist, are retained under the Plan for prosecution unless a specific order of the Bankruptcy Court authorizes the Debtors to release such claims.  As such, Creditors are cautioned not to rely on (i) the absence of the listing of any legal

28

right, claim, or Cause of Action against a particular Creditor in the Disclosure Statement, the Plan, or the Schedules or (ii) the absence of litigation or demand prior to the Effective Date of the Plan as any indication that the Debtors, the Liquidating Trust, or the Liquidating Trustee do not possess or does not intend to prosecute a particular claim or Cause of Action if a particular Creditor votes to accept the Plan.  IT IS THE EXPRESSED INTENTION OF THE PLAN TO PRESERVE RIGHTS, CLAIMS, AND CAUSES OF ACTION OF THE DEBTORS, WHETHER NOW KNOWN OR UNKNOWN, FOR THE BENEFIT OF THE LIQUIDATING TRUST AND THE DEBTORS' CREDITORS.  To the fullest extent allowed under applicable law, nothing in the Plan operates as a release of any Cause of Action, except as expressly provided otherwise, nor shall the Debtors' failure to describe with specificity any Cause of Action estop or preclude the Liquidating Trust from pursuing such Causes of Action.

(c)     Notwithstanding the foregoing, the Debtors have made a good faith effort to identify and disclose known Causes of Action.   A schedule identifying the Debtors' known Causes of Action to be transferred and retained by the Liquidating Trust are attached to the Disclosure Statement as ***EXHIBIT C.***

**6.8**     **Effectuating Documents and Further Transactions**.   The Debtors and the Liquidating Trustee are authorized and directed to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

# ARTICLE VII
## PROCEDURES FOR DISPUTED CLAIMS

**7.1**     **Objections to Claims**.   Unless otherwise ordered by the Bankruptcy Court, after notice and a hearing, and except as otherwise provided in the Plan, from and after the Effective Date, only the Liquidating Trustee shall have the right to make and file objections to Claims, subject to prior orders of the Bankruptcy Court.

Pursuant to the Plan, unless another time is set by order of the Bankruptcy Court, all objections to Claims and Equity Interests shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims and Equity Interests to which objections are made within 90 days after the Effective Date or such additional time that is given by the Bankruptcy Court.

**7.2**     **No Distribution Pending Allowance**.   Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of the Disputed portion of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

**7.3**     **Estimation**.   Pursuant to the Plan, the Debtors and the Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim, pursuant to section 502(c) of the Bankruptcy Code for purposes of determining the Allowed amount of such Claim, regardless of whether the Debtors or any other Party In Interest has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.  The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during

litigation concerning any objection to any Claim, including during the pendency of any appeal relating to such objection. In the event that the Bankruptcy Court estimates any contingent, disputed, or unliquidated Claim for allowance purposes, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtors or Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

    **7.4**    **Disallowance of Certain Claims and Equity Interests**.  All Claims held by Persons against whom the Debtors have obtained a Final Order establishing liability for a cause of action under sections 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code shall be deemed Disallowed Claims pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against the Person have been settled or resolved by a Final Order and all sums due the Debtors by that Person are turned over the Debtors or Liquidating Trustee.

    **7.5**    **Controversy Concerning Impairment**.  If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date.  If such controversy is not resolved prior to the Effective Date, the Debtors' interpretation of the Plan shall govern.

    **7.6**    **No Distribution Pending Allowance**.  On or after the Effective Date, if any Disputed Claim becomes an Allowed Claim, the Liquidating Trustee shall distribute to the holder thereof the distributions that such holder would have received had its Claim been Allowed on the Effective Date.

**ARTICLE VIII**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

    **8.1**    **Executory Contracts and Unexpired Leases**.  On the Effective Date, all executory contracts and unexpired leases to which the Debtors are a party shall be deemed rejected, except for any executory contract or unexpired lease that (i) has been assumed or rejected pursuant to Final Order of the Bankruptcy Court entered prior to the Effective Date, or (ii) is the subject of a separate motion to assume or reject filed under section 365 of the Bankruptcy Code by the Debtors prior to the Effective Date.

    **8.2**    **Approval of Assumption and Rejection of Executory Contracts and Unexpired Leases**.  Entry of the Confirmation Order shall constitute the approval, pursuant to section 365(a) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected or assumed as of the Effective Date pursuant to the Plan.

    **8.3**    **Rejection Claims**.  In the event that the rejection of an executory contract or unexpired lease by the Debtors pursuant to the Plan results in damages to the other party to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable

30

against the Debtors or any property to be distributed under the Plan unless a proof of claim is filed with the Bankruptcy Court and served upon the Debtors and Liquidating Trustee on or before thirty (30) days after the Confirmation Date.

**ARTICLE IX**
**EFFECTIVENESS OF THE PLAN**

      **9.1**    **Conditions Precedent to Effective Date**.  The Effective Date shall not occur until all of the following conditions have been satisfied or waived in writing by the Debtors:

      (a)    The Confirmation Order shall have become a Final Order;

      (b)    No stay of the Confirmation Order shall then be in effect;

      (c)    The Liquidating Trustee shall have been appointed and shall have executed and delivered the Liquidating Trust Agreement, in form and substance reasonably acceptable to the Debtors;

      (d)    All ancillary documents necessary to implement and confirm the Plan have been approved by the Debtors;

      (e)    All actions agreements, instruments or other documents necessary to implement the terms and conditions of the Plan are effected or executed and delivered; and

      (f)    All authorizations, consents and regulatory approvals, if any, required by the Debtors in connection with the consummation of the Plan are obtained and not revoked.

      **9.2**    **Notice of the Effective Date.**.  Within five (5) Business Days after the Effective Date, the Liquidating Trustee shall file with the Bankruptcy Court a notice that informs all Parties in Interest of (a) the entry of the Confirmation Order, (b) the occurrence of the Effective Date, and (c) such other matters as the Liquidating Trustee deems to be appropriate.

      **9.3**    **Satisfaction of Conditions**.  Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously.  If the Debtors decide that one of the conditions precedent set forth in Section 9.1 hereof cannot be satisfied and the occurrence of such condition is not waived or cannot be waived, then the Debtors shall file a notice of the failure of the Effective Date with the Bankruptcy Court.

      **9.4**    **Effect of Nonoccurrence of Conditions to Effective Date**.  If each of the conditions to consummation and the occurrence of the Effective Date has not been satisfied or duly waived on or before thirty (30) days after the Confirmation Order becomes a Final Order, the Confirmation Order may be vacated by the Bankruptcy Court.  If the Confirmation Order is vacated pursuant to this Section, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall constitute a waiver, or release of any Claims against the Debtors.

31

## ARTICLE X
## EFFECT OF CONFIRMATION

**10.1**  **Vesting of Assets**.

(a)  As of the Effective Date, all Estate Assets shall vest in the Liquidating Trust, and shall constitute the Liquidating Trust Assets.

(b)  As of the Effective Date, all Liquidating Trust Assets shall be free and clear of all Claims and Liens, except as provided in the Plan or the Confirmation Order.

**10.2**  **Binding Effect**.  Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any Holder of a Claim against, or Equity Interest in, the Debtors and their respective successors and assigns, including, but not limited to, the Liquidating Trust and the Liquidating Trustee, whether or not the Claim or Equity Interest of such Holder is impaired under the Plan and whether or not such Holder has accepted the Plan.

**10.3**  **Term of Injunctions or Stays**.  Unless otherwise expressly provided herein, all injunctions or stays arising under or entered during the Bankruptcy Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of the Bankruptcy Cases.

**10.4**  **Injunction**.  On and after the Confirmation Date, all persons are permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively, or otherwise) on account of or respecting any Claim, debt, right, or Cause of Action of the Debtors for which the Liquidating Trustee retain sole and exclusive authority to pursue in accordance with the Plan.

**10.5**  **Injunction Against Interference with Plan**.  Upon the entry of the Confirmation Order, all holders of Claims and Equity Interests and other Parties in Interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

## ARTICLE XI
## RETENTION OF JURISDICTION

**11.1**  **Jurisdiction of Bankruptcy Court**.  The Bankruptcy Court shall retain jurisdiction of all matters arising under, arising out of, or related to the Bankruptcy Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)  To hear and determine motions for the assumption, assumption and assignment, or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(b)     To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date, including, without limitation, any proceeding to recover a Cause of Action, and Avoidance Actions;

(c)     To ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(d)     To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(e)     To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(f)     To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(g)     To hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h)     To hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date;

(i)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(j)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Liquidating Trust Agreement, and to hear and determine all matters involving or relating to the Liquidating Trustee;

(k)     To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

(l)     To recover all assets of the Debtors and property of the Estate, wherever located, which jurisdiction shall not be limited as a result of the transfer of such assets and property to the Liquidating Trust pursuant to the Plan;

33

(m)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(n)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including, without limitation, matters with respect to any taxes payable by a trust or reserve established in furtherance of the Plan);

(o)     To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(p)     To hear and determine any pending adversary proceedings as of the Effective Date; and

(q)     To enter a final decree closing the Bankruptcy Cases.

## ARTICLE XII
## CRAMDOWN RESERVATION

**12.1     Nonconsensual Confirmation**.  If any impaired class votes to accept the Plan by the requisite statutory majorities provided in sections 1126(c) and 1126(d) of the Bankruptcy Code, as applicable, or if any impaired class is deemed to have rejected the Plan, the Debtors reserve the right to undertake to have the Bankruptcy Court confirm the Plan under section 1129(c) of the Bankruptcy Code and/or amend the Plan to the extent necessary to obtain entry of a Confirmation Order.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

**13.1     Dissolution of Creditors' Committee**.  The Creditors' Committee shall dissolve on the Effective Date.

**13.2     Substantial Consummation**.  On the Effective Date or as soon thereafter as practicable, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**13.3     Exemption from Transfer Taxes**.  Subject to orders entered by the Bankruptcy Court prior to the Confirmation Date authorizing certain sales of real property, pursuant to section 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition of assets contemplated by the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use, or other similar tax.

**13.4     Exculpation**.  Neither the Debtors, THE TRUSTEE, the Creditors' Committee, nor any of their respective members, officers, directors, employees, advisors, professionals,

INDEPENDENT CONTRACTORS or agents, (collectively, "Exculpation Parties") shall have or incur any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, related to, or arising out of these bankruptcy Cases, negotiations regarding or concerning the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence, and, in all respects, the Exculpation Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

**NOTHING CONTAINED IN THIS PLAN SHALL OPERATE AS A RELEASE, WAIVER, OR DISCHARGE OF ANY CLAIM, CAUSE OF ACTION, RIGHT OR OTHER LIABILITY AGAINST THE MEMBERS OF THE CREDITORS' COMMITTEE IN ANY CAPACITY OTHER THAN AS A MEMBER OF THE CREDITORS' COMMITTEE.**

**13.5   General Injunction**.  PURSUANT TO §§ 105, 1123, 1129 AND 1141 OF THE BANKRUTPCY CODE, IN ORDER TO PRESERVE AND IMPLEMENT THE VARIOUS TRANSACTIONS CONTEMPLATED BY AND PROVIDED FOR IN THE PLAN, AS OF THE EFFECTIVE DATE, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THE PLAN OR IN THE CONFIRMATION ORDER, ALL PERSONS OR ENTITIES THAT HAVE HELD, CURRENTLY HOLD, OR MAY HOLD A CLAIM, DEBT, OR LIABILITY THAT IS TREATED PURSUANT TO THE TERMS OF THE PLAN ARE AND SHALL BE PERMANENTLY ENJOINED AND FOREVER BARRED TO THE FULLEST EXTENT PERMITTED BY LAW FROM TAKING ANY OF THE FOLLOWING ACTIONS ON ACCOUNT OF SUCH CLAIMS, DEBTS, OR LIABILITIES, OTHER THAN ACTIONS BROUGHT TO ENFORCE ANY RIGHTS OR OBLIGATIONS UNDER THE PLAN:  (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING AGAINST THE DEBTORS, THE LIQUIDATING TRUST, THE LIQUIDATING TRUSTEE, THE ESTATE ASSETS, THE PURCHASER, OR THE TRANSFERRED ASSETS; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DEBTORS, THE LIQUIDATING TRUST, THE LIQUIDATING TRUSTEE, THE ESTATE ASSETS, THE PURCHASER, OR THE TRANFERRED ASSETS; (C) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE AGAINST THE DEBTORS, THE LIQUIDATING TRUST, THE LIQUDTING TRUSTEE, THE ESTATE ASSETS, THE PURCHASER, OR THE TRANSFERRED SSETS; (D) ASSERTING A SETOFF, RIGHT OF SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY, OR OBLIGATION DUE TO THE DEBTORS, THE LIQUIDIATING TRUST, THE LIQUDATING TRUSTEE, THE ESTATE ASSETS, THE PURCHASER, OR THE TRANSFERRED ASSETS; (E) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION THAT DOES NOT COMPLY OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN OR CONFIRMATION ORDER; OR (F) INTERFERING WITH THE RIGHTS AND REMEDIES OF THE DEBTORS, THE LIQUIDATING TRUST, OR THE LIQUIDATING TRUSTEE UNDER THE PLAN AND THE DOCUMENTS EXECUTED IN CONNECTION THEREWITH.  THE DEBTORS, THE LIQUIDATING TRUST, AND THE PURCHASER SHALL HAVE THE RIGHT TO INDEPENDENTLY SEEK ENFORCEMENT

OF THIS INJUNCTION PROVISION.  THIS INJUNCTION PROVISION IS AN INTEGRAL PART OF THE PLAN AND IS ESSENTIAL TO ITS IMPLEMENTATION.

**13.6    No Discharge of Claims**.  For the avoidance of doubt, notwithstanding any other provision of this Plan, neither confirmation nor substantial consummation of the Plan shall result in the Debtors receiving a discharge under Section 1141(d) of the Bankruptcy Code.

**13.7    Modification of Plan**.  The Plan may be amended, modified, or supplemented by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise direct.  In addition, after the Confirmation Date, so long as such action does not materially adversely affect the treatment of holders of Claims or Equity Interests under the Plan, the Debtors may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.  Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, *provided* that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Equity Interests.

**13.8    Revocation or Withdrawal of Plan**.  The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date.  If the Debtors take such action, the Plan shall be deemed null and void.

**13.9    Courts of Competent Jurisdiction**.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**13.10    Governing Law**.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of (a) the State of Texas shall govern the construction and implementation hereof and any agreements, documents, and instruments executed in connection with this Plan and (b) the laws of the state of incorporation or organization of each Debtor shall govern corporate or other governance matters with respect to such Debtor, in either case without giving effect to the principles of conflicts of law thereof.

**13.11    Exhibits**.  All exhibits to the Plan and Disclosure Statement are incorporated into and are a part of the Plan as if set forth in full herein.

**13.12    Successors and Assigns**.  All the rights, benefits, and obligations of any person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such person.

36

**13.13  Time**.  The provisions of Bankruptcy Rule 9006 shall apply when computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court.

**13.14  Notices**.  All notices, requests and demands to or upon the Debtors to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to Debtors:

> [Name of Debtor, as applicable]
> C/O Baker & Hostetler LLP
> Attn: Elizabeth A. Green, Esq.
> P.O. Box 112
> Orlando, Florida 32802-0112
> Telephone:    407.649.4000
> Fax:              407.841.0168

If to the Creditors' Committee:

> Fox Rothschild LLP
> Attn:  David Crooks, Esq.
> 5420 LBJ Freeway
> Suite 1200
> Dallas, TX 75240
> Telephone:    214-231-5728
> Fax:              972-404-0516
>
> Foley & Lardner LLP
> Attn: Paul Labov, Esq.
> 90 Park Ave.
> New York, NY 10016-1314

All notices to the Liquidating Trustee, shall be delivered to the address provided in the Plan Supplement.

**13.15  Entire Agreement** Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

RESPECTFULLY SUBMITTED this 10th day of June, 2019.

37

RESPECTFULLY SUBMITTED this 10th day of June, 2019.

Ronald Glass
Chapter 11 Trustee of the Debtors


*/s/ Elizabeth A. Green*
Elizabeth A. Green, Esq.
egreen@bakerlaw.com
BAKER & HOSTETLER LLP
So. Dist. Fed. ID. 903144
200 South Orange Avenue, Suite 2300
Orlando, Florida 32801-3432
Telephone: (407) 649-4000
Facsimile: (407) 841-0168
*Counsel for the Debtors*

38