**<u>EXHIBIT B</u>**

4828-3229-6125.7

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| In re: | § | Case No. 17-32186 (MI) |
| | § | |
| UPLIFT RX, LLC, et al.,[1] | § | Chapter 11 |
| | § | |
| Debtors. | § | Jointly Administered |
| | § | |

## STIPULATION BY AND BETWEEN LIFESCAN, ROCHE, AND
## THE TRUSTEE (A) RESOLVING ASSERTION OF PRIVILEGE BY
## TRUSTEE AND (B) FURTHER AMENDING LIQUIDATING TRUST AGREEMENT

LifeScan, Inc. ("LifeScan"), Roche Diagnostics Corp. and Roche Diabetes Care,

Inc. (together, "Roche," and, with LifeScan, the "Test Strip Manufacturers"), and Mark Shapiro

("Trustee," and, with the Test Strip Manufacturers, the "Parties"), the duly-appointed Trustee of

the Liquidating Trust (as defined below), by and through their undersigned counsel, hereby

stipulate as follows (the "Stipulation").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Uplift Rx, LLC (9306); Belle Pharmacy, LLC (0143); Alliance Medical Holdings, LLC (5945); Geneva Pharmacy, LLC (1929); Ohana Rx, LLC (1722); Benson Pharmacy, Inc. (6606); Kendall Pharmacy, Inc. (0825); Richardson Pharmacy, LLC (9566); Innovative Rx, LLC (9986); Charleston Rx, LLC (5852); On Track Rx, LLC (9021); Uinta Rx, LLC (7157); Goodman Pharmacy, LLC (9373); BrooksideRx, LLC (5927); Osceola Clinic Pharmacy, LLC (4886); Oak Creek Rx, LLC (9722); Waverly Pharmacy, LLC (7342); Newton Rx, LLC (9510); Lone Peak Rx, LLC (5973); Improve Rx, LLC (9120); New Jersey Rx, LLC (0035); Berkshire Pharmacy, LLC (9197); Health Saver Rx, LLC (7810); Best Rx, LLC (0346); Delaney Pharmacy, LLC (7497); New Life Pharmacy, LLC (8292); Skyline Health Services, LLC (6876); Stonybrook Pharmacy, LLC (7700); Woodward Drugs, LLC (2385); Bridgestone Pharmacy, LLC (5294); Brookhill Pharmacy, LLC (5296); Burbank Pharmacy, LLC (5227); Canyons Pharmacy, LLC (1744); Cheshire Pharmacy, LLC (6370); Conoly Pharmacy, LLC (0367); Cottonwood Pharmacy, LLC (5131); Galena Pharmacy, LLC (0672); Garnett Pharmacy, LLC (6505); Hawthorne Pharmacy, LLC (5345); Hazelwood Pharmacy, LLC (1088); Medina Pharmacy, LLC (8987); Raven Pharmacy, LLC (5671); Glendale Square Rx, Inc. (1022); Lockeford Rx, Inc. (1853); Pinnacle Pharmacy Solutions, LLC (9760); Riverfront Rx, LLC (7152); Riverbend Prescription Services, LLC (1862); Raven Pharmacy Holdings, LLC (2464); Bridgestone Pharmacy Holdings, LLC (2840); Crestwell Pharmacy Holdings, LLC (1503); Galena Pharmacy Holdings, LLC (8609); Geneva Rx Holdings, LLC (8247); Hawthorne Rx Holdings, LLC (9531); Woodward Rx Holdings, LLC (2173); Philadelphia Pharmacy Holdings, LLC (8526); Health Rx Holdings, LLC (0909); Canyon Medical, LLC (4915); Alliance Medical Administration, Inc. (2899); Ollin Pharmaceutical, LLC (9815); Alta Distributors, LLC (7407); Eat Great Café, LLC (2314); Alliance Health Networks, LLC (1815) . The Debtors' mailing address is Uplift Rx, LLC, 15462 FM 529, Houston, TX 77095.

WHEREAS, on April 7, 2017 and April 8, 2017 (the "Petition Date"), Uplift RX, LLC and certain of its subsidiaries and affiliates (collectively, the "Debtors") filed petitions for reorganization under chapter 11 of the Bankruptcy Code;

WHEREAS, the Test Strip Manufacturers are plaintiffs in separate civil actions pending in the United States District Court for the District of New Jersey regarding an alleged massive fraud that precipitated these bankruptcy cases, styled as (i) *Roche Diagnostics Corp. et al. v Jeffrey C. Smith et al.*, Civil Action No. 19-8761 (CCC) (D.N.J.) and (ii) *LifeScan, Inc., et al. v. Smith, et al.*, Case No. 17-5552 (CCC) (D.N.J.) (collectively, the "NJ Actions");

WHEREAS, during the pendency of these bankruptcy cases and the NJ Actions, a dispute has arisen between the Trustee (and his predecessor, the Chapter 11 Trustee in the bankruptcy cases) and the Test Strip Manufacturers regarding the Trustee's assertion of an attorney-client privilege on behalf of the Debtors with respect to communications and documents with the Debtors' attorneys and accountants prior to the Petition Date ("Disputed Privilege Claim");

WHEREAS, the Trustee has agreed, subject to the terms of this Stipulation, and as more fully set forth below, that he will not continue to assert the attorney-client privilege, any other claim of privilege or confidentiality, or attorney work product protection on behalf of the Debtors (or any current or former non-Debtor affiliate) with respect to communications and documents with the Debtors' attorneys and accountants prior to the Petition Date;

WHEREAS, on June 10, 2019, the Debtors filed the Amended Joint Plan of Liquidation under Chapter 11 of the Bankruptcy Code of Uplift Rx, LLC and its Debtor Affiliates ("Plan"; ECF No. 1124);

WHEREAS, on June 27, 2019, the Debtors filed the Plan Supplement ("Plan Supplement"; ECF No. 1153) including a copy of the Alliance Health Liquidating Trust Agreement ("LTA"), which, among other things, contemplated the formation of a three-member trust committee that would oversee the administration of the Trust (the "Trust Committee") but did not name the initial members of the Trust Committee;

WHEREAS, this Court entered an Order confirming the Plan on August 8, 2019 ("Confirmation Order"; ECF No. 1267);

WHEREAS, pursuant to the Plan, the Debtors' remaining assets were transferred to the Alliance Health Liquidating Trust (the "Liquidating Trust") for the benefit of the Debtors' respective creditors to be administered by the Trustee in accordance with the LTA;

WHEREAS, the Test Strip Manufacturers hold the two largest unsecured claims against certain of the Debtors and, as such, will be the primary beneficiaries (excluding priority unsecured creditors and administrative creditors) of the Trustee's efforts to reduce the estates' remaining assets to cash;[2]

WHEREAS, on February 11, 2020, the Trustee filed a motion (ECF No. 1374) requesting entry of an order amending the LTA to eliminate the Trust Committee, which motion was re-filed in substantially the same form on March 9, 2020 (the "Motion"; ECF No. 1386);

WHEREAS, prior to the expiration of 21-day period to object to the Motion, counsel for the Test Strip Manufacturers contacted counsel for the Trustee to discuss the relief requested in the Motion and to alert them that the Test Strip Manufacturers would consider serving on the Trust Committee;

---

[2] See ECF Nos. 1232 and 1233 (allowing claims of Roche and LifeScan in the aggregate amount of approximately $130 million, subject to an agreement by each to forego fifty percent (50%) of the initial $100,000 that would otherwise be distributed to them under the Amended Plan).

WHEREAS, while those discussions were ongoing, on March 31, 2020, after the expiration of the original 21-day period but prior to the expiration of an extended deadline for the Test Strip Manufacturers to respond to the Motion, this Court entered an order approving the Motion;

WHEREAS, the Parties have agreed that, in light of their agreement regarding the Disputed Privilege Claim, and on account of the Test Strip Manufacturers' significant financial interest in the outcome of the Trustee's administration of the Liquidating Trust, it would be in the best interests of all parties in interest for the Test Strip Manufacturers to serve on the Trust Committee; and

WHEREAS, the designation of two rather than three members of the Trust Committee requires certain technical changes and corrections to the LTA, and the Parties have agreed to other changes to the LTA.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Roche, LifeScan and the Trustee hereby agree as follows:

1.      Promptly after approval of this Stipulation by the Bankruptcy Court, the Trustee will convey to the Test Strip Manufacturers any documents in his possession, custody, or control that have been withheld from production on the grounds that they are protected by the attorney-client privilege, or any other claim of privilege or confidentiality, or that they constitute attorney work product.  This Stipulation does not require the Trustee to provide any documents to the Test Strip Manufacturers that are subject to this Court's July 15, 2019 *Agreed Order Granting Amended Agreed Ex Parte Motion to Authorize and Schedule Pre-Suit Mediation Conference Between: (I) the Chapter 11 Trustee; and Bennett, Tueller, Johnson & Deere, LL,*

*and For Other Relief* (ECF No. 1203); provided, however, that nothing in this Stipulation precludes the Test Strip Manufacturers from seeking production, in the NJ Actions or otherwise, of any such documents from any party on any lawful grounds.

      2.    Within five (5) business days after approval of this Stipulation by the Bankruptcy Court, the Trustee will instruct any person, firm or entity asserting attorney-client privilege, any other claim of privilege or confidentiality, or attorney work product protection on behalf of the Debtors (or any current or former non-Debtor affiliate) that such privilege or protection has been waived and should no longer be asserted.

      3.    Within five (5) business days after approval of this Stipulation by the Bankruptcy Court, the Trustee will direct all persons, firms and entities that previously have asserted (or in the future assert) an attorney-client privilege, other claim of privilege or confidentiality, or work product protection on behalf of the Debtors (or any current or former non-Debtor affiliate) that such persons, firms and entities shall immediately produce to the Test Strip Manufacturers all information and documents within such person's, firm's and entity's possession, custody and control that previously had been withheld from production under a claim of attorney-client privilege, any other claim of privilege or confidentiality, or the work product doctrine.

      4.    At all times after approval of this Stipulation by the Bankruptcy Court, the Trustee will provide such reasonable cooperation as the Test Strip Manufacturers may request with respect to obtaining documents or information from: (a) any person, firm, or entity that does not immediately comply with any such instruction given by the Trustee or (b) any other person, firm, or entity to whom such instruction is given in the future.

5.      The Trustee will be deemed to have released all of the Debtors' former employees, agents, vendors, officers, or directors of any duty of confidentiality that they may owe to the Debtors for any act or omission arising prior to the Petition Date immediately upon approval of this Stipulation by the Bankruptcy Court.

6.      Subject to the Trustee's compliance with all of the foregoing, the Test Strip Manufacturers agree not to assert *any* claims arising out of or related in any way to the Debtors or the operation of their business, whether for fraud, conspiracy to commit fraud, aiding and abetting fraud, breach of contract, breach of fiduciary duty, malpractice, claims under the Racketeering and Corrupt Organizations Act (RICO), or otherwise (collectively, the "TSM Potential Claims"), against (a) Baker & Hostetler LLP, (b) Bennett Tueller Johnson Deere, LLC, (c) Brown & Fortunato, P.C., (d) Tanner LLC (collectively, the "Potential Defendants").

7.      Subject to the Trustee's compliance with all of the foregoing, the Test Strip Manufacturers further agree not to assert any TSM Potential Claims against any of the Potential Defendants' partners, members, officers, or employees (each in their capacity as such and in no other capacity) other than Lee H. Rosebush, a defendant in the NJ Actions, against whom the Test Strip Manufacturers preserve all rights and claims.

8.      Subject to the Trustee's compliance with all of the foregoing, the Test Strip Manufacturers hereby convey any and all TSM Potential Claims to the Trustee for him to assert on behalf of all beneficiaries of the Liquidating Trust.  The Parties agree and acknowledge that the Test Strip Manufacturers are not conveying any other claims to the Trustee except as specifically set forth above and, among other things, are not conveying any claims that are currently pending or could be asserted against any current defendant in either of the NJ Actions

or that in the future could be asserted in any jurisdiction against any other person or entity other than the Potential Defendants.

9.      Upon the approval of this Stipulation by the Bankruptcy Court: (a) the Test Strip Manufacturers will be designated as the two members of the Trust Committee, and (b) the LTA will be amended in the manner set forth in Exhibit 1 to this Stipulation.

10.      Notwithstanding anything contained herein or in the LTA to the contrary, neither of the Test Strip Manufacturers may exercise any authority in their capacity as members of the Trust Committee if such exercise would create a conflict of interest in respect of any action taken or not taken by the Trustee in connection with the NJ Actions; **provided**, **however**, that, notwithstanding the foregoing, each of the Test Strip Manufacturers may oppose any action taken or not taken by the Trustee in connection with the NJ Actions in their capacity as individual creditors and beneficiaries of the Liquidating Trust; and **provided**, **further**, **however**, that, other than those changes expressly set forth herein and in the amended LTA, nothing contained in this Stipulation alters or amends any provision of the Order confirming the Plan, including paragraph 23 thereof, which provides that "neither the Trustee, the Liquidating Trustee, nor any other person or entity acting on behalf of either of them, may interfere in any way with any direct claims that are personal to any other creditor, including, without limitation, the [NJ Actions]."

*[remainder of page intentionally left blank]*

Agreed to in Form and Substance:

**TROUTMAN SANDERS LLP**

By:_____
Gary W. Marsh
Georgia Bar No. 471290
600 Peachtree Street, NE
Suite 3000
Atlanta, GA 30308
Telephone:  (404) 885-2752
Email:  gary.marsh@troutman.com

**FULKERSON LOTZ LLP**

By:_____
Thomas M. Fulkerson
State Bar No. 07513500
4511 Yoakum Blvd., Suite 200
Houston, Texas  77006
Telephone: (713) 654-5800
Facsimile: (713) 654-5801
Email: tfulkerson@fulkersonlotz.com

- and -

**PATTERSON BELKNAP WEBB & TYLER LLP**
Geoffrey Potter
(admitted *pro hac vice*)
Brian P. Guiney
(admitted *pro hac vice*)
1133 Avenue of the Americas
New York, NY 10036-6710
Telephone:  212-336-2222
Facsimile:  212-336-1256
Email: gpotter@pbwt.com
bguiney@pbwt.com

*Counsel for Roche and LifeScan*

**EXHIBIT 1**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE: | CASE NO.: 17-32186 |
| UPLIFT RX, LLC, *et al.* [1] | CHAPTER 11 |
| Debtors. | Jointly Administered |

## ALLIANCE HEALTH AMENDED LIQUIDATING TRUST AGREEMENT

**Dated as of _____, 2020**

*Pursuant to the Amended Joint Plan of Liquidating Under Chapter 11 of the Bankruptcy Code of Uplift Rx, LLC and Its Debtor Affiliates* (Doc. No. 1124)

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Uplift Rx, LLC (9306); Belle Pharmacy, LLC (0143); Alliance Medical Holdings, LLC (5945); Geneva Pharmacy, LLC (1929); Ohana Rx, LLC (1722); Benson Pharmacy, Inc. (6606); Kendall Pharmacy, Inc. (0825); Richardson Pharmacy, LLC (9566); Innovative Rx, LLC (9986); Charleston Rx, LLC (5852); On Track Rx, LLC (9021); Uinta Rx, LLC (7157); Goodman Pharmacy, LLC (9373); BrooksideRx, LLC (5927); Osceola Clinic Pharmacy, LLC (4886); Oak Creek Rx, LLC (9722); Waverly Pharmacy, LLC (7342); Newton Rx, LLC (9510); Lone Peak Rx, LLC (5973); Improve Rx, LLC (9120); New Jersey Rx, LLC (0035); Berkshire Pharmacy, LLC (9197); Health Saver Rx, LLC (7810); Best Rx, LLC (0346); Delaney Pharmacy, LLC (7497); New Life Pharmacy, LLC (8292); Skyline Health Services, LLC (6876); Stonybrook Pharmacy, LLC (7700); Woodward Drugs, LLC (2385); Bridgestone Pharmacy, LLC (5294); Brookhill Pharmacy, LLC (5296); Burbank Pharmacy, LLC (5227); Canyons Pharmacy, LLC (1744); Cheshire Pharmacy, LLC (6370); Conoly Pharmacy, LLC (0367); Cottonwood Pharmacy, LLC (5131); Galena Pharmacy, LLC (0672); Garnett Pharmacy, LLC (6505); Hawthorne Pharmacy, LLC (5345); Hazelwood Pharmacy, LLC (1088); Medina Pharmacy, LLC (8987); Raven Pharmacy, LLC (5671); Glendale Square Rx, Inc. (1022); Lockeford Rx, Inc. (1853); Pinnacle Pharmacy Solutions, LLC (9760); Riverfront Rx, LLC (7152); Riverbend Prescription Services, LLC (1862); Raven Pharmacy Holdings, LLC (2464); Bridgestone Pharmacy Holdings, LLC (2840); Crestwell Pharmacy Holdings, LLC (1503); Galena Pharmacy Holdings, LLC (8609); Geneva Rx Holdings, LLC (8247); Hawthorne Rx Holdings, LLC (9531); Woodward Rx Holdings, LLC (2173); Philadelphia Pharmacy Holdings, LLC (8526); Health Rx Holdings, LLC (0909); Canyon Medical, LLC (4915); Alliance Medical Administration, Inc. (2899); Ollin Pharmaceutical, LLC (9815); Alta Distributors, LLC (7407); Eat Great Café, LLC (2314); Alliance Health Networks, LLC (1815) . The Debtors' mailing address is Uplift Rx, LLC, 15462 FM 529, Houston, TX 7709.

# ALLIANCE HEALTH LIQUIDATING TRUST AGREEMENT

## Table of Contents

***DEFINITIONS*** ................................................................................................................ **4**

    1.01       Definitions    4

***PURPOSE OF THE TRUST*** ........................................................................................... **5**

    2.01       Purpose      5

    2.02    Separate Accounting for Each Debtor ........................................................................ 5

***ESTABLISHMENT OF THE TRUST*** ............................................................................ **6**

    3.01 Transfer of Liquidating Trust Assets to the Trust    6

    3.02    Title to the Liquidating Trust Assets ......................................................................... 6

    3.03    Appointment of the Trustee ........................................................................................ 6

    3.04  Rights of Debtors ........................................................................................................ 6

    3.05    Nontransferability ...................................................................................................... 7

    3.06    Plan Binding on Trust ................................................................................................ 7

***THE TRUSTEE*** ............................................................................................................... **7**

    4.01       Authority of the Trustee      7

    4.02    Limitations on Trustee's Authority ............................................................................ 8

    4.03    Discretion ................................................................................................................... 9

    4.04    Retention of Professionals ......................................................................................... 9

    4.05    Liability of Trustee and His or Her Agents ............................................................... 9

    4.06    Compensation of the Trustee and Other Employees.................................................. 9

    4.07    Exculpation; Indemnification.................................................................................... 10

    4.08    Termination .............................................................................................................. 10

    4.09    Resignation .............................................................................................................. 10

    4.10    Removal ................................................................................................................... 10

***DISTRIBUTIONS*** ........................................................................................................ **10**

    5.01       Distributions to Beneficiaries 10

    5.02    Priority of Distribution of Liquidating Trust Assets.................................................. 11

    5.03    Administration of Distributions ................................................................................ 11

***TRUST COMMITTEE*** ................................................................................................. **12**

    6.01 Trust Committee     12

6.02   Consent of the Committee ........................................................................ 12

6.03   Manner of Acting...................................................................................... 12

6.04   Action Without a Meeting ........................................................................ 12

6.05   Tenure, Removal, and Replacement of Members of the Trust Committee ................. 12

6.06   Out-of-Pocket Expenses........................................................................... 13

6.07   Liability of Trust Committee .................................................................... 13

6.08   Exculpation; Indemnification................................................................... 14

6.09   Recusal ..................................................................................................... 14

6.10   Retention of Professionals ....................................................................... 14

***SUCCESSOR TRUSTEE*** ............................................................................... **14**

7.01 Successor Trustee    14

***DISSOLUTION OF TRUST*** ........................................................................ **15**

8.01 Dissolution of Trust    15

8.02   Dissolution Events ................................................................................... 15

8.03   Post-Dissolution....................................................................................... 15

***AMENDMENT AND WAIVER*** ................................................................... **15**

9.01 Amendment; Waiver  15

***MISCELLANEOUS PROVISIONS*** .............................................................. **16**

10.01 Irrevocability…………………………………………………………16

10.02 Intention to Establish Grantor Trust ...................................................... 16

10.03 Laws as to Construction......................................................................... 16

10.04 Severability ............................................................................................ 16

10.05 Notices ................................................................................................... 16

10.06 Notices if to a Beneficiary ..................................................................... 18

10.07 Successors and Assigns........................................................................... 18

10.08 Limitations on Beneficial Interests for Securities Laws Purposes.................. 18

10.09 Headings ................................................................................................ 18

10.10 Plan ........................................................................................................ 18

10.11 Enforcement and Administration............................................................ 19

10.12 Entire Agreement; No Waiver ............................................................... 19

10.13 Effectiveness .......................................................................................... 19

10.14 Counterpart Signatures.......................................................................... 19

This Amended Liquidating Trust Agreement (the "<u>Agreement</u>"), is made this ____ day of _____, 2020, by and among (i) Mark Shapiro, as the trustee (the "<u>Trustee</u>") for the Beneficiaries (as defined below); (ii) Lifescan Inc. ("<u>Lifescan</u>"); and (iii) Roche Diagnostics Corporation; and Roche Diabetes Care, Inc. (collectively, "Roche").

## RECITALS

A.      On August 8, 2019, the Bankruptcy Court entered an order confirming the *Amended Joint Plan of Liquidating Under Chapter 11 of the Bankruptcy Code of Uplift Rx, LLC and Its Debtor Affiliates* (Doc. No. 1124) (as may be further amended, supplemented or modified, the "<u>Plan</u>").

B.      Thereafter, the Debtors (the "<u>Debtors</u>") in the above-captioned Chapter 11 cases (the "<u>Bankruptcy Cases</u>") pending in the U.S. Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), the Official Committee of Unsecured Creditors, and the Trustee entered into the Alliance Health Liquidating Trust Agreement ("<u>Original Trust Agreement</u>") which established the Alliance Health Liquidating Trust (the "<u>Trust</u>").

C.      On September 13, 2019, the Debtors filed a Notice of Occurrence of Effective Date (Doc. No. 1319).

D.      The Trustee proposes to amend the terms and conditions of the Original Trust Agreement, as set forth herein.

E.      All capitalized terms not otherwise defined herein shall have their respective meanings as set forth in the Plan, and such definitions are incorporated herein by reference.  All capitalized terms not defined herein or defined in the Plan, but defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meanings ascribed to them by the Bankruptcy Code and Bankruptcy Rules, and such definitions are incorporated herein by reference.

F.      Upon approval by the Bankruptcy Court, this Agreement shall amend and supersede the Original Trust Agreement.  This Agreement shall be null and void if not approved by the Bankruptcy Court.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein and in the Plan, the Trustee, Lifescan, and Roche agree as follows:

## ARTICLE I

## <u>DEFINITIONS</u>

1.01      <u>Definitions</u>.

4

"<u>Beneficial Interests</u>" means the uncertificated beneficial interests in the Liquidating Trust evidencing the right of each holder of Allowed Unsecured Claims against any of the Debtors to receive distributions from the Liquidating Trust in accordance with the Plan and this Agreement.

"<u>Beneficiaries</u>" means the Holders of the beneficial interests in this Liquidating Trust, which shall be distributed Pro Rata to the Holders of Claims entitled to the Beneficial Interests under the Plan.

"<u>Distribution</u>" means a Distribution of property to a Beneficiary pursuant to this Agreement.

"<u>Liquidating Trust Assets</u>" shall mean all Estate Assets and shall include the Settlement Proceeds.

"<u>Subordinated Beneficial Interests</u>" means the junior class of beneficial interests in the Liquidating Trust that shall not receive payment unless and until all of the Holders of Beneficial Interests are paid in full, and upon such occurrence, that shall receive all remaining Liquidating Trust Assets.

"<u>Trust Committee</u>" shall mean the two (2) member board established to oversee, review and guide the activities and performance of the Trustee, which shall consist of Lifescan and Roche, or their respective designee(s).

## ARTICLE II

## <u>PURPOSE OF THE TRUST</u>

2.01     <u>Purpose.</u>  The Trust shall be established for the sole purpose of liquidating the Liquidating Trust Assets and distributing the same to the holder of Beneficial Interests (i) on a substantively consolidated basis as to the Corporate Debtors, and (ii) on a Debtor-by-Debtor basis as to the Pharmacy Debtors that are not Dismissed Debtors, all in accordance with Treasury Regulation Section 301.7701-4(d), and with no objective to continue or engage in the conduct of any trade or business.  Accordingly, the Trustee shall, in an expeditious but orderly manner, administer the Liquidating Trust Assets, by, among other things, liquidating and converting to Cash the Liquidating Trust Assets, making timely Distributions as provided for herein and in the Plan, and not unduly prolonging the duration of the Trust.

2.02     <u>Separate Accounting for Each Debtor</u>.

(i)     Pursuant to the Plan, on the Effective Date, (a) the Corporate Debtors were substantively consolidated into a single entity, and (b) the Pharmacy Debtors were not substantively consolidated.

(ii)    Notwithstanding any other provision of this Agreement, the Trustee shall be responsible for segregating each Debtors' respective portion of the Liquidating

5

Trust Assets and the expenses associated with liquidating and administering each Debtors' respective portion of the Liquidating Trust Assets (with the exception of the Corporate Debtors that were substantively consolidated). For the avoidance of doubt, ay provision of this Agreement or the Plan referencing payments or distributions from the Liquidating Trust Assets shall refer to payment solely from the Liquidating Trust Assets attributable to the indebted Debtor, or, in the case of the Corporate Debtors, to payment from the Liquidating Trust Assets attributable to the Corporate Debtors.

## ARTICLE III

## ESTABLISHMENT OF THE TRUST

3.01    <u>Transfer of Liquidating Trust Assets to the Trust</u>. Except as otherwise provided by the Plan or this Agreement, on the Effective Date, the Liquidating Trust Assets shall be deemed transferred to the Trust free and clear of all Claims and Interests, in accordance with Section 1141 of the Bankruptcy Code. The Trust hereby expressly accepts the transfer to the Trust of the Liquidating Trust Assets and any other transfers contemplated by the Plan in the time and manner as, and subject to the terms, contemplated in the Plan. The Debtors shall execute and deliver such documents to the Trust as the Trustee reasonably requests to transfer and assign the Liquidating Trust Assets to the Trust.

3.02    <u>Title to the Liquidating Trust Assets</u>. The Trustee shall hold title to the Liquidating Trust Assets for the benefit of the Beneficiaries, subject to the terms of the Plan and this Agreement. The Liquidating Trust Assets will be treated for tax purposes as being transferred by the respective Debtors to the respective Beneficiaries, and then by such Beneficiaries to the Trust in exchange for interests (the "Beneficial Interests") for the benefit of such holders in accordance with the Plan. Accordingly, the holders of the Beneficial Interests as of the Effective Date shall be treated for federal income tax purposes as the grantors and owners of their respective shares of the Trust. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local and tax purposes.

3.03    <u>Appointment of the Trustee</u>. Pursuant to the Plan, Mark Shapiro has been designated to serve as the Trustee, and he/she hereby accepts such appointment and agrees to serve in such capacity, as of the Effective Date. The Trustee shall be deemed to be appointed pursuant to Bankruptcy Code section 1123(b)(3)(B).

3.04    <u>Rights of Debtors</u>. On the Effective Date, the Trustee shall succeed to all of the Debtors' respective rights, titles and interests in the Liquidating Trust Assets, but subject to the terms of the Plan and this Agreement, and the Debtors will have no further interest in or with respect to the Liquidating Trust Assets or this Trust, and the Trustee shall be vested with all rights and discretion regarding the Liquidating Trust Assets. In no event shall any part of the Liquidating Trust Assets revert to or be distributed to the Debtor.

3.05      Nontransferability. The Beneficial Interests shall be nontransferable, except upon the Trustee's written consent, which may be withheld for any reason in the Trustee's sole and absolute discretion.

3.06      Plan Binding on Trust.   The Trust and Trustee shall be bound by the Plan.

## ARTICLE IV

## THE TRUSTEE

4.01      Authority of the Trustee. The Trustee is and shall act as a fiduciary to the Trust in accordance with the provisions of this Agreement and the Plan.  The Trustee shall administer the Trust, the Liquidating Trust Assets, and any other amounts to be received under the terms of the Plan, in accordance with the purposes set forth in Article 2 above and in the manner prescribed by this Agreement.  Nothing in this Agreement or the Plan shall require the Trustee to take any action if the Trustee reasonably believes that such action is contrary to law.  The Trustee is hereby empowered to, subject to the limitations set forth in this Agreement, take any and all actions to effectuate the purpose of the Trust.

Without limiting the generality of the previous sentence, the Trustee shall have the power to, for the benefit of the Beneficiaries:

(i)       receive, manage, invest, supervise, protect and liquidate the Liquidating Trust Assets;

(ii)      withdraw, make Distributions and pay taxes and other obligations owed by the Trust or make payments relating to the Liquidating Trust Assets, from the funds held by the Trust in accordance with the Plan or applicable law, provided however, that any single withdrawal, Distribution, or other payment exceeding $100,000 (or series of related withdrawals, Distributions, or other payments that exceed $100,000 in the aggregate) shall require the consent of the Trust Committee;

(iii)     execute, deliver, file, and record contracts, instruments, releases, indentures, certificates, and other agreements or documents, and take such actions, as it may deem reasonably necessary or appropriate to effectuate and implement the terms and conditions thereof or of the Plan;

(iv)     with the advice and consent of the Trust Committee, calculate and implement Distributions to Beneficiaries out of the Liquidating Trust Assets in accordance with the Plan;

(v)      protect, and enforce the rights to, the Liquidating Trust Assets by any method deemed appropriate, including by judicial proceeding;

7

(vi)     compromise, adjust, arbitrate, sue on or defend, abandon, or otherwise resolve or settle, in accordance with the terms hereof, claims in favor of, or against, the Trust provided however, that any compromise or other settlement of a claim that was or could have been asserted in an amount greater than $200,000 (without regard to the amount of the settlement) shall require the advice and consent of the Trust Committee, and the Trustee may in his or her discretion, but shall not be required to, obtain Bankruptcy Court approval of any proposed compromise or settlement;

(vii)    determine and satisfy any and all liabilities created, incurred, or assumed by the Trust;

(viii)   obtain and maintain insurance coverage with respect to the liabilities and obligations of the Trustee and the Trust (in the form of an errors and omissions policy, fiduciary policy, or otherwise);

(ix)     obtain and maintain insurance coverage with respect to real and personal property which may become Liquidating Trust Assets, if any;

(x)      with the consent of the Trust Committee (unless the retention of such party has already been approved by the Bankruptcy Court), retain and pay such third parties, including, one or more paying agents or counsel, as the Trustee may deem necessary or appropriate in its sole and reasonable discretion to assist the Trust in carrying out its powers and duties under this Agreement;

(xi)     exercise such other powers as may be vested in or assumed by the Trust or the Trustee pursuant to the Plan, Bankruptcy Court order, or as may be necessary, proper and appropriate to carry out the purpose of this Trust and the provisions of the Plan.

4.02     <u>Limitations on Trustee's Authority</u>.

(i)      The Trustee is not authorized to engage in any trade or business with respect to the Liquidating Trust Assets, and shall engage only in activity reasonably necessary to, and consistent with, the liquidating purpose of the Trust.  All actions taken by the Trustee shall be consistent with the expeditious but orderly liquidating of the Liquidating Trust Assets as is required by applicable law and consistent with the treatment of the Trust as a liquidating trust under Treasury Regulation Section 301.7701-4(d).

(ii)     The Trustee shall act in the best interests of all Beneficiaries and in furtherance of the purpose of the Trust, and shall consult with the Trust Committee as the same is provided for pursuant to the terms of this Agreement.

(iii)    The Trustee shall liquate and convert to Cash the Liquidating Trust Assets in an expeditious but orderly manner, make timely Distributions, and not unduly prolong the duration of the Trust.

8

(iv)     Any investments of the Cash portion of the Liquidating Trust Assets by the Trustee must be permitted investments for a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d), or under applicable Internal Revenue Service guidelines, rulings, or other controlling authority.

4.03     Discretion.  Subject to (i) consultation with, and the reasonable oversight of, the Trust Committee, and (ii) express provisions of this Agreement (including, without limitation, Section 6.02) and the Plan, the Trustee shall have absolute discretion to pursue, or not pursue, any and all claims, rights, or causes of action, as it determines is in the best interests of the Beneficiaries and consistent with the purposes of the Trust, and shall have no liability for the outcome of his or her decisions.   The Trustee may incur any reasonable and necessary expenses in liquidating and converting the Liquidating Trust Assets to Cash.   Notwithstanding any other provision of this Agreement, but subject to Section 6.02, the Trustee may, but shall not be required to, seek Bankruptcy Court approval of any proposed action to be taken under this Agreement.   Any disputes over the proper exercise of the Trustee's discretion shall be resolved by the Bankruptcy Court on not less than 21 days' notice to the Trust Committee.

4.04     Retention of Professionals.   The Trustee, with the advice and consent of the Trust Committee (unless the retention of such party has already been approved by the Bankruptcy Court), may retain and compensate attorneys and other professionals (including any professional who represented a party in interest in the Debtors' Bankruptcy Cases) to assist in his or her duties as the Trustee on such terms as the Trustee deems appropriate without Bankruptcy Court approval.  The Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.

4.05     Liability of Trustee and His or Her Agents.   Neither the Trustee, nor the employees, professionals, agents, and representatives of the Trust, Trust Committee, the members of the Trust Committee (including each of their employees, professionals, agents, and representatives), or the Trustee (collectively the "Covered Persons"), shall be held liable for actions taken or omitted in its capacity as, or on behalf of, the Trust or Trustee, except those acts arising out of its or their own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts, and each shall be entitled to indemnification and reimbursement from the Trust for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Trust or Trustee, except for any actions or inactions involving willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts.  All Persons dealing with the Trustee shall look only to the Liquidating Trust Assets to satisfy any liability incurred by the Trustee in carrying out the terms of this Agreement, and, subject to the preceding portions of this section, none of the Covered Persons shall have any personal obligation to satisfy any such liability.

4.06     Compensation of the Trustee and Other Employees.  Subject to the consent of the Trust Committee, the Trustee and the Trust's employees and agents shall be entitled to receive reasonable compensation and paid by the Trust with the Liquidating Trust Assets.   The

Trustee may pay his or her compensation and other costs and expenses of the Trust before approving or making any Distributions to the Beneficiaries.

4.07     Exculpation; Indemnification.  All of the Covered Persons shall be, and hereby are, exculpated by all Persons, including the Beneficiaries, from any and all claims, causes of action and other assertions of liability arising out of the discharge of the powers and duties conferred upon them by the Plan, this Agreement, or any Order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan, or by applicable law, except for actions or omissions that are determined by a Final Order to have arisen out of its or their own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts.  No Person shall have, or be permitted to pursue, any claim or cause of action against any of the Covered Persons for making payments in accordance with the Plan, or for implementing any other provision of the Plan.  To the fullest extent permitted by applicable law, the Trust shall (i) indemnify, defend, and hold harmless the Covered Persons from and against any and all losses, claims, damages, liabilities and expenses, including, without limitation, reasonable attorneys' fees, disbursements and related expenses that the Covered Persons may incur or to which the Covered Persons may become subject in connection with any actions or inactions in their capacity as such, except for actions or inactions involving willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts, and (ii) the Covered Persons shall be entitled to obtain advances from the Trust to cover their reasonable fees and expenses incurred in defending any such actions or inactions.  The foregoing indemnity in respect of any Covered Person shall survive the termination of such Covered Person from the capacity for which they are indemnified.

4.08     Termination.     The duties, responsibilities and powers of the Trustee shall terminate on the date the Trust is dissolved, provided that Sections 4.05-4.07 shall survive such termination and dissolution.

4.09     Resignation.  The Trustee may resign by giving not less than ninety (90) days prior written notice to the Trust Committee.

4.10     Removal.  The Trustee may be removed for cause upon the unanimous vote of the Trust Committee.  Any removal of the Trustee, for cause, shall become effective as of the date specified by the Trust Committee.   In the event of the removal of the Trustee, for cause, the Trustee shall be entitled to immediate payment of all compensation earned through and including the effective date of such removal.

**ARTICLE V**

**DISTRIBUTIONS**

5.01     Distributions to Beneficiaries.  The Trustee shall make Distributions to the Beneficiaries of all Cash on hand except such amounts (i) that would have been distributable to the holders of Disputed Claims if such Disputed Claims had been Allowed prior to the time

10

of such Distribution, (ii) that are reasonably necessary to meet contingent liabilities of the Trust or maintain the value of the Liquidating Trust Assets, (iii) that are necessary to pay expenses of the Trust, and (iv) that are necessary to satisfy other liabilities incurred by the Trust in accordance with the Plan or this Agreement.   The timing and amount of each Distribution by the Trustee shall be determined by the Trustee, with the advice and consent of the Trust Committee, and shall be consistent with the terms set forth in the Plan, any applicable order of the Bankruptcy Court, and this Agreement.  In the event that there are Liquidating Trust Assets remaining after satisfaction of all Liens, Claims, Interests and any other obligations of the Liquidating Trust, such Liquidating Trust Assets shall be distributed to a charity of the Trustee's choosing.

5.02     Priority of Distribution of Liquidating Trust Assets.     Any Liquidating Trust Assets available for Distribution shall be applied (a) first, to pay or reimburse, as applicable, the reasonable, documented out-of-pocket fees, costs, expenses and liabilities of the Trust and the Trustee, the reasonable, documented out-of-pocket expenses of the Trust Committee members, and any Allowed Administrative Expense Claims not paid on the Effective Date, (b) second, to Distributions to Beneficiaries, and (c) third, to the Subordinated Beneficial Interests.

5.03     Administration of Distributions.

(i)     Manner of Payment.  At the option of the Trustee, any Cash payment to be made hereunder may be made by a check or wire transfer.

(ii)     No Fractional Payments.   Whenever a payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding down to the nearest whole dollar.

(iii)     Unclaimed Distributions.   In the event any Distribution to any Beneficiary is returned as undeliverable, the Trustee shall use commercially reasonable efforts to determine the current address of such Beneficiary.  No additional Distribution shall be made to such Beneficiary until the Trustee has determined the then-current address of such Beneficiary, at which time the Distribution shall be made to such Beneficiary.  At the expiration of two (2) years after the Effective Date, all undeliverable Distributions shall be deemed unclaimed property under Section 347(b) of the Bankruptcy Code, and the Claims of the Beneficiaries that may have been entitled to such Distribution shall be discharged and forever barred.  After such date, all undeliverable Distributions shall revert to the Trust and shall be redistributed in accordance with this Agreement.  The Trustee may, in an exercise of his business judgment, seek an order of the Bankruptcy Court deeming Distributions undeliverable prior to the expiration of two (2) years.

(iv)     Abandonment.  With the consent of the Trust Committee, the Trustee may abandon, in any commercially reasonable manner, any property that the Trustee reasonably concludes is of no benefit to the Beneficiaries.

## ARTICLE VI

## TRUST COMMITTEE

6.01     <u>Trust Committee</u>.  The members of the Trust Committee shall serve in a fiduciary capacity representing the Beneficiaries.  The Trust Committee shall be bound by the terms of this Agreement and the Plan.  The initial members of the Trust Committee shall be Lifescan and Roche.  The Trust Committee shall have the authority and responsibility to oversee, review, and guide the activities and performance of the Trustee, and shall have the authority to seek removal of the Trustee for cause, in accordance with section 4.10 of this Agreement. Without limiting the foregoing, in addition to the other powers and duties of the Trust Committee set forth in the Plan or this Agreement, the Trust Committee shall have the authority to make any determination in accordance with this Agreement and the Plan with respect to the reimbursement of expenses incurred by the Trustee in performing its duties under this Agreement and the Plan, and any amendment of this Agreement.   The Trustee shall consult with, and provide information to, the Trust Committee upon request.  Notwithstanding anything in this Article VI, the Trust Committee shall not take any action which will cause the Trust to fail to qualify as a "liquidating trust" for U.S. federal income tax purposes.

6.02     <u>Consent of the Committee</u>.  If the consent of the Trust Committee is required under this Agreement, then such consent may be given in accordance with Section 6.03 of this Agreement.    If the Trust Committee does not consent to the Trustee's proposed action, then the Trustee may take the proposed action without the consent of the Trust Committee if: (a) the Trustee meets and confers with the Trust Committee in good faith to discuss such proposed action and the Trust Committee's objections thereto, and, thereafter, (b) obtains Bankruptcy Court approval of such proposed action after not less than 21 days' notice to the Trust Committee.

6.03     <u>Manner of Acting</u>.  The Trust Committee may act through one or more designees and may (but shall not be required) to adopt such procedures or bylaws as may be reasonable under the circumstances.  The Trustee may rely on the written consent of the members of the Trust Committee (or their designees(s)) with respect to any consent of the Trust Committee required under this Agreement.

6.04     <u>Action Without a Meeting</u>. Any action required or permitted to be taken by the Trust Committee at a meeting may be taken without a meeting if the action is taken by unanimous written consent, as evidenced by one or more written consents describing the action take, signed by the members of the Trust Committee, and filed with the minutes or proceedings of the Trust Committee.

6.05     <u>Tenure, Removal, and Replacement of Members of the Trust Committee</u>.   The authority of members of the Trust Committee will be effective as of the Effective Date, and will remain and continue in full force and effect until the Trust is dissolved in accordance with

this Agreement.  The service of the members of the Trust Committee will be subject to the following terms and conditions:

(i)      The members of the Trust Committee will serve until resignation or other vacancy pursuant to subsection (ii) below, or removal pursuant to subsection (iii) below;

(ii)     A member of the Trust Committee may resign at any time by providing written notice of resignation to the remaining members of the Trust Committee.  Such resignation will be effective when a successor is appointed as provided herein. After the Effective Date, if a member of the Trust Committee has its claim paid or sells its claim, that member will resign from the Trust Committee and will be replaced by vote of the remaining members as provided in subsection (iii) below, provided, however, that the new member must be from the same Class as the resigning member, or a representative thereof.

(iii)    Any members of the Trust Committee may be removed by a majority vote of the members of the Trust Committee, and in the event of a vacancy (for any reason), a new member shall be appointed by the unanimous vote of the remaining members of the Trust Committee.  If the Trust Committee is unable to appoint a successor member to the Trust Committee for any reason, the Bankruptcy Court may make the appointment.  Any member of the Trust Committee removed via this section may petition the Bankruptcy Court for a hearing relating to the same. The appointment of a successor member of the Trust Committee will be evidenced by the filing with the Bankruptcy Court of a notice of appointment, which will include the name, address, and telephone number of the successor member of the Trust Committee.

(iv)    Immediately upon appointment of a successor member of the Trust Committee, all rights, powers, duties, authority, and privileges of the predecessor member shall be vested in the successor member without any further act.

6.06       <u>Out-of-Pocket Expenses</u>.  Each member of the Trust Committee shall be entitled to reimbursement by the Trust of actual out-of-pocket expense incurred in his/her capacity as a member of the Trust Committee.

6.07       <u>Liability of Trust Committee</u>. Except as otherwise specifically provided herein, the members of the Trust Committee shall not be held liable for actions taken or omitted in its capacity as, or on behalf of, the Trust or Trustee, except those acts arising out of its or their own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts, and each shall be entitled to indemnification and reimbursement from the Trust for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Trust or Trustee, except for any actions or inactions involving willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts.

6.08     Exculpation; Indemnification.  The members of the Trust Committee shall be, and hereby are, exculpated by all Persons, including the Beneficiaries, from any and all claims, causes of action and other assertions of liability arising out of the discharge of the powers and duties conferred upon them by the Plan, this Agreement, or any Order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan, or by applicable law, except for actions or omissions that are determined by a Final Order to have arisen out of its or their own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts.  No Person shall have, or be permitted to pursue, any claim or cause of action against any of the members of the Trust Committee for making payments in accordance with the Plan, or for implementing any other provision of the Plan.   To the fullest extent permitted by applicable law, the Trust shall (i) indemnify, defense, and hold harmless the members of the Trust Committee from and against any and all losses, claims, damages, liabilities and expenses, including, without limitation, reasonable attorneys' fees, disbursements and related expenses that the member of the Trust Committee may incur or to which a member of the Trust Committee may become subject in connection with any actions or inactions in their capacity as such, except for actions or inactions involving willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts, and (ii) the members of the Trust Committee shall be entitled to obtain advances from the Trust to cover their reasonable fees and expenses incurred in defending any such actions or inactions.  The foregoing indemnity shall survive the termination of such Trust Committee members from the capacity for which they are indemnified.

6.09     Recusal.  A Trust Committee member shall be recused from the Trust Committee's deliberations and votes on any matters as to which such members has a conflicting interest. If a Trust Committee member does not recuse itself from any such matter, that member may be recused from such matter by the vote of the remaining members of the Trust Committee that are not recused from the matter.

6.10     Retention of Professionals.  The Trust Committee may retain attorneys or other professionals to assist in its duties under the Plan or this Agreement, and shall be entitled to rely, in good faith, on the advice of its retained professionals, but, absent the Trustee's consent or Bankruptcy Court approval, such professionals shall not be paid by the Trust with the Liquidating Trust Assets.

# ARTICLE VII

## SUCCESSOR TRUSTEE

7.01     Successor Trustee.   A vacancy caused by the resignation, removal, incapacity, death of the Trustee, or for any other reason shall be filled by the Trust Committee, or if they are unable to decide, the Bankruptcy Court. Any successor to the initial Trustee shall execute an instrument accepting such appointment and shall file such acceptance with the Trust records and with the Bankruptcy Court.  Immediately upon the appointment of any successor Trustee, all rights, titles, duties, powers, and authority of the predecessor Trustee hereunder shall be vested in and undertaken by the successor Trustee without any further act.  No

14

successor Trustee shall be liable personally for any act or omission of his or her predecessor Trustee.

## ARTICLE VIII

## <u>DISSOLUTION OF TRUST</u>

8.01     <u>Dissolution of Trust</u>.   The Trust shall be dissolved, in accordance with Section 8.02 hereof, no later than the third anniversary of the Effective Date, unless the Bankruptcy Court, upon motion by the Trustee, Trust Committee, or any party in interest, within the three-month period prior to the third anniversary (or prior to the end of any extension period), determines that a fixed period extension is necessary to facilitate or complete the recovery and liquidating of the Liquidating Trust Assets.

8.02     <u>Dissolution Events</u>.   The Trustee shall be discharged, the Trust shall be dissolved, and the Beneficial Interests shall be cancelled at such time as (i) the Trustee and Trust Committee determine that the administration of the Trust is not likely to yield sufficient additional proceeds to justify further pursuing such proceeds; and (ii) all Distributions required to be made by the Trustee under the Plan and this Agreement have been made.   Without limiting any other provision of this Agreement regarding termination, the Trustee or any party in interest may apply to the Bankruptcy Court to terminate this Trust and the Trust may be terminated under such terms and conditions as the Bankruptcy Court may establish.

8.03     <u>Post-Dissolution</u>.   Upon Distribution of all the Liquidating Trust Assets, the Trustee shall retain the books, records and files that shall have been created by the Trustee, provided that at her or her sole discretion, all of such records and documents may be destroyed at any time following the date of final Distribution of Liquidating Trust Assets as the Trustee deems appropriate (unless the records and documents are necessary to fulfill the Trustee's obligations pursuant to this Agreement).

## ARTICLE IX

## <u>AMENDMENT AND WAIVER</u>

9.01     <u>Amendment; Waiver</u>.   The Trustee, with the prior consent of the Trust Committee, may amend, supplement, or waive any provision of this Agreement, without notice to or the consent of any Beneficiary, in order to: (i) cure any ambiguity, omission, defect, or inconsistency in this Agreement; provided that such amendments, supplements or waivers shall not adversely affect the Distributions to any of the Beneficiaries or adversely affect the U.S. federal income status of the Trust as a "liquidating trust"; or (ii) comply with any requirements in connection with the U.S. federal income tax status of the Trust as a "liquidating trust".   Any substantive provision of this Agreement may be amended or waived by the Trustee, subject to the prior consent of the Trust Committee; provided, however, that no change may be made to this Agreement that would (i) adversely affect (a) the Debtors (absent the Debtors' consent), (b) the Distributions to any of the Beneficiaries, or (c) the U.S. federal

income tax status of the Trust as a "liquidating trust" or (ii) expand, add to, or modify the original stated purpose of the Trust without the consent of the Trust Committee. Notwithstanding this section, any amendments to this Agreement shall not be inconsistent with the purpose and intention of the Trust to liquidate in an expeditious but orderly manner the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d).

## ARTICLE X

## <u>MISCELLANEOUS PROVISIONS</u>

10.01      <u>Irrevocability</u>.  To the fullest extent permitted by applicable law, the Trust is irrevocable.

10.02      <u>Intention to Establish Grantor Trust</u>. This Agreement is intended to create a grantor trust for federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent with that intent, and, if necessary, this Agreement may be amended to comply with such federal income tax laws, which amendments may apply retroactively.

10.03      <u>Laws as to Construction</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, without giving effect to the rules governing the conflict of law which would require the application of the law of another jurisdiction.  In the event of any conflict between the terms of this Agreement and the Plan or Confirmation Order, the Plan or Confirmation Order shall control.

10.04      <u>Severability</u>.  If any provision of this Agreement or application thereof to any person or circumstance shall be determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

10.05      <u>Notices</u>.  Any notice of other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office box, or transmitted by telex, facsimile or other telegraphic means, or sent by a nationally recognized overnight delivery service, addressed to the person for whom such notice is intended at the appropriate address set forth below, or such other address as may be provided to the other parties in writing.

If to the Debtors:

Uplift Rx, LLC et al
c/o Glass Ratner Advisory & Capital Group LLC
Attn:  Ronald L Glass, Chapter 11 Trustee
3445 Peachtree Road

16

Suite 1225
Atlanta, GA 30326
Email:  rglass@glassratner.com

With copies to:

Counsel for the Debtors:

Baker & Hostetler, LLP
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL 32801-3432
Telephone: (407) 649-4000
Facsimile:  (407) 841-0168

Attn: Elizabeth A. Green, Esq.
Jimmy D. Parrish, Esq.
Jorian L. Rose, Esq.
Andrew V. Layden, Esq.
Email: jparrish@bakerlaw.com
       egreen@bakerlaw.com
       jrose@bakerlaw.com
       alayden@bakerlaw.com
*Counsel for Debtor*

If to the Trustee:

Mark Shapiro
3500 Maple Avenue
Dallas, TX 75219
Email: mshapiro@glassratner.com

With copies to:

Troutman Sanders LLP
600 Peachtree Street, NE
Suite 3000
Atlanta, GA 30308
T: (404) 885-2752

Attn: Gary Marsh, Esq.
Gary.marsh@troutman.com


If to members of the Trust Committee, then to each of:

Law Department
Roche Diabetes Care, Inc.
9115 Hague Road
Indianapolis, IN 46250
indianapolis.legal-administration@roche.com

and

17

John de Grandpre
General Counsel
Lifescan
20 Valley Stream Parkway
Malvern, PA 19355
jdegrand@lifescan.com

With copies to:

Patterson Belknap Webb & Tyler LLP
Attn: Brian P. Guiney
1133 Avenue of the Americas
New York, NY 10036
P: (212) 336-2305
F: (212) 336-1256
bguiney@pbwt.com

10.06    Notices if to a Beneficiary.  Subject to any transfer recognized by the Trustee as set forth in Section 3.05 of this Agreement, any notice or other communications hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office box, or transmitted by telex, facsimile or other telegraphic means, or sent by a nationally recognized overnight delivery service, addressed to the person for whom such notice is intended to the name and address set forth in the case of a Beneficiary, on such Beneficiary's proof of claim, or if no proof of claim is filed, the address listed on the Debtors' Schedules or as listed in any other notice filed with the Bankruptcy Court and, if applicable, the Trust or such other means reasonably calculated to appraise the Beneficiary.

10.07    Successors and Assigns.  The provisions of this Agreement shall be binding upon and inure to the benefit of the Trust, the Trustee, the Trust Committee, and their respective successors and assigns.

10.08    Limitations on Beneficial Interests for Securities Laws Purposes.  Except as otherwise set forth herein or in the Plan, Beneficial Interests (a) shall not be assigned, conveyed, hypothecated, pledged, or otherwise transferred, voluntarily or involuntarily, directly or indirectly, except by will or under the laws of descent and distribution; (b) shall not be evidenced by a certificate or other instrument; (c) shall not possess any voting rights; and (d) shall not be entitled to receive any dividends or interest.

10.09    Headings.  The section headings contained herein are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or any term or provision hereof.

10.10    Plan.    The terms of this Agreement are intended to supplement the terms provided by the Plan and the Confirmation Order.  Accordingly, in the event of any direct conflict or inconsistency between any provision of this Agreement, on the one hand, and the

provisions of the Plan and the Confirmation Order, on the other hand, the provisions of the Plan and the Confirmation Order, as applicable, shall govern and control.

10.11    <u>Enforcement and Administration</u>.   The provisions of this Agreement shall be enforced by the Bankruptcy Court pursuant to the Plan.  The parties also acknowledge and agree that the Bankruptcy Court shall have exclusive jurisdiction over the settlement of accounts of the Trustee and over any disputes hereunder.

10.12    <u>Entire Agreement; No Waiver</u>.  This Agreement contains the entire agreement between the parties and supersedes all prior and contemporaneous agreements or understanding between the parties with respect to the subject matter hereof.  No failure to exercise or delay in exercising any right, power, or privileged hereunder preclude any further exercise thereof or of any other right, power, or privilege.  The rights and remedies provided herein are cumulative and are not exclusive of rights under law or in equity.

10.13    <u>Effectiveness</u>.  This Agreement shall not become effective until it has been executed by all the parties hereto.

10.14    <u>Counterpart Signatures</u>. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but such counterparts shall together constitute but one and the same instrument. Delivery of a counterpart signature by facsimile or electronic transmission of a signature of any party shall be considered to have the same binding legal effect as an original signature.

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first written above.

Mark Shapiro, Trustee                                   Lifescan (as defined herein)

Signature:_____      Signature:_____

Name:_____      Name:_____

As its:_____      As its: _____

                                                                  Roche (as defined herein)

                                                                  Signature:_____

                                                                  Name:_____

19

As its: _____